**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

JOHN DOE,

Plaintiff,

-against-

MEDIUM RARE N.V. d/b/a STAKE.COM, SWEEPSTEAKS LTD. d/b/a STAKE.US, EASYGO GROUP HOLDINGS PTY LTD., EASYGO ENTERTAINMENT PTY LTD., MEDIUM RARE LTD., SLICEMEDIA B.V., BIJAN TEHRANI, EDWARD CRAVEN, CHRISTOPHER FREEMAN COINBASE, INC., and COINBASE GLOBAL, INC.,

Defendants.

Case No:26-cv-5975

**NOTICE OF REMOVAL**

[Index No. 154566/2026 in Supreme Court of the State of New York, County of New York]

## NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that, pursuant to 9 U.S.C. § 205, Defendants Medium Rare N.V. d/b/a Stake.com, Sweepsteaks Ltd. d/b/a Stake.us, Easygo Group Holdings Pty Ltd., Easygo Entertainment Pty Ltd., Medium Rare Ltd., Slicemedia B.V., Bijan Tehrani, and Edward Craven (collectively, the "Stake Defendants"),[1] by and through undersigned counsel, hereby remove to the Court the civil action captioned *John Doe v. Medium Rare N.V. d/b/a Stake.com, et al.* (154566/2026, Sup. Ct., N.Y. Cnty., Apr. 7, 2026) (the "State Court Action").

In support of removal, the Stake Defendants state as follows:

## BACKGROUND

### I. Procedural History

1. Pursuant to 28 U.S.C. § 1446(a), a copy of the docket from the State Court Action is attached hereto as Exhibit A, and copies of all documents filed on the docket in the State Court

[1] Defendants Christopher Freeman, Coinbase, Inc., and Coinbase Global consent to and join this Notice of Removal.

Action are attached hereto as Exhibit B.

2. On April 7, 2026, Plaintiff filed an Application for an Order To Show Cause with Temporary Restraining Order (the "Application," NYSCEF Doc. No. 2), and an accompanying Memorandum of Law in Support, NYSCEF Doc. No. 3, in which he requested leave to withhold his name from the public docket in this case.

3. On April 10, 2026, Plaintiff filed a Complaint for Damages (the "Complaint," NYSCEF Doc. No. 6).

4. On April 17, 2026, Plaintiff filed a Proof of Service as to Defendant Coinbase Global, Inc. NYSCEF Doc. No. 9. On April 29, 2026, Plaintiff filed a Proof of Service as to Defendant Sweepsteaks Ltd. d/b/a Stake.us ("Sweepsteaks"), NYSCEF Doc. No. 10, and a Proof of Service as to Defendant Coinbase, Inc. NYSCEF Doc. No. 11.

5. On May 13, 2026, the Stake Defendants, together with Plaintiff, filed a Stipulation Regarding the Stake Defendants' Time to Answer or Otherwise Respond to the Complaint, NYSCEF Doc. No. 13, setting a schedule for the Stake Defendants to respond to the Complaint and pursuant to which the Stake Defendants agreed to waive service of process.

6. On May 14, 2026, Coinbase, Inc. and Coinbase Global Inc. (collectively, the "Coinbase Defendants"), together with Plaintiff, filed a Stipulation Regarding the Coinbase Defendants' Time to Answer or Otherwise Respond to the Complaint. NYSCEF Doc. No. 15.

7. On May 18, 2026, Christopher Freeman and Plaintiff filed a Stipulation Regarding Defendant Freeman's Time to Answer or Otherwise Respond to the Complaint. NYSCEF Doc. No. 21.

8. The Court held a hearing on the Application on May 19, 2026; a transcript of that hearing is attached hereto as Exhibit C.

9. On June 4, 2026, the Court issued an order granting Plaintiff's Application and ordering Plaintiff to (i) confidentially disclose his identity to Defendants within three days, and (ii) file an affidavit in further support of the Application within fourteen days of the order. NYSCEF Doc. No. 44 (the "June 4 Order").

10. Thereafter, pursuant to the June 4 Order, Plaintiff (i) confidentially disclosed his identity to Defendants on June 8, 2026, and (ii) filed an Affirmation in further support of the Application on June 18, 2026. NYSCEF Doc. No. 79.

**II. Parties**

11. Defendant Medium Rare is a Curaçao Limited Liability Company with its principal place of business in Curaçao. Compl. ¶ 44. According to Plaintiff, "Medium Rare owns and operates the online casino Stake.com." Compl. ¶ 61.

12. Defendant Sweepsteaks is a Cyprus Limited Liability Company with its principal place of business in Cyprus. Compl. ¶ 48. The Complaint alleges Sweepsteaks operates Stake.us as "a sweepkstakes casino." *Id.* ¶¶ 49, 145 (internal quotation marks omitted).

13. Defendant Easygo Holdings is an Australian Proprietary Company with its principal place of business in Australia. Compl. ¶ 42. Plaintiff alleges that "Easygo Holdings has an interest in Defendant Medium Rare." Compl. ¶ 43.

14. Defendant Easygo Entertainment is an Australian Proprietary Company with its principal place of business in Australia. Compl. ¶ 41.

15. Defendant Medium Rare Ltd. is a Cyprus Limited Liability Company with its principal place of business in Cyprus. Compl. ¶ 46. According to Plaintiff, "Medium Rare Ltd. handles payment processing for Medium Rare N.V." Compl. ¶ 47.

16. Defendant Slicemedia is a Curaçao Limited Liability Company with its principal place of business in Curaçao. Compl. ¶ 55. Plaintiff alleges that Slicemedia "operates" Primedice, which is a gambling website. Compl. ¶ 55.

17. According to the Complaint, Defendants Bijan Tehrani and Edward Craven "founded, wholly own, and run Defendants Medium Rare, Sweepstakes, Sli[c]emedia, Easygo [Holdings], and Easygo Entertainment." Compl. ¶ 40.

18. Plaintiff alleges that Defendant Christopher Freeman is a resident of Florida. Compl. ¶ 56. The Complaint further alleges that Defendant Freeman was previously "involved in the design and operation of Primedice," and that "Primedice was created, designed, and founded by Tehrani, Craven, and Freeman." Compl. ¶¶ 55–56. Plaintiff also alleges that, from 2017 to 2021, Freeman—along with Tehrani—"designed and operated" Primedice. Compl. ¶ 106.

19. Plaintiff alleges that "Defendant Coinbase Global, Inc. is a corporation operating in the cryptocurrency field and is incorporated in the State of Texas;" its principal executive offices are located in New York. Compl. ¶ 68.

20. He also alleges that Defendant Coinbase, Inc. "is the operating entity that provides the Coinbase consumer platform," a cryptocurrency exchange. Compl. ¶ 70.

21. Plaintiff represents that he is a resident of Westchester County, New York. Compl. ¶ 10. He was born on April 26, 2005. *Id.* ¶ 337.

## III. Plaintiff's Complaint

22. Plaintiff alleges that, "on or about November 26, 2018," he registered for an account on Stake.com. *Id.* ¶ 366.

23. Plaintiff created a Stake.com account on August 31, 2017. Declaration of Jarrod Anthony Febbraio Regarding Stake.com in Support of the Stake Defendants' Notice of Removal

(the "Stake.com Declaration") ¶ 7. He created another Stake.com account on May 24, 2019. *Id.* ¶ 8.

24. On April 1, 2023, he also created an account on Stake.us. Declaration of Jarrod Anthony Febbraio Regarding Stake.us in Support of the Stake Defendants' Notice of Removal (the "Stake.us Declaration") ¶ 6.

25. Plaintiff alleges that, during the relevant period, he "engaged in frequent online gambling activity," Compl. ¶ 12, and "incurred substantial online gambling losses" as a result. *Id.* ¶ 13. He also alleges that he was later "diagnosed with compulsive gambling disorder and panic disorder, [and] suffers from anxiety, depression, and recurring panic attacks." *Id.* ¶ 22. All of Plaintiff's claims arise from these core factual allegations.

26. In the Complaint, Plaintiff asserts claims for violations of New York General Business Law § 349 against all defendants (Count I); gross negligence and negligence against the Coinbase Defendants (Counts II and III); negligence per se against the Stake Defendants (Count IV); negligence against all defendants except the Coinbase Defendants (Count V); and unjust enrichment against all defendants (Count VI). He also seeks a declaratory judgment pursuant to CPLR § 3001 (Count VII).

## III. The Arbitration Agreement

27. When Plaintiff created his Stake.us account on April 1, 2023, he accepted the version of the Stake.us Terms of Service in effect at that time (the "Stake.us ToS"), attached to the Stake.us Declaration as Exhibit A. Stake.us Decl. ¶ 9. Specifically, after Plaintiff entered identifying information and selected a username and password as part of the account opening process, the Stake.us registration screen conspicuously informed him that, by clicking the "Play

Now" button, he was attesting that he had read and acknowledged the Stake.us ToS, which was displayed in bold and hyperlinked to the then-operative Stake.us ToS. Stake.us Decl. ¶ 8.

28. Subsequently, on September 19, 2023—after Plaintiff turned 18 years old—he accepted an updated version of the Stake.us ToS, attached to the Stake.us Declaration as Exhibit B. Stake.us Decl. ¶ 13. Specifically, when Plaintiff logged into Stake.us on that day, the platform displayed a mandatory acceptance window with the updated Stake.us ToS in full; Plaintiff was then required to scroll through the updated Stake.us ToS in their entirety before he clicked a checkbox indicated that he agreed to the updated Stake.us ToS. Stake.us Decl. ¶ 11.

29. Both versions of the Stake.us ToS that Plaintiff accepted included an identical arbitration provision (the "Stake.us Arbitration Agreement"). The Stake.us Arbitration Agreement states, in pertinent part:

> By agreeing to these Terms, you agree that any and all past, present and future disputes, claims or causes of action between you and Stake or any of its affiliates, subsidiaries, ultimate parent and parent companies, partners, officers, directors, employees, contractors, shareholders, agents, licensors, subcontractors or suppliers, which arise out of or are related in any way to these Terms, the formation of these Terms, the validity or scope of this clause 26 (Dispute Resolution and Agreement to Arbitrate), your Participation in or other access to or use of the Games or the Platform, or any other dispute between you and Stake or any of its affiliates, subsidiaries, ultimate parent and parent companies, partners, officers, directors, employees, contractors, shareholders, agents, licensors, subcontractors or suppliers, including as to the arbitrability of any of the foregoing, and whether arising prior to or after your agreement to this clause 26 (Dispute Resolution and Agreement to Arbitrate) (all of the foregoing, collectively "Disputes"), will be governed by the [arbitration] procedure set out [in the Stake.us ToS].

*See* Stake.us Decl. Ex. A ¶ 26.3; Stake.us Decl. Ex. B ¶ 26.3.

30. The Stake.us Arbitration Agreement also includes a delegation provision and terms explaining the arbitration procedures:

> We both agree to arbitrate. By agreeing to these Terms, both you and Stake agree that any and all Disputes, including without limitation any question regarding the existence, validity, enforceability, or termination of these Terms and/or this clause 26 (Dispute

> Resolution and Agreement to Arbitrate) as well as the decision of whether the Dispute should be arbitrated in the first place, shall be referred to and finally resolved by arbitration administered by the American Arbitration Association (AAA), the rules of which are deemed to be incorporated by reference into this clause. In agreeing to this binding commitment to arbitrate your Disputes, you agree that you waive any right to proceed in a court of law or to have your claims heard by a jury. The arbitration shall: (1) be conducted by a single, neutral arbitrator in the English language; (2) be held virtually and not in person for all proceedings related to the arbitration, except by mutual agreement of all parties; and (3) be limited to one deposition per party, except by mutual agreement of all parties. Furthermore, in cases where neither party's claim(s) or counterclaim(s) exceed $25,000, both parties agree to waive an arbitration hearing and resolve the dispute solely through submissions of documents to the arbitrator. No award or procedural order made in the arbitration shall be published. The AAA rules, as well as instructions on how to file an arbitration proceeding with the AAA, appear at adr.org, or you may call the AAA at 1-800-778-7879**.**

*See* Stake.us Decl. Ex. A ¶ 26.7; *Id.* Stake.us Decl. Ex. B ¶ 26.6.

## GROUNDS FOR REMOVAL

### I. Removal is Proper under 9 U.S.C. § 205

31. 9 U.S.C. § 205 provides that "the defendant or defendants may, at any time before the trial [in a state court action or proceeding], remove such action to the district court of the United States for the district and division embracing the place where the action or proceeding is pending," provided that (1) "the subject matter of [the action] relates to an arbitration agreement or award," and (2) that arbitration agreement or award "fall[s] under" the New York Convention on the Recognition and Enforcement of Arbitral Awards (the "New York Convention"). When applied to the Complaint, the Stake.us Arbitration Agreement satisfies these basic requirements.

#### A. This Action's Subject Matter Relates to the Arbitration Agreement

32. This action "relates to" the Stake.us Arbitration Agreement. Following removal, the Stake Defendants intend to move to compel Plaintiff to arbitrate his claims pursuant to the Stake.us Arbitration Agreement.

33. The Stake.us Arbitration Agreement encompasses "*any* . . . dispute between [Plaintiff] and [Sweepsteaks] or any of its affiliates, subsidiaries, ultimate parent and parent companies, partners, officers, directors, employees, contractors, shareholders, agents, licensors, subcontractors or suppliers . . . whether arising prior to or after [Plaintiff's] agreement to [the Stake.us Arbitration Agreement]." Stake.us Decl. Ex. A ¶ 26; Stake.us Decl. Ex. B ¶ 26 (emphasis added). This action, in which Plaintiff asserts various claims against Sweepsteaks and various alleged corporate affiliates, officers, directors, employees, and/or shareholders, falls squarely within the scope of this Arbitration Agreement. *See* Compl. ¶¶ 410–93.[2]

**B. The Agreement Falls Under the New York Convention**

34. The New York Convention applies to the Stake.us ToS. To determine whether "[a]n arbitration agreement falls within the scope of the New York Convention," courts in the Second Circuit apply a four-factor test: "(1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope." *Drip Cap., Inc. v. M/S Goodwill Apparels*, 665 F. Supp. 3d 511, 518 (S.D.N.Y. 2023).[3]

[2] To the extent any of the Stake Defendants or Defendant Freeman are not direct signatories to the Stake.us Arbitration Agreement, those Defendants are nonetheless entitled to invoke that Arbitration Agreement and compel Plaintiff to arbitrate the dispute raised by his claims under the doctrine of equitable estoppel and/or as third-party beneficiaries to the Stake.us Arbitration Agreement. *See Catz v. Precision Global Consulting,* No. 19 Civ. 7499 (ER), 2021 WL 1600097, at *10–13 (S.D.N.Y. Apr. 23, 2021) (recognizing that parties who are not signatories to arbitration agreements may compel arbitration under a third-party beneficiary theory and/or under the doctrine of equitable estoppel).

[3] While all four elements of this test—as formulated by certain courts in this Circuit—are met here, the test's inquiry as to whether the Arbitration Agreement provides for arbitration in the territory of a signatory of the New York Convention goes beyond the plain text of the New York Convention, and thus is not required for removal. 9 U.S.C. §§ 202, 205; *see also* Restat. Law The U.S. Law of Intl. Comm. Inv. State Arb. § 2.5; *Cosgun v. Seabourn Cruise Line Ltd. Inc.*, 666 F. Supp. 3d 1270, 1288–93 (S.D. Fla. 2023) ("[N]either the Convention nor the FAA requires an arbitration agreement, as a prerequisite to our jurisdiction, to specify the arbitral forum.").

35. The Stake.us ToS, which encompasses the Stake.us Arbitration Agreement, satisfies each of the foregoing requirements:

a. First, the Stake.us ToS includes a written arbitration agreement—namely, the Stake.us Arbitration Agreement. Stake.us Decl. Ex. A ¶ 26; Stake.us Decl. Ex. B ¶ 26.

b. Second, the Stake.us Arbitration Agreement provides for arbitration in the territory of a signatory of the New York Convention. Specifically, the Stake.us Arbitration Agreement requires that the arbitration be administered by the American Arbitration Association and "be held virtually . . . except by mutual agreement of all parties." Stake.us Decl. Ex. A ¶ 26.7(a); Stake.us Decl. Ex. B ¶ 26.6(a). The United States is a signatory to the New York Convention. *See* 9 U.S.C. § 201. The American Arbitration Association's principal place of business is New York, New York. American Arbitration Association, Location, New York, New York (Headquarters), https://www.adr.org/contact-us/#location (last visited June 18, 2026). It has numerous regional offices, all of which are either in the United States or Singapore, both of which are signatories to the New York Convention. *Id.*; *see also Convention on the Recognition and Enforcement of Foreign Arbitral Awards* at 3, New York, June 10, 1958, U.N. Treaty Collection.[4]

c. Third, the Stake.us ToS is unquestionably commercial in scope. Courts interpret the "commercial" element in the broadest possible way:

> While the New York Convention, as codified in the FAA, does not expressly define "commercial," it does expressly encompass any "transaction, contract, or agreement described in" 9 U.S.C. § 2. Section 2 in

[4] Available at: https://treaties.un.org/doc/Publication/MTDSG/Volume%20II/Chapter%20XXII/XXII-1.en.pdf.

> turn includes contracts "evidencing a transaction involving commerce," 9 U.S.C. § 2 — a term the Supreme Court has interpreted "as the functional equivalent of the more familiar term 'affecting commerce' — words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power[.]"

*Belize Soc. Dev., Ltd. v. Gov't of Belize*, 794 F.3d 99, 104 (D.C. Cir. 2015); *see also Island Territory of Curaçao v. Solitron Devices, Inc.*, 356 F. Supp. 1, 13 (S.D.N.Y. 1973) ("[I]t seems clear that the full scope of 'commerce' and 'foreign commerce', as those terms have been broadly interpreted, is available for arbitral agreements and awards."). The Stake.us ToS governs Plaintiff's use of the Stake.us platform, including his ability to redeem prizes[5] and to purchase "Gold Coins" to play games.[6] Thus, the Stake.us ToS contemplates commercial transactions. *See Kelly-Starkebaum v. Papaya Gaming Ltd.*, No. 24cv2310 (DLC), 2024 WL 5135799, at *1 (S.D.N.Y. Dec. 17, 2024) (compelling arbitration under FAA pursuant to arbitration provision in terms of service for online gaming platform); *M.M. v. VGW United States, Inc.*, No. 25-cv-10514-DJC, 2026 WL 34452, at *1 (D. Mass. Jan. 6, 2026) (compelling arbitration in case related to "online casino-themed social game[]" website).

d. Finally, the Stake.us ToS is not entirely domestic in scope. Courts in this District have "consistently held" that if one party to an arbitration agreement is a foreign citizen, the arbitration agreement is not entirely domestic, such that any dispute

---

[5] *See, e.g.,* Stake.us Decl. Ex. B ¶ 13.2(a) ("The Prizes for which you can redeem your Stake Cash will be identified on the website and can change from time to time at Stake's discretion.").

[6] *See, e.g.,* Stake.us Decl. Ex. B ¶ 7.2(a) ("The purchase of Gold Coins is the purchase of a license that allows you to Participate in Standard Play Games and it is not a deposit of funds which can be withdrawn. Funds used to purchase Gold Coins will not, and cannot, be refunded to you. Gold Coins do not have any real money value.").

with the scope of the agreement "falls under the New York Convention." *Shenzhen Zongheng Domain Network Co., LTD v. Amazon.com Servs. LLC*, No. 23-cv-03334 (JLR), 2023 WL 4993662, at *3 (S.D.N.Y. Aug. 4, 2023) (collecting cases). As relevant here, Sweepsteaks, a signatory to the Stake.us ToS, is incorporated in Cyprus. *See* Compl. ¶ 48; *see also* Stake.us Decl. Ex. A ¶ 1; Stake.us Decl. Ex. B ¶ 1. Thus, the Stake ToS is not entirely domestic in scope.

## II. Removal is Timely

36. This notice of removal is timely under 9 U.S.C. § 205, which states that, where the New York Convention applies, the defendant or defendants may remove the matter "at any time before the trial thereof." *See also Goel v. Ramachandran*, 823 F. Supp.2d 206, 211 n.2 (S.D.N.Y. 2011) ("The Court notes that § 205's allowance of removal at any time before trial is another indication that § 205 is intended to be broader than the general removal statute, which requires a defendant to remove a case within thirty days of receiving the initial pleadings or being served with the summons."); *LGC Holdings, Inc. v. Julius Klein Diamonds, LLC*, 238 F. Supp. 3d 452, 463–64 (S.D.N.Y. 2017) (removal in case related to international arbitration agreement timely where no trial had yet taken place); 31 Moore's Federal Practice - Civil § 909.01 (Section 205 "expressly allows removal 'at any time before the trial,' so the usual rule requiring removal within 30 days is inapplicable to removal under Section 205.") (footnotes omitted).

37. Because no trial has taken place in this matter, removal is timely.[7]

## III. This Court is the Appropriate Venue for Removal Proceedings

38. Supreme Court of the State of New York, County of New York, the forum in which

[7] If Plaintiff files a motion to remand this action, the Stake Defendants respectfully request an opportunity to respond more fully in writing, including submission of additional affidavits and authority.

Plaintiff originally commenced this case, is located in the Southern District of New York. Therefore, this Court is the appropriate venue for removal proceedings under 9 U.S.C. § 205.

**IV. This Court has Subject-Matter Jurisdiction under 9 U.S.C. § 203**

39. Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

40. 9 U.S.C. § 203 provides that:

> An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

41. It is "well-established" that 9 U.S.C. § 203 "confers on federal courts jurisdiction to consider a motion to compel arbitration based on an agreement governed by the New York Convention, regardless of the court's power to hear the underlying dispute." *CollegeStreet Imp. & Exp. (Tinajin) Co. v. Loyalist, LLC*, 824 F. Supp 3d 432, 43 (S.D.N.Y. 2026); *see also B.D. Cooke & Partners Ltd. v. Certain Underwriters at Lloyd's*, 606 F. Supp. 2d 420, 424, 427 (S.D.N.Y. 2009) (exercising subject matter jurisdiction under 9 U.S.C. § 203 and granting motion to compel arbitration); 31 Moore's Federal Practice - Civil § 909.01 (stating that "[s]ection 203 provides that the application of the [New York] Convention confers federal-question jurisdiction").

42. Here, as explained above, supra ¶¶ 31–35, the Stake Defendants intend to move to compel arbitration under the Stake.us Arbitration Agreement, which is governed by the New York Convention. Accordingly, this Court has subject-matter jurisdiction under 9 U.S.C. § 203.[8]

---

[8] Even if the Court were to conclude that it lacks an independent basis to exercise subject matter jurisdiction over any particular claim(s) asserted in the Complaint, 28 U.S.C. § 1367 provides this Court with supplemental jurisdiction over any such claims, because they "are so related to claims in the action within [the Court's] original jurisdiction that

**CONCLUSION**

43. The Stake Defendants have established that grounds for removal exist.

44. Under 9 U.S.C. § 205, "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the [New York] Convention, the defendant or defendants may, at any time before the trial thereof, remove such action or proceeding" to federal court.

45. A copy of this Notice of Removal is being contemporaneously served on Plaintiff and filed with Supreme Court of the State of New York, County of New York, where this action was filed and is pending.

46. The Stake Defendants expressly reserve all of their respective rights and defenses. By removing the action to this Court, the Stake Defendants do not intend to waive any rights or defenses available under federal or state law. The Stake Defendants also expressly reserve the right to move to compel arbitration under 9 U.S.C. § 206 and/or seek dismissal of the Complaint under the Federal Rules of Civil Procedures. Nothing in this Notice of Removal should be construed as an admission that any of Plaintiff's allegations are accurate, suffice to state a claim, or otherwise have any merit.

---

they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

WHEREFORE, the Stake Defendants respectfully remove this action to the United States District Court for the Southern District of New York.

Dated: July 15, 2026

*/s/ David McGill*
David McGill, Esq..
C. Anne Malik, Esq.
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Ave. NW
Washington, D.C. 20037
Telephone: (212) 506-5000
Facsimile: (202 339-8500
dmcgill@orrick.com
amalik@orrick.com

*Counsel for Defendants*
MEDIUM RARE N.V. d/b/a STAKE.COM,
SWEEPSTEAKS LTD. d/b/a STAKE.US,
EASYGO GROUP HOLDINGS PTY LTD.,
EASYGO ENTERTAINMENT PTY LTD.,
MEDIUM RARE LTD., SLICEMEDIA B.V.,
BIJAN TEHRANI, and EDWARD CRAVEN