SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST
NEW YORK, NY 10001-8602
———
TEL: (212) 735-3000
FAX: (212) 735-2000
WWW.SKADDEN.COM

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON D.C.
WILMINGTON
————
ABU DHABI
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
212-735-3529
DIRECT FAX
917-777-3529
EMAIL ADDRESS
MICHAEL.MCTIGUE@SKADDEN.COM

August 5, 2026

**VIA ECF AND EMAIL**
Honorable John P. Cronan
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007
CronanNYSDChambers@nysd.uscourts.gov

RE:    *Doe v. Medium Rare N.V., et. al.,* 1:26-cv-05975 (JPC) (OTW) – Coinbase Defendants'
Pre-Motion Letter Regarding Motion to Compel Arbitration

Dear Judge Cronan:

We write on behalf of Defendants Coinbase, Inc. and Coinbase Global, Inc. (together, the
"Coinbase Defendants") to advise the Court of their intention to file a motion to compel arbitration
of Plaintiff's claims against them and to stay those claims under Section 3 of the Federal
Arbitration Act pending the outcome of arbitration.[1]

**Background**

Defendant Coinbase, Inc. operates an online platform for buying, selling, and transferring
cryptocurrencies like Bitcoin and Ethereum. To access Coinbase's services, prospective users are
required to create an account and accept the Coinbase User Agreement, which at all relevant times
has included an arbitration agreement. Courts, including other judges in this District, have
repeatedly enforced Coinbase's arbitration provision.[2]

---

[1] The parties agree that the motion to compel arbitration will defer the Coinbase Defendants'
obligation to answer or otherwise respond under Rule 12 to the complaint. *See*, *e.g.*, *JS Barkats,
PLLC v. BE, Inc.*, 2013 WL 444919, at *2 (S.D.N.Y. Feb. 6, 2013) (holding where defendant
moved to compel arbitration that "parties are permitted to file motions to stay in lieu of an answer
or other dispositive motions").

[2] *See*, *e.g.*, *Heabeart v. Coinbase, Inc.*, --- F. Supp. 3d ----, 2026 WL 1250578 (S.D.N.Y. May 7,
2026); *Reznik v. Coinbase, Inc.*, 2024 WL 1055002 (S.D.N.Y. Mar. 11, 2014); *see also*, *e.g.*,

Honorable John P. Cronan
Page 2

In an effort to circumvent arbitration, Plaintiff alleges that he opened a Coinbase account (the "First Account") when he was a minor "using his father's identification to bypass age restrictions" (Compl. ¶ 352). He asserts that he has "disaffirmed" the User Agreement by "through the filing of this Complaint" (*id.* ¶ 112) and seeks a declaration that the arbitration provision in the User Agreement is therefore "unenforceable as to Plaintiff" (*id.* ¶¶ 484-493).

But the complaint fails to mention that on his 18th birthday in 2023, Plaintiff opened an *additional* Coinbase account (the "Second Account")—this time in his own name.[3] Most recently, Plaintiff continued to use Coinbase's platform and access the Second Account after Coinbase updated its User Agreement in 2025 and provided email notice of the update to Plaintiff. A copy of the 2025 Coinbase User Agreement is attached as Exhibit A; as discussed below, that is the operative agreement. In addition, when he opened the Second Account in 2023, he agreed to the 2023 Coinbase User Agreement (attached as Exhibit B); and he accepted the 2022 Coinbase User Agreement (attached as Exhibit C) when he was using the First Account.

Notwithstanding his arbitration agreements, Plaintiff filed this lawsuit in New York state court. Plaintiff alleges that he began gambling as a minor on the online platforms operated by other defendants (the "Stake Defendants") and "incurred substantial online gambling losses" as a result. Compl. ¶¶ 11-13. Plaintiff also contends that he created a Coinbase account to "convert U.S. dollars into the cryptocurrency required to fund wagers on Stake.com." *Id.* ¶¶ 335-336.

On July 15, 2026, the Stake Defendants removed the case under 9 U.S.C. §§ 203 and 205 (which apply to arbitration agreements covered by the New York Convention) and 28 U.S.C. § 1367 (authorizing supplemental jurisdiction). Dkt. 1. Coinbase consented to the removal. Dkt. 13.

**Anticipated Arguments**

Coinbase intends to argue that its motion should be granted because Plaintiff accepted the arbitration agreement in the 2025 User Agreement (well after turning 18). That agreement covers his claims; it expressly supersedes his prior agreements (*see* Ex. A § 9.1). In the alternative, Coinbase intends to argue that Plaintiff must arbitrate under the 2022 and 2023 User Agreements.

**1. Plaintiff is required to arbitrate under the 2025 User Agreement.** Plaintiff accepted the 2025 User Agreement on the Second Account. Plaintiff received an email expressly advising him that Coinbase was updating the Agreement and providing a link to the full text of the updated terms. He then continued to use the Coinbase platform. Assessing a similar situation, Judge Rakoff recently enforced the 2025 User Agreement, concluding that "[e]ach of the plaintiffs did, in fact,

---

*Cordero v. Coinbase*, 2025 WL 2223495, at \*6 (N.D. Cal. Aug. 5, 2025); *Kamath v. Coinbase, Inc.*, 2024 WL 950163 (N.D. Cal. Mar. 5, 2024); *Pearl v. Coinbase Glob., Inc.*, 2023 WL 1769190 (N.D. Cal. Feb. 3, 2023); *Aggarwal v. Coinbase, Inc.*, 685 F. Supp. 3d 867 (N.D. Cal. 2023); *Donovan v. Coinbase Glob., Inc.*, 649 F. Supp. 3d 946 (N.D. Cal. 2023); *Alfia v. Coinbase Glob., Inc.*, 2022 WL 3205036 (N.D. Cal. July 22, 2022).

[3] Coinbase's records show that Plaintiff clicked to accept the 2023 Coinbase User Agreement four *minutes* before his 18th birthday. But Plaintiff did not complete the onboarding process for the Second Account and verify his identity and date of birth until after he had turned 18 years old.

Honorable John P. Cronan
Page 3

agree to the operative User Agreement" through continued use of the platform after receiving the email notice. *Heabeart*, 2026 WL 1250578, at *3. As another court put it with respect to an earlier Coinbase agreement update, "[t]he email and [Plaintiff's] continued use of Coinbase's services is enough to establish reasonably conspicuous notice and assent." *Kamath*, 2024 WL 950163, at *4.

The scope of the arbitration clause in the 2025 User Agreement is broad and easily covers Plaintiff's claims. Plaintiff and Coinbase agreed to arbitrate "any dispute, claim, disagreements arising out of or relating in any way to your access to or use of the Services or of the Coinbase Site, any Communications you receive, ..., the Services, or the User Agreement." Ex. A, Appendix 5, "Disputes Defined." Plaintiff's claims fall squarely within this broad language. For example, Plaintiff alleges that Coinbase should have done more to prevent him from creating and using a Coinbase account to "convert U.S. dollars into the cryptocurrency required to fund wagers on Stake.com." Compl. ¶¶ 335-336. And he seeks to litigate the validity and enforceability of the Coinbase User Agreement (*id.* ¶¶ 392-402, 484-493)—although he plainly cannot seek to disaffirm the 2025 User Agreement, which he accepted about *two years after* reaching the age of majority.

**2. Alternatively, Plaintiff is required to arbitrate under the 2022 or 2023 User Agreements.** Even if the 2025 User Agreement did not apply here, Plaintiff is required to arbitrate under his prior arbitration agreements contained in the 2022 and 2023 User Agreements. Both agreements expressly delegate gateway questions of arbitrability to the arbitrator—including questions about the enforceability, scope, and interpretation of the arbitration agreement itself and the User Agreement as a whole. The delegation provisions make compelling arbitration under these earlier agreements straightforward: Under both the laws of California (the governing law specified in the 2022, 2023, and 2025 User Agreements) and New York (where Plaintiff resides), purported disaffirmance by a minor is a defense to the *enforceability* of a contract, not its *formation*. And federal courts routinely hold that it is for the arbitrator to decide disaffirmance challenges when the parties have delegated enforceability issues to the arbitrator. *See*, *e.g.*, *Williams v. Moon Active Ltd.*, 811 F. Supp. 3d 1079, 1084 (N.D. Cal. 2025) (California law); *Ziboukh v. Whaleco, Inc.*, 795 F. Supp. 3d 349, 377-39 (E.D.N.Y. 2025) (New York law; collecting cases).

Even if the Court reaches Plaintiff's disaffirmance defenses, it should reject those defenses. Plaintiff has no basis to disaffirm the 2023 User Agreement that he accepted in connection with opening the Second Account on his 18th birthday. Moreover, Plaintiff concedes in his complaint that he has not attempted to disaffirm *any* User Agreement until filing this lawsuit in April 2026, nearly three years after turning 18. That is far too long; "courts across California generally agree that a 'reasonable' time is *within a year* after reaching majority." *Velazquez v. CEC Entmt., LLC*, 2024 WL 4560169, at *3 (C.D. Cal. Oct. 23, 2024) (emphasis added).

**Proposed Schedule**

The Coinbase Defendants agree with the joint briefing schedule set forth in the Stake Defendants' pre-motion letter.

Honorable John P. Cronan
Page 4

We thank the Court for its attention to this matter.

Respectfully submitted,

*/s/* Michael W. McTigue Jr.
Michael W. McTigue Jr.

cc:      All counsel of record (via ECF)

(w/encls.)