**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

JOHN DOE,

Plaintiff,

-against-

MEDIUM RARE N.V. d/b/a STAKE.COM, SWEEPSTEAKS LTD. d/b/a STAKE.US, EASYGO GROUP HOLDINGS PTY LTD., EASYGO ENTERTAINMENT PTY LTD., MEDIUM RARE LTD., SLICEMEDIA B.V., BIJAN TEHRANI, EDWARD CRAVEN, CHRISTOPHER FREEMAN COINBASE, INC., and COINBASE GLOBAL, INC.,

Defendants.

Case No:1:26-cv-5975 (JPC) (OTW)

**STAKE DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

BACKGROUND ..... 2

ARGUMENT ..... 6

I. Legal Standard ..... 6

II. A Valid Arbitration Agreement Exists ..... 7

A. The Stake.us ToS is Enforceable ..... 7

B. Plaintiff Cannot Rely on His Former Status as a Minor to Avoid Arbitration ..... 8

III. The Arbitration Agreement Encompasses Plaintiff's Claims ..... 9

A. The Arbitration Agreement Delegates Arbitrability Disputes to an Arbitrator ..... 9

B. The Claims Fall Within the Arbitration Agreement's Broad Scope ..... 11

IV. The Non-Signatory Stake Defendants Are Entitled to Compel Arbitration Under the Arbitration Agreement ..... 12

A. The Non-Signatory Stake Defendants Can Compel Arbitration as Third-Party Beneficiaries to the Arbitration Agreement ..... 12

B. The Non-Signatory Stake Defendants Can Compel Arbitration Under the Doctrine of Equitable Estoppel ..... 13

V. The Court Should Stay This Action As To The Stake Defendants ..... 16

CONCLUSION ..... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alghanim v. Alghanim*,
828 F. Supp. 2d 636 (S.D.N.Y. 2011)....................14

*Alonso v. Google LLC*,
No. 5:23-cv-91-JA-PRL, 2023 WL 6313930 (M.D. Fla. Sept. 28, 2023)....................8

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)....................11

*Awad v. Extended Nursing Pers.*,
1:24-cv-02117-MKV, 2025 WL 753865 (S.D.N.Y. Mar. 10, 2025)....................15

*Azagrar v. Bank of Am. Corp.*,
No. 23-CV-9531 (RER) (ST), 2025 WL 2524445 (E.D.N.Y. July 30, 2025)....................11

*Bakon v. Rushmore Serv. Center, LLC*,
16-CV-6137, 2017 WL 2414639 (E.D.N.Y. June 2, 2017)....................12, 13

*Behrens v. JPMorgan Chase Bank N.A.*,
No. 16-CV-5508 (VSB), 2019 WL 1437019 (S.D.N.Y. Mar. 31, 2019), *aff'd*,
No. 21-2603-CV, 2024 WL 1090856 (2d Cir. Mar. 13, 2024)....................6

*Camilo v. Lyft, Inc.*,
384 F. Supp. 3d 435 (S.D.N.Y. 2019)....................7

*Capolongo v. Spotify USA Inc.*,
No. 25-cv-9216 (JGK), 2026 WL 1179653 (S.D.N.Y. Apr. 30, 2026)....................11

*Contec Corp. v. Remote Sol., Co., Ltd.*,
398 F.3d 205 (2d Cir. 2005)....................10

*Credit Suisse AG v. Graham*,
533 F. Supp. 3d 122 (S.D.N.Y. 2021)....................6

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....................6

*Desarrolladora La Ribera v. Anderson*,
24-CV-67 (LAK) (BCM) 2024 WL 5186600 (S.D.N.Y. Dec. 20, 2024)....................14

*Doctor's Assoc., LLC v. Tripathi*,
794 F. App'x 91 (2d Cir. 2019) ....................10

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023) ....................8

*Fayez-Olabi v. Credit Acceptance Corp.*,
21-CV-5443 (AMD)(LGD), 2022 WL 2918119 (E.D.N.Y. July 25, 2022)....................6

*Feld v. Postmates, Inc.*,
442 F. Supp. 3d 825 (S.D.N.Y. 2020)....................8

*Feroce v. Bloomingdale's Inc.*,
12-CV-5014 (SJF)(GRB), 2014 WL 294199 (E.D.N.Y. Jan. 24, 2014) ....................6

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995)....................6

*In re Generali Covid-19 Travel Ins. Litig.*,
577 F. Supp. 3d 284 (S.D.N.Y. 2021)....................12

*Glover v. Bob's Disc. Furniture, LLC*,
621 F. Supp. 3d 442 (S.D.N.Y. 2022)....................8

*Hall v. Sweepsteakes Ltd.*,
No. 3:25-cv-345-RAH, 2026 WL 701560 (M.D. Ala. Mar. 12, 2026)....................2, 10

*Havens v. Hartford Fin. Servs. Grp.*,
18 Civ. 488 (PGG), 2020 WL 1244235 (S.D.N.Y. Mar. 13, 2020)....................13, 14

*Keyu Long v. Amway Corp.*,
306 F. Supp. 3d 601 (S.D.N.Y. 2018)....................9, 10

*M.M. v. Sweepsteakes Ltd.*,
No. CV 25-11481-RGS, 2025 WL 3240413 (D. Mass. Nov. 20, 2025)....................2, 10

*Macioce v. Hisense USA Corp.*,
25 Civ. 1608 (PAE), 2025 WL 3685179 (S.D.N.Y. Dec. 19, 2025) ....................15

*Martinez v. GAB.K, LLC*,
741 F. Supp. 3d 26 (S.D.N.Y. 2024)....................14

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)....................8

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985)....................11

*Pilon v. Discovery Commc'ns, LLC*,
769 F. Supp. 3d 273 (S.D.N.Y. Mar. 10, 2025) ....................7

*Ragone v. Atl. Video*,
595 F.3d 115 (2d Cir. 2010)....................13

*Register.com, Inc. v. Verio, Inc.*,
356 F.3d 393 (2d Cir. 2004)....................7

*Reznik v. Coinbase*,
23-CV-10248 (MMG), 2024 WL 1055002 (S.D.N.Y. Mar. 11, 2024) ....................7

*Ridley v. Sweepsteaks Ltd.*,
1:25-cv-2511, 2026 WL 2201149 (E.D. Va. July 30, 2026) ....................2

*Sarah v. Google LLC*,
No. 1:23-cv-223, 2023 WL 6618266 (W.D. Mich. Oct. 11, 2023) ....................9

*Smith v. Spizzirri*,
601 U.S. 472 (2024)....................16

*I.C. ex rel. Solovsky v. Delta Galil USA*,
135 F. Supp. 3d 196 (S.D.N.Y. 2015)....................8

*Spear, Leeds & Kellogg v. Central Life Assurance Co.*,
85 F.3d 21 (2d Cir. 1996)....................12

*In re StockX Customer Data Sec. Breach Litig.*,
19 F.4th 873 (6th Cir. 2021) ....................9

*Sucafina, NA Inc. v. Green Coffee Co. Holdings, LLC*,
No. 1:25-cv-05752 (JLR), 2025 WL 3640410 (S.D.N.Y. Dec. 16, 2025)....................5, 6

*TradeComet.com LLC v. Google, Inc.*,
435 F. App'x 31 (2d Cir. 2011) ....................12

*Vasell v. SeatGeek, Inc.*,
24-cv-00932 (NCM) (JRC), 2025 WL 240912 (E.D.N.Y. Jan. 17, 2025) ....................11

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
489 U.S. 468 (1989)....................6

*Walters v. Starbucks Corp.*,
623 F. Supp. 3d 333 (S.D.N.Y. 2022)....................9

*Ziboukh v. Whaleco, Inc.*,
795 F. Supp. 3d 349 (E.D.N.Y. 2025) ....................8, 9

**Statutes**

9 U.S.C. § 3 ........................................................ 16

FAA § 2 ........................................................ 5

Federal Arbitration Act ("FAA") ........................................................ 2, 5, 6, 16

New York General Business Law § 349 ........................................................ 4, 11

**Other Authorities**

AAA Commercial Arbitration Rules & Mediation Procedures R-7(a) (2022) ........................................................ 10

Defendants Medium Rare N.V. d/b/a Stake.com ("Stake.com"), Sweepsteaks Ltd. d/b/a Stake.us ("Stake.us"), Easygo Group Holdings Pty Ltd., Easygo Entertainment Pty Ltd., Medium Rare Ltd., Slicemedia B.V., Bijan Tehrani, and Edward Craven (collectively, the "Stake Defendants"), hereby move to compel arbitration and stay these proceedings.

## INTRODUCTION

Despite voluntarily agreeing to arbitrate any disputes with the Stake Defendants as an adult, Plaintiff elected to ignore his contractual obligation to arbitrate in favor of commencing litigation in a public forum. The reason is no mystery: as Plaintiff's lawyers have made clear on their national publicity tour, this case is designed to serve as a beachhead from which they hope to mount a broader, multi-district campaign against the Stake Defendants.[1] While this ambitious agenda may hold the allure of higher economic upside (at least for Plaintiff's lawyers), it does not alter the contractual reality that Plaintiff remains obliged to arbitrate his underlying claims.

The analysis is straightforward: Plaintiff agreed to arbitrate any disputes against the Stake Defendants through a clear and conspicuous online mechanism that other federal courts have deemed enforceable under directly analogous circumstances. When Plaintiff opened his Stake.us account, the registration screen told him that clicking "Play Now" meant he had read and acknowledged the Terms of Service. And even if, as the Complaint alleges, Plaintiff was a minor when he first accepted those Terms, he did not disavow that agreement as an adult. To the contrary,

[1] *See, e.g.* "Online Gambling's Hidden Victims," Apr. 13, 2026, https://www.youtube.com/watch?v=bJNHr1-OpPo at 8:09 (Plaintiff's counsel describing plans for "growing this case nationwide, maybe into an MDL"); Rafferty Domnick, Cunningham & Yaffa to Host Community Event on Protecting Children Online in Pensacola, Internet Archive, May 8, 2026, https://web.archive.org/web/20260613214813/https://www.pbglaw.com/news/rafferty-domnick-cunningham-yaffa-to-host-community-event-on-protecting-children-online-in-pensacola/ (archived press release announcing May 2026 townhall event hosted by Plaintiff's counsel addressing "emerging concerns around underage gambling and gaming platforms"); *see also* Declaration of David McGill in support of the Stake Defendants' Motion to Compel Arbitration and Stay Proceedings ("McGill Declaration") Exhibit C.

he adopted and renewed it by accepting updated Terms, including the mandatory arbitration provision, as an adult.

Because the most recent arbitration provision to which Plaintiff agreed unambiguously covers "any and all past, present and future disputes" with the Stake Defendants, this dispute does not belong in court. Under the Federal Arbitration Act ("FAA") and directly applicable precedent, the Court should compel arbitration and stay the action as to the Stake Defendants. *See, e.g., Ridley v. Sweepsteaks Ltd.,* 1:25-cv-2511 (LMB), 2026 WL 2201149, at *1 (E.D. Va. July 30, 2026) (granting motion to compel arbitration); *Hall v. Sweepsteakes Ltd.*, No. 3:25-cv-345-RAH, 2026 WL 701560, at *6 (M.D. Ala. Mar. 12, 2026) (same), and *M.M. v. Sweepsteakes Ltd.*, No. CV 25-11481-RGS, 2025 WL 3240413, at *1 (D. Mass. Nov. 20, 2025) (same).

## BACKGROUND

The Stake Defendants are a group of entities and individuals allegedly associated with the websites Stake.com and Stake.us. Compl. ¶¶ 49, 61, 106, 145. According to the Complaint, Medium Rare N.V. is a Curaçao limited liability company that "owns and operates the online casino Stake.com," *id.* ¶¶ 44, 61, and Sweepsteaks Ltd. is a Cyprus limited liability company that allegedly operates Stake.us, an online "sweepstakes casino." *Id.* ¶¶ 48, 145. The remaining Stake Defendants—Easygo Group Holdings Pty. Ltd., Easygo Entertainment Pty Ltd., Medium Rare Ltd., Slicemedia B.V., and Bijan Tehrani, and Edward Craven—are corporate entities or individuals allegedly affiliated with Stake.com and/or Stake.us. *Id.* ¶¶ 39–48.

Plaintiff represents that he is a resident of Westchester County, New York, born on April 26, 2005. *Id.* ¶¶ 10, 337.[2] He alleges that, between the ages of 13 and 19, he "engaged in frequent

[2] Prior to this matter's removal, the Supreme Court of New York, County of New York, issued an order granting Plaintiff's Application to withhold his name from the public docket in this case. ECF No. 1.3 at 48–51(NYSECF No. 44).

online gambling activity," *id.* ¶ 12, on platforms allegedly operated by certain of the Stake Defendants and "incurred substantial online gambling losses" as a result. *Id.* ¶ 13. He also claims to have been "diagnosed with compulsive gambling disorder and panic disorder, [and] suffers from anxiety, depression, and recurring panic attacks." *Id.* ¶ 20. All of Plaintiff's claims arise from these core allegations.

According to the Complaint, "on or about November 26, 2018," Plaintiff registered for an account on Stake.com.[3] Approximately three years prior to commencing this litigation, on April 1, 2023, he also created an account on Stake.us. McGill Decl. Exhibit B (the "Stake.us Declaration"). To create his Stake.us account, Plaintiff had to enter certain identifying information and select a username and password. *Id.* ¶¶ 7–8. Upon doing so, the registration screen informed him that, by clicking "Play Now," he was confirming that he had "read and acknowledge[d]" the Stake.us Terms of Service (the "Stake.us ToS" or the "Terms"). *Id.* ¶ 8. The technical architecture of Stake.us requires users to click "Play Now" before proceeding to play games. *Id.* ¶ 8. At approximately 5:05 a.m. on April 1, 2023, Plaintiff clicked "Play Now," thereby signaling his acceptance of the ToS in effect as of that date and time. *Id.* ¶ 9 & Ex. A.

Thereafter, on September 19, 2023—after Plaintiff turned 18 years old—he logged into Stake.us again. When he did so, the platform displayed an updated version of the Stake.us ToS (the "Updated Stake.us ToS"), attached as Exhibit B to the Stake.us Declaration. *Id.* ¶ 13. In order

[3] Based on the personal identifying information Plaintiff provided Defendants, Stake.com has identified two Stake.com accounts that Plaintiff created: the first on August 31, 2017, and the second on May 24, 2019. McGill Decl. Exhibit A (the "Stake.com Declaration") ¶¶ 6–7. Stake.com's records also show that Plaintiff submitted his personally identifiable information to one of his Stake.com accounts confirming his identity. *See* Declaration of Jarrod Anthony Febbraio Regarding Stake.com in support of the Stake Defendants' Motion to Compel Arbitration and Stay Proceedings ¶¶ 7–9; Exhibit A. When Plaintiff submitted his New York license to this Stake.com account, his account was automatically flagged as being from a restricted region, the United States, and was closed by Stake.com. *See Id.* Exhibits B–C.

to proceed with his log-in, the platform required Plaintiff to scroll through the Updated Stake.us ToS in their entirety before clicking a checkbox to "Accept"—which Plaintiff did that day. *Id.*

Both versions of the Stake.us ToS that Plaintiff accepted included a substantively identical arbitration provision (the "Stake.us Arbitration Agreement" or the "Arbitration Agreement"), which binds Plaintiff to arbitrate any disputes with Stake.us and various categories of related entities and individuals, as applicable to the other Stake Defendants here. In pertinent part, the Arbitration Agreement states:

> By agreeing to these Terms, you agree that any and all past, present and future disputes, claims or causes of action between you and Stake or any of its affiliates, subsidiaries, ultimate parent and parent companies, partners, officers, directors, employees, contractors, shareholders, agents, licensors, subcontractors or suppliers, which arise out of or are related in any way to these Terms, the formation of these Terms, the validity or scope of this clause 26 (Dispute Resolution and Agreement to Arbitrate), your Participation in or other access to or use of the Games or the Platform, or any other dispute between you and Stake or any of its affiliates, subsidiaries, ultimate parent and parent companies, partners, officers, directors, employees, contractors, shareholders, agents, licensors, subcontractors or suppliers, including as to the arbitrability of any of the foregoing, and whether arising prior to or after your agreement to this clause 26 (Dispute Resolution and Agreement to Arbitrate) (all of the foregoing, collectively "Disputes"), will be governed by the [arbitration] procedure set out [in the Stake.us ToS].

*See* Stake.us Decl. Ex. A ¶ 26.3; Stake.us Decl. Ex. B ¶ 26.3.

The plain language of this Arbitration Agreement covers any and all disputes arising before or after Plaintiff's agreement to the clause, up to and including arbitration of any disputes regarding arbitrability or the validity of the Stake.us ToS themselves. The Arbitration Agreement also covers any disputes with all the Stake Defendants which, according to Plaintiff, operate a "single engaged enterprise" with "a complete unity of ownership and interest" operating as "mere departments of a single global gambling syndicate," that is "wholly own[ed] and direct[ed]" by "Defendants Tehrani and Craven." Compl. ¶¶ 34–36, 40–46, 57–62.

On April 10, 2026, Plaintiff filed his Complaint for Damages (the "Complaint," ECF No. 1.2 at 27–107 (NYSCEF No. 6)) asserting claims related to his alleged injuries. In the Complaint, Plaintiff asserts claims for violations of New York General Business Law § 349 against all Defendants (Count I); gross negligence and negligence against the Coinbase Defendants (Counts II and III); negligence per se against the Stake Defendants (Count IV); negligence against all Defendants except the Coinbase Defendants (Count V); and unjust enrichment against all defendants (Count VI). He also seeks a declaratory judgment pursuant to CPLR § 3001 (Count VII). Because each of Plaintiff's claims against the Stake Defendants raises a "dispute" with Stake.us or entities and individuals falling within one of related enumerated categories, those claims must be arbitrated. And even if Plaintiff contends otherwise, the ToS make clear that any dispute as to arbitrability must be referred to the arbitrator for determination:

> We both agree to arbitrate. By agreeing to these Terms, both you and Stake agree that any and all Disputes, including without limitation any question regarding the existence, validity, enforceability, or termination of these Terms and/or this clause 26 (Dispute Resolution and Agreement to Arbitrate) as well as the decision of whether the Dispute should be arbitrated in the first place, shall be referred to and finally resolved by arbitration administered by the American Arbitration Association (AAA), the [r]ules of which are deemed to be incorporated by reference into this clause. In agreeing to this binding commitment to arbitrate your Disputes, you agree that you waive any right to proceed in a court of law or to have your claims heard by a jury. The arbitration shall: (1) be conducted by a single, neutral arbitrator in the English language; (2) be held virtually and not in person for all proceedings related to the arbitration, except by mutual agreement of all parties; and (3) be limited to one deposition per party, except by mutual agreement of all parties. Furthermore, in cases where neither party's claim(s) or counterclaim(s) exceed $25,000, both parties agree to waive an arbitration hearing and resolve the dispute solely through submissions of documents to the arbitrator. No award or procedural order made in the arbitration shall be published. The AAA rules, as well as instructions on how to file an arbitration proceeding with the AAA, appear at adr.org, or you may call the AAA at 1-800-778-7879.

*See* Stake.us Decl. Ex. A ¶ 26.7; Stake.us Decl. Ex. B ¶ 26.6.

## ARGUMENT

### I. Legal Standard

"Under Section 2 of the FAA, commercial agreements to submit to arbitration are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Sucafina, NA Inc. v. Green Coffee Co. Holdings, LLC*, No. 1:25-cv-05752 (JLR), 2025 WL 3640410, at *2 (S.D.N.Y. Dec. 16, 2025) (modifications and quotation marks omitted). "By its terms, the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which as arbitration agreement has been signed." *Credit Suisse AG v. Graham*, 533 F. Supp. 3d 122, 128 (S.D.N.Y. 2021) (emphasis original) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). "To determine whether a parties' dispute is subject to arbitration, courts in the Second circuit consider (1) whether the parties have entered into a valid agreement to arbitration, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *Behrens v. JPMorgan Chase Bank N.A.*, No. 16-CV-5508 (VSB), 2019 WL 1437019, at *11 (S.D.N.Y. Mar. 31, 2019), *aff'd*, No. 21-2603-CV, 2024 WL 1090856 (2d Cir. Mar. 13, 2024).

In deciding whether parties agreed to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts," *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), including by determining whether the parties have demonstrated mutual assent to the agreement "by words or by conduct." *Feroce v. Bloomingdale's Inc.*, 12-CV-5014 (SJF)(GRB), 2014 WL 294199, at *6 (E.D.N.Y. Jan. 24, 2014). Similarly, in determining whether a claim falls within the scope of an arbitration agreement, courts "give effect to the parties' intent as expressed by the plain language of the [arbitration] provision." *Fayez-Olabi v. Credit Acceptance Corp.*, 21-CV-5443 (AMD)(LGD), 2022 WL 2918119, at *4 (E.D.N.Y. July 25, 2022). When conducting

these analyses, however, "due regard must be given to the federal policy favoring arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989); *see also Sucafina*, 2025 WL 3640410, at *2 ("The Supreme Court has emphasized that the FAA establishes a liberal federal policy favoring arbitration agreements.") (internal quotation marks omitted).

## II. A Valid Arbitration Agreement Exists

Because Plaintiff was provided with reasonable notice of the Stake.us ToS and the Arbitration Agreement contained therein, he is bound to arbitrate his claims. Irrespective of whether Plaintiff first agreed to the Stake.us ToS, his subsequent acceptance of the Updated Stake.us ToS as an adult obligates him to arbitrate all of his claims against the Stake Defendants.

### A. The Stake.us ToS is Enforceable

"[M]utual assent is essential to the formation of a contract and a party cannot be held to have contracted if there was no assent or acceptance." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004). In the context of web-based contracts specifically, "[c]ourts have made it clear that an electronic click can suffice to signify the acceptance of a contract as long as the language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 439 (S.D.N.Y. 2019).

Here, as described above, when Plaintiff visited Stake.us on September 19, 2023, he was required to scroll through the Updated Stake.us ToS in its entirety before he clicked "Accept" and proceeded with his login that day. *See supra* at 3–4. Courts in this Circuit have held that online agreements of this type—referred to as "[s]crollwrap contracts"—are "essentially always enforceable." *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 288 (S.D.N.Y. Mar. 10, 2025); *see also Reznik v. Coinbase*, 23-CV-10248 (MMG), 2024 WL 1055002, at *4 n.4 (S.D.N.Y.

Mar. 11, 2024) ("[T]he Court notes that the form in which the Coinbase User Agreements were presented to Coinbase users (either as a 'clickwrap' or 'scrollwrap' agreement) has repeatedly been held sufficient to support a finding of mutual assent."). Accordingly, at the very least, the Updated Stake.us ToS—and the Agreement contained within it—remain binding on Plaintiff.[4]

### B. Plaintiff Cannot Rely on His Former Status as a Minor to Avoid Arbitration

In his Complaint, Plaintiff argues that he cannot be bound by the Arbitration Agreement because he "was a minor lacking legal capacity at the time of any purported assent." Compl. ¶ 112. This is incorrect. As noted above, Plaintiff agreed to the Updated Stake.us ToS on September 19, 2023, after he turned eighteen. And nothing in the resulting Arbitration Agreement limits its scope to claims that arose only after Plaintiff became an adult. To the contrary, the Stake.us Arbitration Agreement applies to "any and all past, present and future disputes, claims or causes of action." Stake.us Decl. Ex. B ¶ 26.3. Thus, when he voluntarily agreed to the Updated Stake.us ToS as an adult, Plaintiff agreed to arbitrate *all* his disputes with Stake.us or the related Stake Defendants, not just future disputes. *See* Declaration of Jarrod Anthony Febbraio Regarding Stake.us in

---

[4] Plaintiff's original acceptance of the Stake.us ToS on April 1, 2023 also formed an enforceable agreement to arbitrate. *See, e.g., Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) (terms of service enforceable where registration screen contained language directly below registration button stating that "[b]y creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY"); *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 705-08 (2d Cir. 2023) (similar); *see also Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 830-32 (S.D.N.Y. 2020) (similar). Although Plaintiff was allegedly a minor when he first accepted the Stake.us ToS, he subsequently ratified his acceptance by continuing to access the Stake.us platform at least two times after he turned eighteen. *See* Declaration of Jarrod Anthony Febbraio Regarding Stake.us in support of the Stake Defendants' Motion to Compel Arbitration and Stay Proceedings ¶¶ 7–8; Exhibit B; *See, e.g., Glover v. Bob's Disc. Furniture, LLC*, 621 F. Supp. 3d 442, 448 (S.D.N.Y. 2022) (A party may ratify a voidable contract "by 'intentionally accepting benefits under the contract, by remaining silent or acquiescing in the contract for a period of time after he has the opportunity to avoid it, or by acting upon it.'"). And having accepted the benefit of access to Stake.us's platform by accepting the Stake.us ToS, he should be estopped from disavowing the mandatory arbitration provision in those terms. *See Ziboukh v. Whaleco, Inc.*, 795 F. Supp. 3d 349, 397 n. 20 (E.D.N.Y. 2025) ("The Court finds Plaintiffs' argument that equitable estoppel does not apply to the Minor Users' claims unavailing for a similar reason. Plaintiffs do not dispute that the Minors were 'able to use the Temu service to shop for and purchase goods.' . . . They accordingly obtained a benefit from Temu and cannot disaffirm the Terms while retaining the benefit."); *see also I.C. ex rel. Solovsky v. Delta Galil USA*, 135 F. Supp. 3d 196, 210 (S.D.N.Y. 2015).

support of the Stake Defendants' Motion to Compel Arbitration and Stay Proceedings ¶¶ 7–8; Exhibits A–B. *See Alonso v. Google LLC*, No. 5:23-cv-91-JA-PRL, 2023 WL 6313930, at *2–3 (M.D. Fla. Sept. 28, 2023) (enforcing forum selection clause to which party agreed after she turned eighteen in case related to claims that arose when she was a minor); *Sarah v. Google LLC*, No. 1:23-cv-223, 2023 WL 6618266, at *4 (W.D. Mich. Oct. 11, 2023) (same).

## III. The Arbitration Agreement Encompasses Plaintiff's Claims

### A. The Arbitration Agreement Delegates Arbitrability Disputes to an Arbitrator

As a threshold matter, the Court need not—and should not—decide whether Plaintiff's claims against the Stake Defendants are arbitrable because the parties clearly and unmistakably delegated that determination to the arbitrator.

Specifically, the Stake.us ToS states that an arbitrator, not a court, shall decide "any and all Disputes, including without limitation any question regarding the existence, validity, enforceability, or termination of [the Stake.us ToS] and/or [the arbitration clause] . . . as well as the decision of whether the Dispute should be arbitrated in the first place." Stake.us Decl. Ex. A ¶ 26.7; Stake.us Decl. Ex. B ¶ 26.6. Courts routinely enforce this type of delegation provision. *See, e.g. Walters v. Starbucks Corp.*, 623 F. Supp. 3d 333, 338–39 (S.D.N.Y. 2022) (similar); *Keyu Long v. Amway Corp.*, 306 F. Supp. 3d 601, 608–09 (S.D.N.Y. 2018) (similar). And they do so even if a minor has challenged the validity of a contract. *See, e.g., Ziboukh v. Whaleco, Inc.,* 795 F. Supp. 3d 349, 398 (E.D.N.Y. 2025) (collecting cases and concluding that "[m]inor [u]sers' claims, including their claims regarding disaffirming their contract with [a website], are thus voidable, rather than void, and their claims relating to the enforceability of the Terms are therefore delegated to the arbitrator"); *In re StockX Customer Data Sec. Breach Litig.,* 19 F.4th 873, 884

(6th Cir. 2021) ("[P]laintiffs' infancy defense [to a motion to compel arbitration] is a matter of enforceability covered under the delegation provision.").[5]

Where, as here, the delegation clause is clear and unmistakable, the Court's role is limited: it must enforce the delegation provision and send all threshold disputes to the arbitrators "*absent a specific challenge to the delegation clause by the party resisting arbitration*." *Long v. Amway Corp.*, 306 F. Supp. 3d 601, 608 (S.D.N.Y. 2018) (emphasis in original). Here, the Complaint only purports to challenge application of the delegation clause by broadly alleging that "Plaintiff lacked capacity to contract and has disaffirmed and purported agreement." Compl. ¶ 408. This general challenge—which applies equally to the whole Stake.us ToS—fails on account of Plaintiff agreeing to the same provision as an adult, *see supra* at 8–9, and he has not identified any other credible challenge specifically directed at the delegation clause. Under analogous circumstances, other federal courts have enforced the Stake.us delegation provision and referred threshold questions as to arbitrability to the arbitrator for resolution. *See Hall v. Sweepsteakes Ltd.,* No. 3:25-cv-345-RAH, 2026 WL 701560, at *6 (M.D. Ala. Mar. 12, 2026) (granting Stake.us's motion to compel arbitration under the same ToS and staying case pending arbitration); *M.M. v. Sweepsteakes Ltd.,* No. CV 25-11481-RGS, 2025 WL 3240413, at *1 (D. Mass. Nov. 20, 2025) (enforcing Stake.us ToS and sending issue of arbitrability to arbitrator).

[5] The Stake.us Terms also incorporate the American Arbitration Association ("AAA") rules, Stake.us Decl. Ex. A ¶ 26.7; Stake.us Decl. Ex. B ¶ 26.6, which similarly dictate that the arbitrator "rule[s] on his or her own jurisdiction," including disputes over an agreement's "existence, scope, or validity . . . or to the arbitrability of any claim or counterclaim." *See* AAA Commercial Arbitration Rules & Mediation Procedures R-7(a) (2022). This, too, supports delegating threshold arbitrability disputes to the arbitrator. *See Doctor's Assoc., LLC v. Tripathi*, 794 F. App'x 91, 94 (2d Cir. 2019) ("The parties expressly incorporated the Commercial Rules of the [AAA] into the arbitration agreement, and those rules clearly empower arbitrators to resolve 'any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.'"); *see also Contec Corp. v. Remote Sol., Co., Ltd.*, 398 F.3d 205, 208-11 (2d Cir. 2005) (finding incorporation of the AAA Commercial Arbitration Rules into arbitration agreement delegated question of arbitrability to arbitrator).

**B. The Claims Fall Within the Arbitration Agreement's Broad Scope**

Even if this Court were to disregard the delegation provision and determine for itself whether Plaintiff's claims fall within the Arbitration Agreement's scope, they unquestionably do. Courts "liberally . . . construe the scope of arbitration agreements," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 627 (1985), and should compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am*., 475 U.S. 643, 650 (1986).

Here, the Arbitration Agreement encompasses "*any* . . . dispute between [Plaintiff] and [Stake.us] or any of its affiliates, subsidiaries, ultimate parent and parent companies, partners, officers, directors, employees, contractors, shareholders, agents, licensors, subcontractors or suppliers . . . whether arising prior to or after [Plaintiff's] agreement to [the Stake.us Arbitration Agreement]." *See* Stake.us Decl. Ex. A ¶ 26.3; Stake.us Decl. Ex. B ¶ 26.3. Courts in this Circuit routinely enforce arbitration agreements of similarly broad scope, including where, as here, a plaintiff asserts statutory and common law tort claims. *See, e.g. Capolongo v. Spotify USA Inc.*, No. 25-cv-9216 (JGK), 2026 WL 1179653, at *1, *6 (S.D.N.Y. Apr. 30, 2026) (compelling arbitration of unjust enrichment and Section 349 claims based on arbitration agreement covering "any dispute"); *Azagrar v. Bank of Am. Corp.*, No. 23-CV-9531 (RER) (ST), 2025 WL 2524445, at *2, *4 (E.D.N.Y. July 30, 2025) (compelling arbitration of negligence and Section 349 claims based on arbitration agreement covering "any disputes"). And courts enforce such provisions even where the alleged claims arose before the parties entered into the arbitration agreements at issue. *See, e.g. Vasell v. SeatGeek, Inc.*, 24-cv-00932 (NCM) (JRC), 2025 WL 240912, at *7 (E.D.N.Y. Jan. 17, 2025) ("Arbitration clauses with . . . broad terms covering 'any dispute, claim or

controversy' have been given retroactive effect in this Circuit."); *TradeComet.com LLC v. Google, Inc.*, 435 F. App'x 31, 34 (2d Cir. 2011) ("[C]ourts have found claims arising from or related to conduct occurring before the effective date of an arbitration clause to be *within* the scope of a clause that 'is not limited to claims arising under the agreement itself.'") (emphasis original). Because this action represents a "dispute" between Plaintiff and Stake.us (and various alleged corporate affiliates, officers, directors, employees, and/or shareholders), *see* Compl. ¶¶ 410–93, the claims asserted against the Stake Defendants fall squarely within the scope of this Arbitration Agreement.[6]

## IV. The Non-Signatory Stake Defendants Are Entitled to Compel Arbitration Under the Arbitration Agreement

The Arbitration Agreement not only binds Plaintiff to arbitrate claims against Stake.us (as the direct signatory to the Stake.us ToS), but also any claims against the remaining Stake Defendants (collectively, the "Non-Signatory Stake Defendants") both in their capacity as third-party beneficiaries to the Arbitration Agreement and under the doctrine of equitable estoppel.

### A. The Non-Signatory Stake Defendants Can Compel Arbitration as Third-Party Beneficiaries to the Arbitration Agreement

Courts in the Second Circuit have recognized that a non-signatory to an arbitration agreement may enforce that arbitration agreement as a third-party beneficiary. *See, e.g., In re Generali Covid-19 Travel Ins. Litig.,* 577 F. Supp. 3d 284, 292 (S.D.N.Y. 2021) (citing *Spear, Leeds & Kellogg v. Central Life Assurance Co.*, 85 F.3d 21, 25–27 (2d Cir. 1996)); *Bakon v. Rushmore Serv. Center, LLC*, 16-CV-6137, 2017 WL 2414639 (E.D.N.Y. June 2, 2017). *Bakon* is particularly instructive here. In that case, the court held that a non-signatory to an arbitration

[6] This litigation also falls within the Arbitration Agreement as a dispute "related . . . to" Plaintiff's "Participation in or access to or use of the Games of the Platform," where "Participate," "Participating," or "Participation" is defined to mean "playing any Games or using our Platform in any manner whatsoever." (Emphasis omitted).

agreement could compel arbitration as a third-party beneficiary where it was an affiliate of a signatory and the arbitration agreement at issue covered the signatory's "employees, parents, subsidiaries, affiliates, beneficiaries, agents, and assigns." *Id.* at *3. Here, just as in *Bakon*, the Arbitration Agreement covers "any . . . dispute between [Plaintiff] and [Stake.us] or any of its affiliates, subsidiaries, ultimate parent and parent companies, partners, officers, directors, employees, contractors, shareholders, agents, licensors, subcontractors or suppliers." *See* Stake.us Decl. Ex. A ¶ 26.3; Stake.us Decl. Ex. B ¶ 26.3. And because Plaintiff affirmatively alleges that all the Non-Signatory Stake Defendants are affiliates, parents, partners, or shareholders of Stake.us, *see* Compl. ¶¶ 35–55, 57–66; the Non-Signatory Stake Defendants qualify as third-party beneficiaries of the Arbitration Agreement and, thus, may compel arbitration of Plaintiff's claims.

### B. The Non-Signatory Stake Defendants Can Compel Arbitration Under the Doctrine of Equitable Estoppel

Separately, the Non-Signatory Stake Defendants may also compel arbitration of Plaintiff's claims against them under the doctrine of equitable estoppel, which "requires a two-party inquiry." *Havens v. Hartford Fin. Servs. Grp.*, 18 Civ. 488 (PGG), 2020 WL 1244235, at *3 (S.D.N.Y. Mar. 13, 2020). First, the Court must examine the relationship between the parties, the contracts they signed, and the dispute at hand to determine whether "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Id.* (internal quotation marks and modifications omitted). Second, the Court must determine whether the relationship between the parties is of a "nature" compelling the "conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." *Id.* (internal quotation marks omitted); *see also Ragone v. Atl. Video*, 595 F.3d 115 (2d Cir. 2010)

(describing two-party inquiry); *Martinez v. GAB.K, LLC*, 741 F. Supp. 3d 26, 35 (S.D.N.Y. 2024) (same). Each of these factors is easily satisfied as to the Non-Signatory Stake Defendants.

First, the issues among the Non-Signatory Stake Defendants and Plaintiff are intertwined with the Stake.us ToS and the Arbitration Agreement. In evaluating this factor, courts consider whether the dispute between the non-party seeking to compel arbitration is within the scope of the arbitration agreement at issue. *See Desarrolladora La Ribera v. Anderson*, 24-CV-67 (LAK) (BCM) 2024 WL 5186600, at *14 (S.D.N.Y. Dec. 20, 2024) ("The intertwinedness prong . . . presents effectively the same question as whether the claims against the non-signatory fall within the scope of the underlying arbitration clauses.") (internal quotation marks omitted). As set forth above, this is the case here, given that the Arbitration Agreement encompasses "any . . . dispute" between Plaintiff and the Non-Signatory Stake Defendants as Stake.us's "affiliates, subsidiaries, ultimate parent and parent companies, partners, officers, directors, employees, contractors, shareholders, agents, licensors, subcontractors [and/or] suppliers." *See supra* at 4–5 (quoting Stake.us Decl. Ex. A ¶ 26.3; Stake.us Decl. Ex. B ¶ 26.3).

Courts analyzing "intertwinedness" also consider whether the complaint at issue "materially distinguish[es] between signatory defendant[s] and non-signatory defendants." *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 648 (S.D.N.Y. 2011); *see also Havens v. Hartford Fin. Servs. Grp.*, No. 18 Civ. 488 (PGG), 2020 WL 1244235, at *4 (similar). Here, the Complaint makes no effort to distinguish between the Signatory Stake Defendants and the Non-Signatory Stake Defendants. *See, e.g.* Compl. ¶ 106 ("The Stake Defendants and Freeman further purposefully availed themselves of this forum by designing and operating Primedice in New York."), ¶ 128 ("The Stake Defendants operate one of the largest offshore online gambling platforms in the world . . . ."), ¶ 132 ("Stake pays the rapper Drake an estimated $100 million per

year to livestream himself gambling on their platform to his millions of young followers"), ¶ 138 ("[T]he Stake Defendants intentionally operated Stake.com with virtually no KYC controls."). Rather than distinguishing between the Stake Defendants, Plaintiff alleges that each of these entities and individuals operated as "alter ego[es]" of one another, *see* Compl. ¶¶ 57–66, as part of a "complex web of shell companies serv[ing] no legitimate business purpose other than to obfuscate the flow of funds from American minors to offshore casinos." *Id.* ¶ 65. Given the plain language of the Complaint, Plaintiff has conceded that the issues among the Non-Signatory Stake Defendants and Plaintiff are intertwined with the Stake.us ToS.

Second, there is a relationship among the Stake Defendants that justifies applying the Arbitration Agreement to Stake.us and the Non-Signatory Stake Defendants alike. "The Second Circuit has routinely found this requirement met in cases involving corporate affiliates, subsidiaries, agents, or 'other related business entities.'" *Macioce v. Hisense USA Corp.*, 25 Civ. 1608 (PAE), 2025 WL 3685179, at *9 (S.D.N.Y. Dec. 19, 2025), *see also Awad v. Extended Nursing Pers.*, 1:24-cv-02117-MKV, 2025 WL 753865, at *8 (S.D.N.Y. Mar. 10, 2025) (collecting cases and observing "[d]efendants are sufficiently related under this test if [a] non-signatory defendant has a 'corporate relationship to a signatory party' including 'cases involving subsidiaries, affiliates, agents, and other related business entities.'") (emphasis omitted). Given that Plaintiff alleges that "[t]here is a complete unity of ownership and interest across [the Stake Defendants]" and that "Defendants Tehrani and Craven founded, wholly own, and direct the operations of every entity within this enterprise," Compl. ¶¶ 35–36, Plaintiff cannot dispute that this element is satisfied.

In short: because Plaintiff's Complaint alleges that the Stake Defendants were so closely connected as to be each other's "alter ego[es]," *id.* ¶¶ 57–66, Plaintiff has conceded that the Stake

Defendants are sufficiently entwined and interrelated that the Non-Signatory Stake Defendants may invoke the Stake.us Arbitration Agreement under equitable estoppel.

**V. The Court Should Stay This Action As To The Stake Defendants**

When a court determines that a claim raised in an action is subject to arbitration, the FAA "requires [the] court to stay the proceeding" pending the outcome of the arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024). Because Plaintiff's claims against the Stake Defendants are all subject to arbitration, the Court should stay this action as to the Stake Defendants upon referring the dispute to arbitration as required by the FAA. *See* 9 U.S.C. § 3.

**CONCLUSION**

For the foregoing reasons, the Court should order Plaintiff to arbitrate his claims against the Stake Defendants and stay this action.

Dated: September 8, 2026

*/s/ David McGill*
David McGill, Esq.
C. Anne Malik, Esq.
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Ave. NW
Washington, D.C. 20037
Telephone: (212) 506-5000
Facsimile: (202) 339-8500
dmcgill@orrick.com
amalik@orrick.com

*Counsel for Defendants*
MEDIUM RARE N.V. d/b/a STAKE.COM,
SWEEPSTEAKS LTD. d/b/a STAKE.US,
EASYGO GROUP HOLDINGS PTY LTD.,
EASYGO ENTERTAINMENT PTY LTD.,
MEDIUM RARE LTD., SLICEMEDIA B.V.,
BIJAN TEHRANI, and EDWARD CRAVEN

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2026 I electronically filed the foregoing Motion to Compel Arbitration and Stay Proceedings on behalf of the Stake Defendants with the Clerk of the Court for the United States District Court for the Southern District of New York using the CM/ECF system.

*/s/ David McGill*
David McGill

**CERTIFICATE OF COMPLIANCE WITH INDIVIDUAL RULE 2(B)**

Pursuant to the Rule 2(B) of the Court's Individual Rules and Practices in Civil Cases, I hereby certify that the foregoing Memorandum in Support of the Stake Defendants' Motion to Compel Arbitration and Stay Proceedings contains 5,404 words, including material contained in footnotes, but excluding the caption, table of contents, table of authorities, signature blocks, and appended certificates.

*/s/ David McGill*
David McGill