UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DOE,

Plaintiff,

-against-

MEDIUM RARE N.V. D/B/A STAKE.COM, SWEEPSTEAKS LTD. D/B/A STAKE.US, EASYGO GROUP HOLDINGS PTY LTD., EASYGO ENTERTAINMENT PTY LTD., MEDIUM RARE LTD., SLICEMEDIA B.V., BIJAN TEHRANI, EDWARD CRAVEN, CHRISTOPHER FREEMAN COINBASE, INC.; AND COINBASE GLOBAL, INC.,

Defendants.

Case No: 1:26-cv-05975

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO COMPEL ARBITRATION OF DEFENDANT CHRISTOPHER FREEMAN**

## TABLE OF CONTENTS


**Page**

Preliminary Statement ........ 1

Factual Background ........ 3

I. Plaintiff Alleges Mr. Freeman Co-Founded Primedice, the Predecessor to the Stake Enterprise. ........ 3

II. The Stake.us ToS Requires Arbitration of All Platform-Related Disputes. ........ 4

Argument ........ 6

I. The Court Should Compel the Plaintiff to Arbitrate His Claims. ........ 6

A. The Stake Arbitration Provision Delegates Arbitrability to the Arbitrator. 7

B. The Stake Arbitration Provision Covers the Claims Against Mr. Freeman. ........ 9

II. Freeman Can Enforce the Stake Arbitrations Provision's Terms. ........ 11

A. Mr. Freeman is a Third-Party Beneficiary of the Stake Arbitration Provision. ........ 11

B. Estoppel Applies Because Plaintiff Links Mr. Freeman and the Stake Defendants in the Same Claims. ........ 15

III. This Action Should Be Stayed Pending Arbitration. ........ 18

Conclusion ........ 19

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**


*Alghanim v. Alghanim*,
828 F. Supp. 2d 636 (S.D.N.Y. 2011)....................18

*Bank of Am., N.A. v. Diamond State Ins. Co.*,
2002 WL 31720328 (S.D.N.Y. Dec. 4, 2002)....................10

*BSG Resources (Guinea) Ltd. v. Soros*,
2017 WL 5897450 (S.D.N.Y. Nov. 29, 2017)....................19

*Cho v. JS Autoworld 1 Ltd.*,
97 F. Supp. 3d 351 (E.D.N.Y. 2015)....................10, 17

*Contec Corp. v. Remote Solution Co.*,
398 F.3d 205 (2d Cir. 2005)....................7, 8

*Crewe v. Rich Dad Education, LLC*,
884 F. Supp. 2d 60 (S.D.N.Y. 2012)....................12, 13

*Dembitzer v. Chera*,
285 A.D.2d 525 (2d Dep't 2001)....................14

*Feld v. Postmates, Inc.*,
442 F. Supp. 3d 825 (S.D.N.Y. 2020)....................10

*Guerrero v. GoPuff*,
2025 WL 3539105 (S.D.N.Y. Dec. 10, 2025)....................10

*Hastings v. Nifty Gateway, LLC*,
724 F. Supp. 3d 241 (S.D.N.Y. 2024)....................6

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)....................7

*Katsoris v. WME IMG, LLC*,
237 F. Supp. 3d 92 (S.D.N.Y. 2017)....................18

*Kuehn v. Citibank, N.A.*,
2012 WL 6057941 (S.D.N.Y. Dec. 6, 2012)....................7

*Local Union 97, IBEW v. Niagara Mohawk Power Corp.,*
67 F.4th 107, 113 (2d Cir. May 3, 2023)....................9

*Macioce v. Hisense USA Corp.*,
2025 WL 3685179 (S.D.N.Y. Dec. 19, 2025)....................17

*National Union Fire Insurance Co. of Pittsburgh v. Beelman Truck Co.*,
203 F. Supp. 3d 312 (S.D.N.Y. 2016)....................13, 14

*Ohio Sec. Ins. Co. v. Kinsale Ins. Co.*,
2024 WL 5135737 (S.D.N.Y. Dec. 17, 2024) ....................9, 10

*Orange Chicken, L.L.C. v. Nambe Mills, Inc.*,
2000 WL 1858556 (S.D.N.Y. Dec. 19, 2000) ....................18, 19

*Ouedraogo v. A-1 Int'l Courier Serv., Inc.*,
2014 WL 1172581 (S.D.N.Y. Mar. 21, 2014) ....................15

*Peb, Inc. v. Premium Merchant Funding 26, LLC*,
2025 WL 1802996 (S.D.N.Y. July 1, 2025) ....................11, 13

*Ragone v. Atl. Video at Manhattan Ctr.*,
2008 WL 4058480 (S.D.N.Y. Aug. 29, 2008), *aff'd*, 595 F.3d 115 (2d Cir. 2010) ....................16

*Ragone v. Atl. Video at Manhattan Ctr.*,
595 F.3d 115 (2d Cir. 2010)....................15, 16

*Reid v. Tandym Grp., LLC*,
697 F. Supp. 3d 62 (S.D.N.Y. 2023)....................8

*Rothstein v. Am. Int'l Grp., Inc.*,
837 F.3d 195 (2d Cir. 2016)....................13, 14

*Ruzicka v. Rager*,
305 N.Y. 191 (1953) ....................14

*Salzano v. Lace Ent. Inc.*,
2014 WL 3583195 (S.D.N.Y. July 18, 2014) ....................15

*Shenzhen Xingchen Xuanyuan Indus. Co. Ltd. v. Amazon.com Servs. LLC*,
735 F. Supp. 3d 453 (S.D.N.Y. 2024)....................8, 9, 10

*Shepherd v. Belkin International, Inc.*,
683 F. Supp. 3d 282, 288-89 (E.D.N.Y. July 24, 2023) ....................15, 16

*Spinelli v. Nat'l Football League*,
96 F. Supp. 3d 81 (S.D.N.Y. 2015) ....................10

*Watson v. USA Today Sports Media Grp., LLC*,
2018 WL 2316634 (S.D.N.Y. May 8, 2018) ....................10

*Winter Investors, LLC v. Panzer*,
2015 WL 5052563 (S.D.N.Y. Aug. 27, 2015)....................18

*Xiaohong v. Dingledine*,
2025 WL 1604001 (S.D.N.Y. June 6, 2025) ....19

**RULES**

Rule R-7 ....8

**STATUTES**

9 U.S.C. § 2 ....6

9 U.S.C § 3 ....19

9 U.S.C. § 4 ....2, 3, 19

Federal Arbitration Act ....1, 5, 6

New York General Business Law § 349 ....4, 10, 15

New York General Business Law § 350 ....10

Defendant Christopher Freeman ("Mr. Freeman" ) hereby moves to compel arbitration and stay these proceedings.

## PRELIMINARY STATEMENT

This case arises from Plaintiff's alleged use of online gaming platforms in New York. Plaintiff alleges that he accessed and used three related platforms: Stake.com, an offshore cryptocurrency gaming site; Stake.us, a U.S.-facing sweepstakes platform; and Primedice, which Plaintiff describes as Stake.com's predecessor gaming site. He claims that he gambled through those platforms, lost money, and suffered addiction-related injuries. Plaintiff directs those allegations principally at the Stake-affiliated defendants: Medium Rare N.V. d/b/a Stake.com, Sweepsteaks Ltd. d/b/a Stake.us, Easygo Group Holdings Pty Ltd., Easygo Entertainment Pty Ltd., Medium Rare Ltd., Slicemedia B.V., Bijan Tehrani, and Edward Craven (the "Stake Defendants"). Plaintiff also names Christopher Freeman based on his alleged role in creating and operating Primedice, including that his work on Primedice was later incorporated into Stake. Plaintiff separately names Coinbase, Inc. and Coinbase Global, Inc., based on allegations that Coinbase facilitated cryptocurrency transactions connected to Plaintiff's use of the gaming sites. Mr. Freeman and the Stake Defendants together comprise the non-Coinbase defendants (the "Non-Coinbase Defendants").

Plaintiff's theory of liability against Mr. Freeman thus turns on Plaintiff's alleged access to, and use of, the Stake Defendants' platforms. Because Plaintiff's use of those platforms was governed by written terms and conditions containing an expansive arbitration provision—one that expressly invokes the Federal Arbitration Act ("FAA") and its strong federal policy favoring enforcement of arbitration agreements—Plaintiff's claims against Mr. Freeman and the arbitrability of those claims are subject to arbitration.

The reasons are straightforward. First, the parties delegated the threshold question of arbitrability to the arbitrator—both expressly in the applicable terms of service and by incorporating the rules of the American Arbitration Association ("AAA"), which empower the arbitrator to decide objections to the existence, scope, validity, and arbitrability of the arbitration agreement. Second, even if the Court reaches scope questions, Plaintiff's claims are covered because they arise from or relate to the Stake.us terms, Plaintiff's alleged participation in or access to Stake.us and its games, and disputes involving Stake's covered affiliates and agents. It does not matter whether those claims are labeled statutory, tort, or quasi-contract—each arises from the same alleged platform access, platform use, and alleged platform-related injuries covered by the arbitration provision.

Mr. Freeman may enforce the arbitration provision and compel Plaintiff to arbitrate the claims asserted against him under 9 U.S.C. § 4. The provision expressly reaches disputes involving Stake's affiliates and agents, and Plaintiff's own allegations place Mr. Freeman within those categories. Plaintiff alleges that Mr. Freeman helped create and operate Primedice, that Primedice was the predecessor to Stake.com, and that Primedice and the Stake entities were part of the same alleged enterprise. Those allegations suffice to subject Plaintiff's claims against Mr. Freeman to arbitration. They also independently support equitable estoppel: because Plaintiff pleads Mr. Freeman and the Stake Defendants are as participants in one integrated enterprise for liability purposes, he cannot deny that intertwined relationship for purposes of arbitration.

If the Court compels Plaintiff to arbitrate the claims asserted against Mr. Freeman, it should stay this action pending arbitration. A stay would preserve the Court's jurisdiction while allowing the arbitrator to decide the issues committed to arbitration. And even if the Court does not compel Plaintiff's claims against Mr. Freeman to arbitration, those claims still should not proceed on a

separate track while the overlapping claims against the Stake Defendants are arbitrated. The arbitrable claims against the Stake Defendants turn on the same alleged operation, platform conduct, and claimed injuries. Litigating those same issues here while arbitration proceeds would waste resources and risk inconsistent rulings. A stay would avoid those problems without prejudicing Plaintiff because any remaining issues can be addressed after arbitration.

For these reasons, the Court should grant Mr. Freeman's motion, compel Plaintiff to arbitrate the claims asserted against him pursuant to 9 U.S.C. § 4, and stay those claims pending arbitration. At a minimum, if the Court concludes that Mr. Freeman cannot enforce the arbitration provision, it should stay the claims against him pending resolution of any arbitration between Plaintiff and the Stake Defendants.

## FACTUAL BACKGROUND

### I. Plaintiff Alleges Mr. Freeman Co-Founded Primedice, the Predecessor to the Stake Enterprise.

Plaintiff alleges that, while he was a minor in New York, he was drawn into online gaming through Stake.com, Stake.us, and Primedice. Compl. ¶¶ 1–3, 10–13, 366. According to the Complaint, Plaintiff used those platforms to gamble with cryptocurrency, suffered substantial gambling losses, and developed gambling-related injuries for which he seeks damages and injunctive relief. *Id.* ¶¶ 20–32, 366–381, 410–425, 465–483.

Plaintiff's claims against Mr. Freeman rest on Mr. Freeman's alleged role in Primedice, which Plaintiff describes as a predecessor gambling site to Stake.com. *Id.* ¶ 55. The Complaint alleges that Mr. Freeman, together with Messrs. Tehrani and Craven, "created, designed, and founded" Primedice, that Mr. Freeman was "integrally involved" in Primedice's design and operation, and that features developed for Primedice were later used by Stake.com. *Id.* ¶¶ 55–56, 106.

Plaintiff does not plead those allegations as a separate dispute involving Mr. Freeman alone. Instead, the Complaint treats Mr. Freeman and the Stake Defendants as participants in a single alleged gambling "Operation" that supposedly recruited minors, enabled access to offshore gambling platforms, processed gambling activity, and caused Plaintiff's losses and addiction-related injuries. *Id.* ¶¶ 80–88, 366–381, 410–425, 465–483. Every claim asserted against Mr. Freeman is also asserted against the Stake Defendants and depends on that same platform-based theory. *Id.* ¶¶ 410–425, 465–493. Those overlapping claims are violation of New York General Business Law § 349 (Count I), negligence per se (Count IV), negligence (Count V), unjust enrichment (Count VI), and declaratory judgment (Count VII). Compl. ¶¶ 410–425, 453–493.

## II. The Stake.us ToS Requires Arbitration of All Platform-Related Disputes.

Use of Stake.us is subject to written terms and conditions (the "Stake.us ToS").[1] The Stake.us ToS identify Sweepsteaks Limited as the provider of the Stake.us platform and define Sweepsteaks Limited as "Stake." *See* Dkt. 7, Ex. A, Section 1; *id.*, Ex. B, Section 1. The Stake.us ToS also provide that, "[b]y registering on the Platform," a user "accept[s] these Terms and Conditions" and enters "a binding agreement" governing access to and use of the platform and games.[2] *Id.* The same section further states that, by checking the acceptance box during registration, accessing or using the platform, creating a customer account, or accessing the games, the user confirms that he has read and agrees to be bound by the Stake.us ToS. *Id.*

---

[1] Mr. Freeman joins and incorporates by reference here those portions of the Stake Defendants' Motion to Compel Arbitration and Stay Proceedings establishing that Plaintiff accepted the Stake.us ToS. *See* Dkt. 32 at pp. 3-4.

[2] The Stake.us ToS defines "Platform" as the "services provided through any URL or mobile application belonging to, or licensed to, Stake, and branded as part of the Stake games, including the website located at stake.us, and all subdomains, subpages and successor sites thereof, as well as all Games, features, tools and services available thereon." *See* Dkt. 7, at Ex. A, Section 3(k).

Section 26 of the Stake.us ToS, titled "Dispute Resolution and Agreement to Arbitrate," contains an expansive arbitration provision (the "Stake Arbitration Provision") and expressly provides that it "shall be construed under and be subject to the Federal Arbitration Act." Dkt. 7, Ex. A, Section 26.2; *id.*, Ex. B, Section 26.2. Section 26.3 defines the covered matters as "Disputes," including "any and all past, present and future disputes, claims or causes of action" between the user and Stake or Stake's "affiliates, subsidiaries, ultimate parent and parent companies, partners, officers, directors, employees, contractors, shareholders, agents, licensors, subcontractors or suppliers," that arise out of or relate to the Stake.us ToS, their formation, the "validity or scope" of the Stake Arbitration Provision, the user's "Participation in or other access to or use of the Games or the Platform," "any other dispute" with Stake or those covered persons and entities, and "the arbitrability of any of the foregoing."[3] *Id.*, Ex. A, Section 26.3; *id.*, Ex. B, Section 26.3.

Section 26 requires arbitration of such "Disputes," providing that "both you and Stake agree that any and all Disputes, including without limitation any question regarding the existence, validity, enforceability, or termination of these Terms and/or this clause 26 . . . as well as the decision of whether the Dispute should be arbitrated in the first place, shall be referred to and finally resolved by arbitration administered by the American Arbitration Association (AAA), the rules of which are deemed to be incorporated by reference into this clause." *Id.*, Ex. A, Section 26.7(a); *id.*, Ex. B, Section 26.6(a).

[3] The Stake.us ToS defines "Games" as "any one or more Game(s) available on the Platform in either Standard Play or Promotional Play. We reserve the right to add and remove Games from the Platform at our sole discretion." *See* Dkt. 7, at Ex. A, Section 3(e).

## ARGUMENT

Plaintiff's claims belong in arbitration. The Stake Arbitration Provision requires arbitration of the claims asserted against Mr. Freeman for at least two reasons. First, the Stake Arbitration Provision covers Plaintiff's claims because they arise from or relate to the Stake.us ToS, Plaintiff's alleged participation in or access to the Stake.us platform. Second, Mr. Freeman may enforce that provision both because its terms extend to covered non-signatories, including affiliates and agents, and because Plaintiff pleads Mr. Freeman and the Stake Defendants as participants in the same alleged gambling operation, such that Plaintiff may not avoid arbitrating his claims against Mr. Freeman under estoppel principles. In all events, the Stake Arbitration Provision delegates questions of arbitrability to the arbitrator.

### I. The Court Should Compel the Plaintiff to Arbitrate His Claims.

The FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. "Under the FAA, a party may petition a district court for an order directing that 'arbitration proceed in the manner provided for in such agreement.'" *Hastings v. Nifty Gateway, LLC*, 724 F. Supp. 3d 241, 246 (S.D.N.Y. 2024) (quoting 9 U.S.C. § 4). In deciding whether to grant a motion to compel arbitration, courts consider two questions: (1) whether a valid agreement to arbitrate exists; and (2) whether the particular dispute falls within the scope of that agreement. *Id.* at 246-47.

Mr. Freeman joins and incorporates the Stake Defendants' motion to compel arbitration showing that Plaintiff entered into a valid agreement to arbitrate. The remaining issue is whether Plaintiff's claims against Mr. Freeman fall within the scope of that agreement. They do. The parties agreed to submit all disputes to the arbitrator, including disputes over arbitrability and whether Plaintiff's claims against Mr. Freeman must be arbitrated. And even if the Court decides to address

arbitrability, the Stake Arbitration Provision expressly covers disputes arising from or relating to Plaintiff's alleged participation in, access to, or use of Stake.us and its games.

**A. The Stake Arbitration Provision Delegates Arbitrability to the Arbitrator.**

The Stake Arbitration Provision delegates to the arbitrator the threshold question whether Plaintiff's claims against Mr. Freeman are arbitrable. Parties may agree that an arbitrator, rather than a court, will decide threshold questions of arbitrability, so long as their agreement does so by "clear and unmistakable" evidence. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68-70, 72 (2019); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (holding that incorporation of AAA rules empowering the arbitrator to decide arbitrability constitutes clear and unmistakable evidence of delegation). When that standard is met, the court must enforce the parties' agreement and may not decide arbitrability itself. *Henry Schein*, 586 U.S. at 68-70.

The Stake Arbitration Provision clearly and unmistakably delegates arbitrability to the arbitrator. Specifically, it provides that "any and all Disputes," including "any question regarding the existence, validity, enforceability, or termination" of the Stake.us ToS or the Stake Arbitration Provision, "as well as the decision of whether the Dispute should be arbitrated in the first place," shall be "referred to and finally resolved by arbitration administered by the American Arbitration Association." Dkt. 7, Ex. A, Section 26.7(a); *id.*, Ex. B, Section 26.6(a). That language mirrors the delegation language enforced in *Kuehn v. Citibank, N.A.*, where the court held that a clause requiring arbitration of claims relating to the "application, enforceability or interpretation" of the account, "including this arbitration provision," plainly delegated enforceability questions to the arbitrator. *Kuehn v. Citibank, N.A.*, 2012 WL 6057941, at *1, *4 (S.D.N.Y. Dec. 6, 2012).

The same conclusion follows independently from the Stake Arbitration Provision's incorporation of the AAA rules. Section 26.6(a) and Section 26.7(a) state that arbitration will be administered by the AAA and that the AAA rules "are deemed to be incorporated by reference."

Dkt. 7, Ex. A, Section 26.7(a); *id.*, Ex. B, Section 26.6(a). AAA Commercial Rule R-7(a), in turn, provides that the arbitrator has power to rule on "any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim," without first referring those matters to a court. AAA Commercial Arbitration Rule R-7(a).[4]

That incorporation confirms delegation. The Second Circuit held in *Contec* that when parties incorporate AAA rules empowering the arbitrator to decide jurisdiction, including objections to the existence, scope, or validity of the arbitration agreement, that incorporation constitutes clear and unmistakable evidence that arbitrability belongs to the arbitrator. 398 F.3d at 208. Courts in this District have applied the same rule to materially similar provisions. *See Reid v. Tandym Grp., LLC*, 697 F. Supp. 3d 62, 77-78 (S.D.N.Y. 2023) (holding that a broad clause requiring AAA arbitration and incorporating AAA Commercial Rule R-7 delegated arbitrability to the arbitrator); *Shenzhen Xingchen Xuanyuan Indus. Co. Ltd. v. Amazon.com Servs. LLC*, 735 F. Supp. 3d 453, 463 (S.D.N.Y. 2024) (holding that adoption of AAA commercial rules was clear evidence of the parties' intent to delegate arbitrability). The Stake Arbitration Provision does the same thing: it requires AAA arbitration, incorporates the AAA rules by reference, and thereby delegates arbitrability to the arbitrator.

Accordingly, any dispute over whether Plaintiff's claims are arbitrable—including disputes over the existence, validity, enforceability, scope, or application of the Stake Arbitration Provision—belongs to the arbitrator in the first instance. The Court must enforce that agreement and compel Plaintiff to arbitrate any threshold issues of arbitrability.

[4] The AAA Consumer Rules contain the same rule. *See* AAA Consumer Arbitration Rules R-7(a).

### B. The Stake Arbitration Provision Covers the Claims Against Mr. Freeman.

Plaintiff's claims against Mr. Freeman fall within the scope of the Stake Arbitration Provision. Courts determine scope by applying ordinary principles of contract interpretation and asking whether the dispute is covered by the language the parties chose. *See Local Union 97, IBEW v. Niagara Mohawk Power Corp.,* 67 F.4th 107, 113 (2d Cir. May 3, 2023) ("Ordinary principles of contract law guide the inquiry into whether an arbitration agreement was validly formed and whether the parties consented to arbitrate a particular dispute."); *Shenzhen*, 735 F. Supp. 3d at 463; *Ohio Sec. Ins. Co. v. Kinsale Ins. Co.*, 2024 WL 5135737, at *5 (S.D.N.Y. Dec. 17, 2024).

Applying that plain-language approach, Section 26.3 of the Stake Arbitration Provision delineates a broad arbitral scope that encompasses Plaintiff's claims against Mr. Freeman. Section 26.3 broadly covers "any and all past, present and future disputes, claims or causes of action" that "arise out of or are related in any way to" the Stake.us ToS, the formation of those terms, the validity or scope of the Stake Arbitration Provision, the user's "Participation in or other access to or use of the Games or the Platform," and "any other dispute" involving Stake or the related persons and entities identified in the provision. Dkt. 7, Ex. A, Section 26.3; *id.*, Ex. B, Section 26.3. That sweeping language is at least as broad as the clause enforced in *Shenzhen*, which appeared in Amazon's standard Business Services Agreement governing the plaintiff's use of Amazon's online marketplace and covered any dispute with Amazon or its affiliates, or any claim relating "in any way" to that agreement or the plaintiff's use of Amazon's services. *Id.* at 456. The court held that language covered claims arising from the plaintiff's use of Amazon's platform. *Id.* at 464.

The same result follows here because Plaintiff's claims against Mr. Freeman arise from the platform access, use, and alleged misconduct that Section 26.3 of the Stake Arbitration Agreement expressly covers. Plaintiff's claims against Mr. Freeman arise from Plaintiff's alleged access to

and use of the Stake and Primedice platforms, his alleged participation in online gaming, his deposits and losses, and the alleged platform-wide misconduct that supposedly caused his injuries. Compl. ¶¶ 410-425, 465-483. Those allegations fall comfortably within Section 26.3's language covering disputes related to the Stake.us ToS, Plaintiff's participation in or access to the platform and games, and disputes involving Stake's covered affiliates, partners, agents, and related persons. *See* Dkt. 7, Ex. A, Section 26.3; *id.*, Ex. B, Section 26.3. Courts have enforced materially similar language. *See Shenzhen*, 735 F. Supp. 3d at 463-64; *Guerrero v. GoPuff*, 2025 WL 3539105, at *8-9 (S.D.N.Y. Dec. 10, 2025) (applying Delaware law and enforcing clause covering disputes "arising out of or relating to" the agreement, delivery services, and specified statutory disputes); *Ohio Sec.*, 2024 WL 5135737, at *5-6 (enforcing clause covering "all disputes" over coverage and related rights under the policy).

Plaintiff cannot plead his way around that broad scope by labeling his claims as statutory, tort, or quasi-contract claims. His negligence claim is arbitrable because it arises from the same platform relationship and alleged platform conduct governed by the Stake.us ToS. *See Bank of Am., N.A. v. Diamond State Ins. Co.*, 2002 WL 31720328, at *4 (S.D.N.Y. Dec. 4, 2002) (negligence and recklessness claims fell within arbitration clause where they were not wholly independent of the contract). His New York General Business Law § 349 claim is likewise arbitrable. *See Cho v. JS Autoworld 1 Ltd.*, 97 F. Supp. 3d 351, 357-58 (E.D.N.Y. 2015) (claims under Sections 349 and 350 may be resolved through arbitration); *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 833 (S.D.N.Y. 2020) (GBL § 349 and unjust enrichment claims fell within arbitration provision covering disputes arising out of or related to the terms of service and platform use). And Plaintiff's unjust enrichment claim falls within the provision for the same reason: it seeks recovery for benefits allegedly conferred through his use of the platform. *See Spinelli v. Nat'l*

*Football League*, 96 F. Supp. 3d 81, 101 (S.D.N.Y. 2015) ("It is well established that unjust enrichment claims fall within the scope of broad arbitration clauses."); *Watson v. USA Today Sports Media Grp., LLC*, 2018 WL 2316634, at *5 (S.D.N.Y. May 8, 2018) (unjust enrichment claim arose under the parties' contractual relationship and had to be arbitrated).

Plaintiff's claims therefore fall within the Stake Arbitration Provision because they arise out of or relate to the Stake.us ToS, and Plaintiff's alleged participation in, access to, or use of Stake.us's games and platform.

## II. Freeman Can Enforce the Stake Arbitrations Provision's Terms.

A non-signatory may enforce an arbitration agreement when ordinary state-law principles permit enforcement, including principles of third-party beneficiary and estoppel. *See Peb, Inc. v. Premium Merchant Funding 26, LLC*, 2025 WL 1802996, at *10–11 (S.D.N.Y. July 1, 2025) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)) (individual defendants were third-party beneficiaries because they fell within the arbitration provision's express reference to employees, agents, directors, officers, shareholders, and managers).

Mr. Freeman qualifies as a third-party beneficiary of the Stake Arbitration Provision because it expressly covers disputes involving Stake's "agents" and "affiliates," categories that include him. Equitable estoppel supplies a separate basis for enforcement because Plaintiff's claims against Mr. Freeman are intertwined with Plaintiff's claims against the Stake Defendants and depend on the substantial relationship he alleges between Mr. Freeman and those defendants.

### A. Mr. Freeman is a Third-Party Beneficiary of the Stake Arbitration Provision.

The Stake Arbitration Provision reflects that the parties intended the agreement to reach specified non-signatories, including Stake's affiliates and agents. Section 26.3 covers "any and all past, present and future disputes, claims or causes of action between you and Stake or any of its affiliates . . . agents . . . or suppliers," including disputes that "arise out of or are related in any way

to these Terms," "your Participation in or other access to or use of the Games or the Platform," or "any other dispute between you and Stake or any of its affiliates . . . agents . . . or suppliers." *See* Dkt. 7, at Ex. A, Section 26.3; *id.*, Ex. B, Section 26.3. Plaintiff's own allegations place Mr. Freeman within those covered categories: either as an agent of Stake, or as partner in Primedice, Stake's alleged predecessor and affiliate.

a. <u>The Stake Arbitration Provision's "Agents" Term Covers Mr. Freeman</u>.

*Crewe v. Rich Dad Education, LLC* confirms that an individual non-signatory qualifies as an "agent" under an arbitration clause's express terms where the plaintiff alleges that the individual worked to advance or facilitate the corporate signatory's misconduct. 884 F. Supp. 2d 60, 75 (S.D.N.Y. 2012). There, the arbitration provision expressly covered "agents," and the complaint alleged a coordinated "scheme to defraud" involving the corporate signatory and related corporate defendants, on the one hand, and individual trainer defendants who had not signed the agreement, on the other. *Id.* at 70, 75. Given that allegation, the court held that the individual trainers were "properly viewed as agents" and, thus, fell within the arbitration clause's express terms. *Id.* at 75.

The same reasoning applies here. Section 26.3 expressly covers disputes involving Stake's "agents." *See* Dkt. 7, Ex. A, Section 26.3; *id.*, Ex. B, Section 26.3. Plaintiff also pleads an integrated "Operation" through which Mr. Freeman and the Stake Defendants allegedly worked together to facilitate underage online gambling. Compl. ¶¶ 80–81. Plaintiff then ties Mr. Freeman specifically to that Operation by alleging that he participated in the enterprise's early design and operational decisions and helped develop features later used by Stake.com. *Id.* ¶¶ 55–56, 106. Those allegations connect Mr. Freeman's alleged work to the same platform on which Plaintiff claims he gambled, transferred cryptocurrency, lost money, and suffered addiction-based injuries. *Id.* ¶¶ 20–32, 366, 371–81. Mr. Freeman is not being sued for conduct in a purely individual capacity; Plaintiff seeks to impose liability based on alleged work for, and conduct tied to, the

Stake enterprise. *Id.* Those allegations place Mr. Freeman within Section 26.3's reference to Stake's "agents," and therefore allow him to enforce the Stake Arbitration Provision as a third-party beneficiary. *See Crewe*, 884 F. Supp. 2d at 75; *see also Peb, Inc. v. Premium Merchant Funding 26, LLC*, 2025 WL 1802996, at *11 (S.D.N.Y. July 1, 2025) (allowing individual defendants to enforce arbitration clause where they were sued as agents of corporate signatory, not in their individual capacities).

b. <u>The Term "Affiliates" Independently Covers Mr. Freeman</u>.

The Stake Arbitration Provision's reference to "affiliates" also reaches Mr. Freeman because Plaintiff alleges that Primedice was commonly controlled with the Stake entities operating Stake.com and Stake.us, and Mr. Freeman was a Primedice partner during the relevant period. Where, as here, a contract does not define "affiliate," courts give the term its ordinary meaning. *See National Union Fire Insurance Co. of Pittsburgh v. Beelman Truck Co.*, 203 F. Supp. 3d 312, 319 (S.D.N.Y. 2016). Applying that ordinary meaning, the court in *National Union* held that "affiliate" includes entities related by "shareholdings or other means of control," including entities "under common ownership or control." *Id.* at 319–20. The Second Circuit has used the same control-focused definition: an affiliate is one who "controls, is controlled by, or is under common control with" another person or entity. *Rothstein v. Am. Int'l Grp., Inc.*, 837 F.3d 195, 206 (2d Cir. 2016).

The Complaint alleges common control between Primedice and the signatory to the Stake Arbitration Provision: Sweepstakes Ltd., which the provision defines as "Stake." *See* Dkt. 7, Ex. A, Section 1; *id.*, Ex. B, Section 1. The Complaint identifies Sweepstakes Ltd. d/b/a Stake.us as one of the Stake Defendants and alleges "a complete unity of ownership and interest" across those defendants. Compl. ¶¶ 34–35, 48, 57. It further alleges that Messrs. Tehrani and Craven founded, wholly own, and direct the relevant Stake entities, including the entity operating Stake.us. *Id.* ¶¶

35, 40, 48–54. And it alleges that Slicemedia is part of the same "Stake.com corporate family" and operates Primedice, the "predecessor gambling site to Stake.com." *Id.* ¶ 55. Read together, those allegations place Primedice and Sweepstakes Ltd. d/b/a Stake.us within the same commonly controlled enterprise. *Id.* ¶¶ 35, 40, 48–55, 57. That is enough to bring Primedice within the ordinary meaning of Stake's "affiliate." *See National Union*, 203 F. Supp. 3d at 319–20; *Rothstein*, 837 F.3d at 206.

Mr. Freeman's status as a Primedice partner brings him within that affiliate relationship. As Mr. Freeman explains in his declaration, during the period of his association with Primedice, it was an oral partnership among Messrs. Freeman, Tehrani, and Craven. Freeman Decl. ¶ 2. A partnership generally has no separate legal existence apart from the persons who compose and control it. *See Ruzicka v. Rager*, 305 N.Y. 191, 196 (1953) ("a partnership is not in the eyes of the law an entity separate from its members"); *Dembitzer v. Chera*, 285 A.D.2d 525, 526 (2d Dep't 2001) (a partnership is "generally not a separate entity existing independently of the persons who control it"). Because a partnership is not separate from its partners, Mr. Freeman is covered by Primedice's affiliate status for Primedice-based claims arising during the alleged partnership period. That coverage extends to Plaintiff's Primedice-based claims against Mr. Freeman because the Stake Arbitration Provision covers "any and all past, present and future disputes, claims or causes of action" involving Stake or its affiliates, including disputes relating to a user's participation in, access to, or use of Stake's games or platform. *See* Dkt. 7, Ex. A, Section 26.3; *id.*, Ex. B, Section 26.3.

Whether viewed through the Stake Arbitration Provision's reference to "agents" or its separate reference to "affiliates," Plaintiff's own allegations place Mr. Freeman within the categories of non-signatories the provision expressly covers. The Court should therefore enforce

the Stake Arbitration Provision according to its terms and compel Plaintiff's claims against Mr. Freeman to arbitration.

**B. Estoppel Applies Because Plaintiff Links Mr. Freeman and the Stake Defendants in the Same Claims.**

To invoke equitable estoppel, a non-signatory must satisfy a two-part test. The non-party must show that (1) "the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party signed," and (2) there is a "relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute" with the non-signatory. *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010).

Both elements are satisfied here.

c. The Claims Against Mr. Freeman and the Stake Defendants Are Intertwined.

The first equitable-estoppel element is satisfied where, as in *Shepherd v. Belkin International, Inc.*, the plaintiff asserts identical claims and factual allegations against signatory and non-signatory defendants based on the same conduct covered by an arbitration agreement, without distinguishing between them. 683 F. Supp. 3d 282, 288–89 (E.D.N.Y. July 24, 2023); *see also Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, 2014 WL 1172581, at *5 (S.D.N.Y. Mar. 21, 2014) (intertwinement satisfied where plaintiff asserted "identical legal claims and factual allegations" against signatory and non-signatory defendants); *Salzano v. Lace Ent. Inc.*, 2014 WL 3583195, at *5 (S.D.N.Y. July 18, 2014) (same factual allegations against signatory and non-signatory); *Ragone*, 595 F.3d at 128 (claims intertwined where they were "in fact, the same dispute").

The Complaint here asserts overlapping claims against Mr. Freeman and the Stake Defendants without separating the conduct, duties, or injuries attributed to each. The violation of New York GBL § 349 claim (Count I) is asserted against all Defendants, including Mr. Freeman

and the Stake Defendants, and rests on alleged advertising, promotion, age-verification failures, and unlawful online gambling activity. Compl. ¶¶ 410–425. The negligence claim (Count V) is asserted against Mr. Freeman and the Stake Defendants, alleging shared duties to prevent minors and New York residents from accessing the gaming platforms at issue and to avoid promotions aimed at minors. *Id.* ¶¶ 465–476. The unjust enrichment claim (Count VI) likewise treats Mr. Freeman and the Stake Defendants collectively, alleging that Plaintiff conferred a monetary benefit on them through his gambling activity and that Mr. Freeman and the Stake Defendants retained that benefit despite alleged illegality. *Id.* ¶¶ 477–483. Each of those claims falls within the Stake Arbitration Provision because each arises from Plaintiff's alleged participation in, access to, or use of Stake's games or platform. *See* Dkt. 7, Ex. A, Section 26.3; *id.*, Ex. B, Section 26.3.

Taken together, these allegations leave no daylight between the claims Plaintiff asserts against Mr. Freeman and the platform-based claims he asserts against the Stake Defendants. Plaintiff's claims depend on the same alleged enterprise, the same alleged platform conduct, and the same alleged injury. Compl. ¶¶ 410–425, 465–493. The first equitable-estoppel element is therefore satisfied. *See Ragone*, 595 F.3d at 128; *Shepherd*, 683 F. Supp. 3d at 288–89.

d. <u>Plaintiff's Allegations Establish the Close Relationship Required for Estoppel</u>.

The second equitable-estoppel element is also satisfied because Plaintiff alleges a close relationship among Mr. Freeman, the Stake Defendants, and Plaintiff in connection with the conduct that allegedly caused Plaintiff's gambling losses and addiction-based injuries. Courts look to whether the plaintiff's own allegations place the signatory and non-signatory in a relationship close enough that it would be inequitable to let the plaintiff rely on allegations of "substantially interdependent and concerted misconduct" for liability purposes, while denying that relationship for arbitration. *See Ragone v. Atl. Video at Manhattan Ctr.*, 2008 WL 4058480, at *9–10 (S.D.N.Y. Aug. 29, 2008) (holding that plaintiff could not treat signatory and non-signatory

defendants as intertwined for purposes of liability while denying a sufficiently close relationship for arbitration), *aff'd*, 595 F.3d 115 (2d Cir. 2010).

*Macioce v. Hisense USA Corp.*, 2025 WL 3685179 (S.D.N.Y. Dec. 19, 2025), is instructive. There, the court held that the second equitable-estoppel prong was satisfied by the close commercial relationship between a signatory retailer and a non-signatory manufacturer, even though they were not corporate affiliates. 2025 WL 3685179, at *10. The plaintiff alleged that the manufacturer "developed and controlled" the misrepresentations about the product at issue, that the retailer repeated those misrepresentations on its website, and that the misrepresentations caused the plaintiff to buy the product at issue and suffer the claimed injury. *Id.*

Plaintiff alleges the same close commercial relationship here. The Complaint alleges that Mr. Freeman allegedly worked with Messrs. Tehrani and Craven to create Primedice, was "integrally involved" in its design and operation, and helped develop games, technologies, and functionalities used by Stake.com. Compl. ¶¶ 55–56, 106. Plaintiff also pleads Mr. Freeman and the Stake Defendants as participants in the same integrated "Operation." *Id.* ¶¶ 80–81, 475. According to the Complaint, that Operation facilitated underage offshore gambling through an integrated system that caused Plaintiff's losses and injuries. *Id.* ¶¶ 20–32, 80–81, 475. As in *Macioce*, Plaintiff's theory depends on a commercial relationship between the signatory defendants and the non-signatory through the conduct that allegedly caused the injury. 2025 WL 3685179, at *10. Having pled that commercial relationship as a basis for liability, Plaintiff cannot deny that it is close enough to support arbitration. *See Cho v. JS Autoworld 1 Ltd.*, 97 F. Supp. 3d at 356–57 (holding that plaintiff was equitably estopped from resisting arbitration where she grouped signatory and non-signatory defendants together as an interchangeable unit based on alleged agency relationships).

Both estoppel elements are satisfied because Plaintiff's claims against Mr. Freeman and the Stake Defendants rest on the same platform conduct, losses, and injuries, and because Plaintiff alleges that they participated in the same integrated gambling operation. Having pleaded that relationship to impose liability, Plaintiff cannot deny it to avoid arbitration.

**III. This Action Should Be Stayed Pending Arbitration.**

If the Court compels Plaintiff to arbitrate his claims against Mr. Freeman, it should stay those claims pending arbitration. *See Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 110 (S.D.N.Y. 2017) (citing 9 U.S.C § 3). In the alternative, should the Court conclude for any reason that Mr. Freeman cannot enforce the Stake Arbitration Provision, the Court still should stay the claims against him while the overlapping claims against the Stake Defendants are arbitrated. Courts have inherent authority to stay non-arbitrable claims pending related arbitration where doing so avoids piecemeal litigation, duplicative discovery, and inconsistent rulings. *See Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 664–65 (S.D.N.Y. 2011); *Katsoris*, 237 F. Supp. 3d at 110–11; *Orange Chicken, L.L.C. v. Nambe Mills, Inc.*, 2000 WL 1858556, at *9 (S.D.N.Y. Dec. 19, 2000).

A stay is warranted here because Plaintiff pleads one integrated gambling "Operation" involving Mr. Freeman and the Stake Defendants, and the claims against both rest on the same alleged platform access, gameplay, deposits, losses, and injuries. Compl. ¶¶ 55–56, 80–81, 106, 366, 410–425, 465–483. If Plaintiff's claims against the Stake Defendants proceed in arbitration, the arbitrator will necessarily address the same core issues that drive the claims against Mr. Freeman: how Stake and Primedice allegedly operated, how Plaintiff allegedly accessed and used those platforms, and whether that conduct caused Plaintiff's claimed injuries.

That overlap justifies a stay. In *Winter Investors, LLC v. Panzer*, the court stayed claims against non-signatories because they were "part and parcel" of the arbitrable claims and overlapped "significantly (if not entirely)" with the issues for the arbitrator. 2015 WL 5052563, at *12

(S.D.N.Y. Aug. 27, 2015). And in *Xiaohong v. Dingledine*, the court stayed claims against non-arbitrating defendants where the arbitrable and non-arbitrable claims shared significant factual overlap and arbitral rulings were likely to have preclusive effect. 2025 WL 1604001, at *10 (S.D.N.Y. June 6, 2025). The same logic applies here: Plaintiff's claims against Mr. Freeman arise from the same alleged Operation, platform conduct, and injuries as the arbitrable claims against the Stake Defendants.

A stay also would conserve judicial and party resources because the arbitration is likely to resolve—or at least materially narrow—the issues against Mr. Freeman. *See BSG Resources (Guinea) Ltd. v. Soros*, 2017 WL 5897450, at *4 (S.D.N.Y. Nov. 29, 2017) (granting stay where arbitration would "likely provide significant insight into, if not actually resolve," the claims asserted in court). Proceeding on two tracks would require duplicative discovery into the same core facts while risking inconsistent rulings on those shared issues.

Nor would Plaintiff suffer undue prejudice. As in *Orange Chicken*, the stay would preserve Plaintiff's claims pending the outcome of arbitration, while reducing the risk that the same facts are litigated twice. 2000 WL 1858556, at *10. And because the arbitration will address the factual issues central to the claims against Mr. Freeman, there is little risk that relevant evidence will grow stale or be lost. *Id.* The Court therefore should stay the claims against Mr. Freeman, to the extent it does not compel them to arbitration outright.

## CONCLUSION

For the foregoing reasons, Mr. Freeman respectfully requests that the Court grant his motion and enter an order, pursuant to 9 U.S.C. § 4, compelling Plaintiff to arbitrate the claims asserted against him and staying those claims pending arbitration pursuant to 9 U.S.C. § 3. In the alternative, if the Court declines to compel Plaintiff's claims against Mr. Freeman to arbitration,

Mr. Freeman respectfully requests that the Court stay those claims pending the resolution of any arbitration involving Plaintiff and the Stake Defendants.

Dated: September 8, 2026
New York, New York

Respectfully submitted,

**ALSTON & BIRD LLP**

*/s/ E. Scott Schirick*

E. Scott Schirick
Joseph Tully
90 Park Avenue
New York, New York 10016
Tel. (212) 210-9400
Fax (212) 210-9444
Scott.Schirick@alston.com
Joe.Tully@alston.com

Jonathan J. Kim (*pro hac vice* forthcoming)
350 S. Grand Ave., 51st Floor
Los Angeles, California 90071
Tel. (213) 576-1000
Fax (213) 576-1100
Jonathan.kim@alston.com

*Attorneys for Defendant Christopher Freeman*

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2026, I electronically filed the foregoing on behalf of Defendant Christopher Freeman with the Clerk of the Court for the United States District Court for the Southern District of New York using the CM/ECF system.

*/s/ E. Scott Schirick*
E. Scott Schirick

**CERTIFICATE OF COMPLIANCE WITH INDIVIDUAL RULE 2(B)**

Pursuant to Rule 2(B) of the Court's Individual Rules and Practices in Civil Cases, I hereby certify that the foregoing Memorandum contains 5,844 words, including material contained in footnotes, but excluding the caption, table of contents, table of authorities, signature blocks, and appended certificates.

*/s/ E. Scott Schirick*
E. Scott Schirick