UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DOE,

Plaintiff,

-against-

MEDIUM RARE N.V. d/b/a STAKE.COM, SWEEPSTEAKS LTD. d/b/a STAKE.US, EASYGO GROUP HOLDINGS PTY LTD., EASYGO ENTERTAINMENT PTY LTD., MEDIUM RARE LTD., SLICEMEDIA B.V., BIJAN TEHRANI, EDWARD CRAVEN, CHRISTOPHER FREEMAN, COINBASE, INC.; and COINBASE GLOBAL, INC.

Defendants.

Case No: 26-cv-05975

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE STAKE DEFENDANTS' MOTION TO COMPEL ARBITRATION AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION TO REMAND**

November 6, 2026

# TABLE OF CONTENTS


Page

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY.........................................3

LEGAL STANDARD.....................................................................................................5

ARGUMENT...................................................................................................................5

I. The Court Lacks Subject Matter Jurisdiction as a Threshold Matter Because the Agreement Does Not Provide for Arbitration in the Territory of Signatory…. ..............5

II. No Agreement Exists Because Plaintiff Has Validly Opted Out……… ..............8

III. No Agreement Was Formed Because Stake.us' Terms Expressly Excluded New York Residents From the Offer, and Stake.us Knew Plaintiff Was One……...............10

IV. No Arbitration Agreement Survives Because the Terms Are Void as Illegal Gambling, and the Arbitration Clause Falls With Them…………………….. .............11

V. No Arbitration Agreement Was Formed With Medium Rare (Stake.com) Because it has its Own Forum Selection Clause…………………………………….............11

VI. The Stake.us Arbitration Agreement is Incapable of Being Performed Because the Designated Exclusive Administrator is Unavailable to Arbitrate Under the Terms…..13

VII. The Nonsignatory Stake Defendants Cannot Enforce the Stake.us Arbitration Clause…………………………………………………………………….............16

VIII. The Court, Not an Arbitrator, Should Decide Each of These Issues…. .............20

CONCLUSION............................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*4 Hour Wireless v. Smith*,
No. 01 Civ. 9133 (RO), 2002 WL 31654963 (S.D.N.Y. Nov. 22, 2002) ..................... 12

*Albaniabeg Ambient Sh.p.k. v. Enel S.p.A.*,
169 F. Supp. 3d 523 (S.D.N.Y. 2016) ..................... 5

*Alghanim v. Alghanim*,
828 F. Supp. 2d 636 (S.D.N.Y. 2011) ..................... 20

*Am. Fuel Corp. v. Utah Energy Dev. Co.*,
122 F.3d 130 (2d Cir. 1997) ..................... 12

*APWU v. Potter*,
343 F.3d 619 (2d Cir. 2003) ..................... 8

*Bakon v. Rushmore Serv. Ctr. LLC*,
No. 25-cv-1944, 2017 WL 2414639 (E.D.N.Y. June 2, 2007) ..................... 13

*Barrios-Contreras v. Big Fish Ent. LLC*,
No. 25-CV-3203 (JGLC)(SN), 2026 WL 621576 (S.D.N.Y. Mar. 5, 2026) ..................... 20

*Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*,
447 F. Supp. 2d 329 (S.D.N.Y. 2006) ..................... 10

*Cap Gemini Ernst & Young, U.S., LLC v. Nackel*,
346 F.3d 360 (2d Cir. 2003) ..................... 21

*Chicago Bridge & Iron Co. N.V. v. Refineria de Cartagena S.A.S.*,
No. 23-cv-4825, 2025 WL 71658 (S.D.N.Y. Jan. 10, 2025) ..................... 7

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024) ..................... 21

*Cosgun v. Seabourn Cruise Line Ltd. Inc.*,
666 F. Supp. 3d 1270 (S.D. Fla. 2023) ..................... 8

*Credit Suisse First Bos., LLC v. Padilla*,
326 F. Supp. 2d 508 (S.D.N.Y. 2004) ..................... 7

*DaPuzzo v. Globalvest Mgmt. Co., L.P.*,

263 F. Supp. 2d 714 (S.D.N.Y. 2003)........................................................................ 7

*Debary v. Harrah's Operating Co.*,
465 F. Supp. 2d 250 (S.D.N.Y. 2006)...................................................................... 12

*Denney v. Jenkens & Gilchrist*,
412 F. Supp. 2d 293 (S.D.N.Y. 2005)...................................................................... 19

*Desarrolladora La Ribera*,
No.24-CV-67, 2024 WL 5186600 (S.D.N.Y. Dec. 20, 2024) ...................................... 20

*Doctor's Assocs., Inc. v. Alemayehu*,
934 F.3d 245 (2d Cir. 2019)...................................................................................... 20

*Doe v. Trump Corp.*,
6 F.4th 400 (2d Cir. 2021) ........................................................................................ 20

*Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*,
93 N.Y.2d 584 (1999) ................................................................................................ 10

*Ferro v. Allied Interstate, LLC*,
No. 19-cv-49, 2019 WL 3021234 (E.D.N.Y. July 10, 2019)........................................ 19

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995).................................................................................................. 21

*Flynn v. McGraw Hill LLC*,
120 F.4th 1157 (2d Cir. 2024) .................................................................................. 18

*Gerszberg v. Li & Fung (Trading) Ltd.*,
215 F. Supp. 3d 282 (S.D.N.Y. 2016)...................................................................... 22

*Gutfreund v. Weiner (In re Salomon Inc. Shareholders Derivative Litig.*,
68 F.3d 554 (2d Cir. 1995)........................................................................................ 13

*Havens v. Hartford Fin. Servs. Grp., Inc.*,
No. 18 CIV. 488 (PGG), 2020 WL 1244235 (S.D.N.Y. Mar. 13, 2020)...................... 20

*Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n*,
747 F.3d 44 (2d Cir. 2014)........................................................................................ 17

*Holzer v Mondadory*,
No. 12 CIV. 5234 NRB, 2013 WL 1104269 (S.D.N.Y. Mar. 14, 2013) .................... 5, 6

*Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*,
462 F.2d 673 (2d Cir. 1972)...................................................................................... 22

*Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd.*,
909 F.2d 698 (2d Cir. 1990)........................................................................ 12

*Jacobson v. Sassower*,
66 N.Y.2d 991 (1985) ................................................................................. 9

*Kairos Manford Priv. Equity Fund I L.P. v. Xu*,
2026 WL 2389242 (S.D.N.Y. Aug. 15, 2026)............................................................ 6

*Kelly-Starkebaum v. Papaya Gaming Ltd.*,
2024 WL 5135799 (S.D.N.Y. Dec. 17, 2024) ........................................................... 21

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019)................................................................................... 16

*Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*,
595 F.3d 458 (2d Cir. 2010)........................................................................... 18

*Lee v. Uber Techs., Inc.*,
208 F. Supp. 3d 886 (N.D. Ill. 2016) ................................................................ 21

*Lexington Ins. Co. v. RLI Ins. Co.*,
949 F.3d 1015 (7th Cir. 2020) ........................................................................ 18

*Lipsett v. Popular Bank*,
No. 22-3193-cv, 2024 WL 111247 (2d Cir. Jan. 10, 2024)........................................... 9

*Macioce v. Hisense USA Corp.*,
No. 25 CIV. 1608 (PAE), 2025 WL 3685179 (S.D.N.Y. Dec. 19, 2025) .................... 20

*Martinez v. GAB.K, LLC*,
741 F. Supp. 3d 26 (S.D.N.Y. 2024)................................................................... 20

*McMahan v. Whaleco, Inc.*,
No. 25-CV-1590 (MKB), 2026 WL 657449 (E.D.N.Y. Mar. 9, 2026) ........................ 16

*Merritt Island Woodwerx, LLC v. Space Coast Credit Union,*
137 F.4th 1268 (11th Cir. 2025) ..................................................................... 15

*Molecular Dynamics, Ltd. v. Spectrum Dynamics Med.* Ltd.,
143 F.4th 70 (2d. Cir. 2025) .......................................................................... 6

*Moss v. First Premier Bank*,
835 F.3d 260 (2d Cir. 2016)........................................................... 13, 14, 16

*Nicosia v. Amazon.com, Inc.*,

834 F.3d 220 (2d Cir. 2016)........................................................................................ 5

*Olin Holdings Ltd. v. State*,
73 F.4th 92 (2d Cir. 2023) ........................................................................................ 20, 21

*Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*,
943 F.3d 613 (2d Cir. 2019)........................................................................................ 5, 8

*Ragone v. Atl. Video at Manhattan Ctr.*,
595 F.3d 115 (2d Cir. 2010)........................................................................................ 20

*Ranzy v. Tijerina*,
393 F. App'x 174 (5th Cir. 2010) ........................................................................................ 15

*Relevent Sports, LLC v. U.S. Soccer Fed'n, Inc.*,
No. 19-CV-8359 (VEC), 2020 WL 4194962 (S.D.N.Y. July 20, 2020) ...................... 15

*Republic of Kazakhstan v. Chapman*,
585 F. Supp. 3d 597 (S.D.N.Y. 2022)........................................................................................ 5

*Retail Prop. Tr. v. Nassau Cnty. Dep't of Assessment*,
185 F.4th 316 (2d Cir. 2026) ........................................................................................ 8

*Ridley v. Sweepsteaks Ltd.*,
No. 1:25-CV-2511 (LMB), 2026 WL 2201149 (E.D. Va. July 30, 2026) ..................... 9

*Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*,
198 F.3d 88 (2d Cir. 1999)........................................................................................ 1, 6, 8

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*,
999 F.3d 828 (2d Cir. 2021)........................................................................................ 5

*Sunco Int'l Inc. v. Jiangsu Sunco Boiler Co.*,
186 F.4th 931 (7th Cir. 2026) ........................................................................................ 17

*Taylor v. Carnival Corp.*,
25-cv-20851, 2025 WL 2937096 (S.D. Fla. Oct. 16, 2025) ........................................ 21

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*,
241 F.3d 135 (2d Cir. 2001)........................................................................................ 6

*Ullrich v. Ullrich*,
2021 WL 6884736 (M.D. Fla. Sept. 3, 2021) ........................................................................................ 7

*Vt. Teddy Bear Co. v. 538 Madison Realty Co.*,
1 N.Y.3d 470 (2004) ........................................................................................ 9

*Weiss v. Am. Express Nat'l Bank*,
No. 19-CV-4720 (JPO), 2020 WL 71085 (S.D.N.Y. Jan. 7, 2020) .............................. 16

*Weiss v. Macy's Retail Holdings, Inc.*,
741 F. App'x 24 (2d Cir. 2018) ........................................................................ 9

*Wendrovsky v. Chase Paymentech*,
No. 12 Civ. 0704 (AJN), 2012 WL 13042574 (S.D.N.Y. Oct. 15, 2012) .................... 13

*Wolters v. Sweepsteaks Ltd.*,
No. 25-3280, 2026 WL 1894240 (D. Minn. July 1, 2026) .................................... 11, 22

*Zachman v. Hudson Valley Fed. Credit Union*,
49 F.4th 95 (2d Cir. 2022) .............................................................................. 5

**Statutes**

9 U.S.C. § 203 ........................................................................................ 1, 5, 6

9 U.S.C. § 205 ........................................................................................ 5, 6

N.Y. Const. art. I, § 9(1) ........................................................................... 11

N.Y. Gen. Oblig. Law § 5-411 ..................................................................... 11

N.Y. Penal Law § 225.00(2), (6) .................................................................. 11

**Other Authorities**

12 Williston on Contracts § 34:5 (4th ed.) ........................................................ 18

Restatement (Second) of Contracts § 29(1) ...................................................... 10

Restatement (Third) U.S. Law of Int'l Comm. Arb. § 2.5 ........................................ 8

Plaintiff John Doe ("Plaintiff") respectfully submits this memorandum of law and the accompanying declaration of Michael J. Castiglione ("Castiglione Decl.") in opposition to the Stake Defendants'[1] motion to compel arbitration and stay litigation based upon a purported Stake.us arbitration agreement (*see* ECF Nos. 31 and 32) and in support of Plaintiff's cross-motion to remand.

## PRELIMINARY STATEMENT

This case is about youth gambling on Stake.com. Yet, the Stake Defendants do not attempt to enforce that platform's terms because those terms do not have an arbitration clause. Rather, these defendants seek to use the terms of Stake.us, a separate platform. This despite the fact that seven of the eight moving defendants are not parties to the Stake.us terms they now seek to invoke. Chief among them is Medium Rare N.V., which operated Stake.com, and had, and still has, its own terms of service containing no arbitration clause. By this motion, Stake.com seeks to bind Plaintiff to an arbitration clause that is not its own, and that it was unwilling to agree to itself.

This matter, involving only state law claims and no diversity among the parties, has reached this Court because the Stake Defendants removed the case exclusively based upon the Stake.us arbitration clause "falling under" the New York Convention. As such, this Court only has subject matter jurisdiction to continue to hear this case if the at issue agreement "fall[s] under the Convention. *See* 9 U.S.C. § 203 (providing for original jurisdiction over actions or proceedings "falling under the Convention.").

An agreement falls under the Convention only if (1) there is a written agreement; (2) the writing provides for arbitration in the territory of a signatory of the Convention; (3) the subject matter is commercial; and (4) the subject matter is not entirely domestic in scope. *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999). As a threshold matter, the Stake Defendants cannot satisfy the second requirement, and the Court should

---

[1] The Stake Defendants in this case are Medium Rare N.V. d/b/a Stake.com, Sweepstakes Ltd. d/b/a Stake.us, EasyGo Group Holdings Pty Ltd, EasyGo Entertainment Pty Ltd., Medium Rare Ltd., Slicemedia B.V., Bijan Tehrani, and Edward Craven.

remand this case for lack of subject matter jurisdiction. The Stake.us clause provides for no territory at all. It calls for arbitration "held virtually," and names no seat.

Moreover, as shown below, beyond this threshold issue, there is no operative agreement to arbitrate at all. The Court should deny the motion on the merits and then remand the case to state court. Indeed, the Stake Defendants cannot establish an existing agreement for numerous reasons. *First*, the agreement as written gives users the right to opt out of arbitration, with no deadline and no required method. Plaintiff has done so by filing the instant suit. *Second*, no agreement was ever formed because Stake.us' offer excluded New York residents from being able to accept the offer. Stake.us' own records show it knew Plaintiff was one when he accepted the terms. As such, Plaintiff was not within the scope of the offer and therefore no acceptance occurred such that a contract was formed. *Third*, the terms are void under New York's gambling laws, and the arbitration clause, which depends on them, is void with them. A federal court denied Stake.us' motion to compel on that ground this year.

And even assuming there is an agreement, the Convention also states that the Court cannot refer the parties if it finds that the "said agreement is null and void, inoperative or incapable of being performed." Here, the Stake.us agreement is plainly "incapable of being performed" as written. The Stake.us agreement makes AAA the exclusive arbitral forum. But documents from AAA establish that it has already been determined that the Stake.us provisions violate AAA's Consumer Due Process Protocol and AAA will not administer arbitrations under them. The version Stake.us seeks to enforce contains those same provisions verbatim. Stake.us now asks the Court to compel arbitration under terms that AAA has refused to administer and that Plaintiff never agreed to modify. The Court cannot order arbitration where the exclusive forum is unavailable to arbitrate under the terms as written.

Finally, the Stake Defendants other than Stake.us cannot enforce the arbitration agreement because they are not parties to it. They are non-signatories, they are not third-party beneficiaries under the agreement's plain terms, and equitable estoppel does not apply. This is especially true of Stake.com, which has its own, separate terms of service without an arbitration clause.

To avoid these issues, the Stake Defendants ask this Court to delegate these questions to an arbitrator, citing the Stake.us arbitration agreement's delegation clause. But, as detailed below, each of these issues is for the Court, not an arbitrator, as jurisdictional, formation, and forum unavailability questions are for the Court under applicable law, as is Plaintiff's illegality challenge.[2]

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

This is a tort case. Stake.com is an online casino. ECF 6 ¶ 4. They advertise with celebrities who are popular with children. Compl. ¶ 324. They design their games to emulate puzzle games popular with children. Compl. ¶ 375. And they maintained (and maintain) a deliberately ineffective age verification system, allowing children in New York and across the country to gamble freely. Compl. ¶ 142; 418.

Plaintiff opened his first Stake.com account in 2017 when he was twelve in his parents' house in Westchester County, New York. ECF No. 6 ¶ 7. He accessed Stake.com using a VPN, which he learned how to do from an influencer he followed who was secretly being paid by the Stake Defendants to market their online casino. Compl. ¶ 331. He quickly became addicted to gambling, funded by stealing from his father's credit card. Compl. ¶ 13. His gambling ended his college education: he withdrew within a week of arriving because he had lost all of his money, and he began treatment for gambling addiction. Compl. ¶ 18-19, 21.

Initially, Stake.com was openly available to American users. Castiglione Decl. Exh. A ¶ 52-54. Stake.com then set up a Potemkin firewall blocking American users, albeit while funding a marketing network targeted at American children instructing them how to use VPNs to evade these restrictions. Compl. ¶ 331; Castiglione Decl. Exh. A ¶ 52-54. Stake.com knew many of its users were using VPNs and logged such information in the routine course of business. Castiglione Decl. Exh. B (defendant Tehrani discussing in online forum). To expand their market share, the gambling

[2] For ease of reading, unless otherwise noted, all quotes omit internal citations, quotations, and alterations. Further, quotations from the Stake.com and Stake.us terms of service that are in all caps in the original agreements are rendered in lower case.

consortium behind Stake.com set up Stake.us, which is explicitly targeted at American users. ECF No. 7-2 § 2.1. Stake.com is set up to automatically redirect users it detects as being from New York to Stake.us with a message saying "Sorry, Stake.com is not available in your region, but Stake.us is!"[3]

The Stake Defendants claim that during his gambling addiction on Stake.com, Plaintiff created an account with Stake.us. ECF No. 7 ¶¶ 6, 9. They claim he agreed to their terms and conditions by pressing a button labeled "Play Now[.]" ECF No. 7 ¶ 8. The account information they attach to their motion indicates Plaintiff never placed a single bet on Stake.us. ECF 36-2. They admit he created this account when he was a minor. ECF No. 7 ¶¶ 6, 9. The Stake Defendants claim that Plaintiff logged into this account again as an adult, on September 19, 2023. ECF No. 7 ¶ 13. When he logged in again, he submitted a photo of "his unexpired New York State Driver's License" which showed he was under 21. ECF No. 34 ¶¶ 8-11.

The Stake Defendants also claim that the second time Plaintiff logged into the Stake.us platform, he was presented with a "mandatory acceptance window to all users who had not yet accepted the most up-to-date version of the Stake.us Terms[.]" The Stake Defendants present no evidence of what such a window would have looked like however, except a blurry screenshot showing what the platform's sign on window looked like on what appears to be a non-mobile device at an unspecified date later than mid-2025.[4] ECF No. 7 ¶ 11. The Stake Defendants do not present any evidence about Plaintiff would have seen.

This suit was filed on April 10, 2026, by the Plaintiff in New York Supreme Court. After a preliminary hearing in which the presiding judge expressed surprise and skepticism about a potential motion to compel arbitration, the Stake Defendants removed this case to federal court.

[3] The hyperlink Stake.com displays when a user visits from New York identifies the user as coming from "country=US&region=NY[.]" Castiglione Decl. Exh. C (screenshots showing this).

[4] Although the Febbraio declaration the Stake Defendants rely upon in their motion might be read to suggest that the screenshot in question is from 2023 (ECF No. 7 ¶¶ 11-12), the screenshot shows games on Stake.us that were released well after 2023. ECF No. 7 ¶ 12; Castiglione Decl. Exs. D, E (Pragmatic Play release announcements) (games released in June 2024 and April 2025 visible in screenshot from Febbraio declaration). Febbraio also does not explain the basis for his knowledge regarding Stake.us' 2023 systems, which is unclear given he started at his position less than a year ago. ECF 34 ¶ 1.

ECF No. 1, Ex. C. On September 8, 2026, the Stake Defendants moved to compel arbitration, ECF Nos. 31, 32. Plaintiff cross-moves to remand.

## LEGAL STANDARD

On a motion to remand, "[i]t is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction, and it must prove jurisdiction by a preponderance of evidence." *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 617 (2d Cir. 2019); 9 U.S.C. § 205. "Courts assume the truth of non-jurisdictional facts alleged in the complaint, but may consider materials outside the complaint, such as documents attached to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis." *Republic of Kazakhstan v. Chapman*, 585 F. Supp. 3d 597, 602–03 (S.D.N.Y. 2022).

"Courts deciding motions to compel arbitration 'apply a standard similar to that applicable for a motion for summary judgment.'" *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 833 (2d Cir. 2021). The Court considers the evidence in the record and "must draw all reasonable inferences in favor of the non-moving party." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). "If the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the Court] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022).

## ARGUMENT

### I. The Court Lacks Subject Matter Jurisdiction as a Threshold Matter Because the Agreement Does Not Provide for Arbitration in the Territory of Signatory

In a New York Convention case, "federal district court must have both removal jurisdiction [under 9 U.S.C. § 205] and subject matter jurisdiction [under 9 U.S.C. § 203] in order to preside over a case removed from state court." *Holzer v Mondadory*, No. 12 CIV. 5234 NRB, 2013 WL 1104269, at *6 (S.D.N.Y. Mar. 14, 2013); *Albaniabeg Ambient Sh.p.k. v. Enel S.p.A.*, 169 F. Supp. 3d 523, 528 (S.D.N.Y. 2016) ("courts in this District treat Section 205 as a removal statute that

does not confer subject matter jurisdiction. In making a determination as to subject matter jurisdiction, courts look to Section 203"). Courts have original jurisdiction over an "action or proceeding falling under the Convention" 9 U.S.C. § 203.

Here, jurisdiction rests entirely on the New York Convention, as the parties lack diversity and there is no federal claim. In such a case, if the Court determines that there is no valid arbitration clause that falls under the Convention, the case must be remanded. *See Holzer v. Mondadori,* No. 12-cv-5234, 2013 WL 1104269, at *15 (S.D.N.Y. Mar. 14, 2013) (after considering the merits, holding claims "do not belong in federal court under sections 203 and 205 of the Convention" and remanding to state court); *Molecular Dynamics, Ltd. v. Spectrum Dynamics Med.* Ltd., 143 F.4th 70, 87–89 (2d. Cir. 2025) (if an "action does *not* comport with the 'provisions and …spirit' of the Convention," a federal district court lacks subject matter jurisdiction to continue to retain the case.") (emphasis original, citation omitted).

There are "four basic requirements" for an agreement to fall under the Convention: "(1) there must be a written agreement[5]; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope." *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999); *accord U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co*., 241 F.3d 135, 146 (2d Cir. 2001) ("An agreement to arbitrate exists within the meaning of the Convention and the FAA if . . . the writing provides for arbitration in the territory of a signatory of the convention[.]") These requirements are jurisdictional. *See Kairos Manford Priv. Equity Fund I L.P. v. Xu*, 2026 WL 2389242, at *5 (S.D.N.Y. Aug. 15, 2026).

The Stake.us agreement does not fall under the Convention because it provides only for a virtual, remote arbitration and does not provide for arbitration in the territory of a signatory. Agreements that do not provide for arbitration in the territory of a signatory of the New York

[5] Plaintiff challenges jurisdiction on the territory requirement as a threshold matter. The other defects below go to merit question of whether arbitration may be compelled, and only then to whether remand for lack of jurisdiction is appropriate after that determination is made.

Convention do not fall under the Convention. *See DaPuzzo v. Globalvest Mgmt. Co., L.P.*, 263 F. Supp. 2d 714, 726 (S.D.N.Y. 2003) (agreement provided for arbitration in the territory of a nonsignatory to the Convention); *Ullrich v. Ullrich*, 2021 WL 6884736, at *12–13 (M.D. Fla. Sept. 3, 2021) (agreement that did not specify place of arbitration failed to satisfy identical jurisdictional element in Panama Convention).[6]

The Stake.us arbitration agreement requires that "all proceedings related to the arbitration" "be held virtually and not in person" "except by mutual agreement of all parties[.]" ECF No. 7-1 § 26.7(a)(2); ECF No. 7-2 § 26.6(a)(2). Nothing in the agreement specifies that arbitration will take place in any particular arbitral seat. Indeed, Stake.us appears to have crafted the agreement quite consciously to avoid specifying a particular arbitral seat and to prevent a scenario in which Stake.us or its executives might be expected to appear in a particular place. The agreement does not provide for arbitration "pursuant to a specific protocol which provides for arbitration in the territory of a Convention signatory" as the Convention requires. *Credit Suisse First Bos., LLC v. Padilla*, 326 F. Supp. 2d 508, 511 (S.D.N.Y. 2004).

In its notice of removal, the Stake Defendants try to get around this fact by arguing that the Stake.us arbitration agreement "requires that the arbitration be administered by the American Arbitration Association[.]" ECF No. 1 ¶ 35(b). But that simply does not speak to the relevant question because "the location of a regional arbitration center does not *per se* dictate where an arbitration will take place or where an arbitration will be seated." *Ullrich*, 2021 WL 6884736, at *12. After all, "arbitration centers do not resolve disputes themselves or act as arbitrators; instead, [] arbitration centers play administrative roles and aid in the resolution of disputes by arbitrators." *Id.* at *12 n.19. Stake's argument in its notice of removal that it satisfies this requirement based on AAA's location asks this Court to rely on an assumption about where an arbitrator from a particular

[6] "The Panama Convention and the New York Convention are 'substantively identical.'" *Chicago Bridge & Iron Co. N.V. v. Refineria de Cartagena S.A.S.*, No. 23-cv-4825, 2025 WL 71658, at *11 (S.D.N.Y. Jan. 10, 2025).

arbitration center would choose to hold an international arbitration.[7] "A district court may not assume subject-matter jurisdiction when the record does not contain the necessary prerequisites for its existence." *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 618 (2d Cir. 2019); *accord APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) ("Jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.").

The Stake Defendants further pivot in their notice of removal to arguing that "the test's inquiry as to whether the Arbitration Agreement provides for arbitration in the territory of a signatory of the New York Convention goes beyond the plain text of the New York Convention, and thus is not required for removal." ECF No. 1 ¶ 34 n.3. But the Second Circuit has directly held otherwise. *Smith*, 198 F.3d at 95. ("[S]ince the [at-issue arbitration agreements] satisfied all the requirements set forth in *Ledee*—particularly as they call for arbitration in New York—we conclude that the district court had jurisdiction under the Convention and the implementing provisions of the FAA."). The two nonbinding authorities the Stake Defendants cite in its removal petition are thus besides the point.[8]

## II. No Agreement Exists Because Plaintiff Has Validly Opted Out

The Stake.us arbitration agreement permits users to "opt out[.]" ECF No. 7-2 § 2.6. Plaintiff exercised this right and opted out of the Stake.us arbitration clause when he filed the Complaint.

---

[7] It also relies on the unsound assumption that AAA would be willing to conduct an arbitration based on the 2023 Stake.us agreement. As discussed in Part VI. below, AAA has informed Stake.us in writing it will refuse to conduct such arbitrations because the 2023 Stake.us arbitration agreement fails to comply with AAA's due process protocols. *See* Castiglione Decl., Ex. F.

[8] Neither nonbinding authority makes a strong case for its position, in any event. The Stake Defendants' first nonbinding authority—the Restatement (Third) U.S. Law of Int'l Comm. Arb. § 2.5— is up front about the fact that this position is at odds with the caselaw. *Id.*, Reporter's Notes, comment a. ("numerous circuits have included as one of the requirements for application of the Conventions that 'the agreement must provide for arbitration in the territory of a Convention signatory'" and that "cases that have actually decided the issue (in the context of interpreting FAA § 206) have held that the reciprocity reservation applies to agreements[.]"). The Restatement also treats *Smith*'s territory requirement as dictum. *Id*. It is not. "Holdings decide a case and explain the rules of law that govern that decision." *Retail Prop. Tr. v. Nassau Cnty. Dep't of Assessment*, 185 F.4th 316, 326 (2d Cir. 2026). *Smith* upheld jurisdiction "particularly" because the agreements called for arbitration in New York, 198 F.3d at 95, and that rule governed its decision. The Stake Defendants' other nonbinding authority, *Cosgun v. Seabourn Cruise Line Ltd. Inc.*, 666 F. Supp. 3d 1270, 1289 (S.D. Fla. 2023), cannot displace *Smith* and *U.S. Titan* in this Circuit.

Compl. ¶¶ 403-409. Because of this, no valid agreement exists to enforce any longer. Nothing in the version of the Stake.us arbitration agreement that the Stake Defendants contend controls here (version 5.0) in any way prohibits Plaintiff from opting out in this fashion or imposes a time limit on Plaintiff's right to do so. ECF No. 7-2 § 2.6.

The Stake Defendants do not address this opt-out right in its brief. In an affidavit attached to Stake's notice of removal, a Stake.us executive claims that "the Stake.us Terms permit users to opt out of the arbitration agreement contained in the Stake.us Terms within 30 days of acceptance[.]" ECF No. 7-2 ¶ 14 (Febbraio Aff.). This claim appears to be based on a misunderstanding about what version of the Stake.us terms of service are at issue here—the first version of the Stake.us terms of service that contain a 30-day time limit is version 7.0, and the same Stake.us executive has acknowledged in other litigation that version 7.0 took effect on August 23, 2024. *Ridley v. Sweepsteaks Ltd.*, No. 1:25-CV-2511 (LMB), 2026 WL 2201149 (E.D. Va. July 30, 2026), ECF No. 17-1 ¶ 25 & Ex. G (E.D. Va. May 6, 2026) (Febbraio declaration). Version 5.0, the version at issue here, has no time limit. ECF No. 7-2 § 2.6.

Stake Defendants may argue that the Court should rewrite version 5.0 to include version 7.0's time limit and procedure for opting out. But courts "may not by construction add or excise terms" from contracts. *Vt. Teddy Bear Co. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004). This is especially true when the drafting party is the one asking the court to make up new contractual terms—a contract "must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language." *Jacobson v. Sassower*, 66 N.Y.2d 991, 993 (1985). Stake Defendants are stuck with the terms of the agreement they wrote.

But even if the Court were empowered to rewrite version 5.0 to include version 7.0's procedures, doing so would create a serious contract formation issue—a party "cannot be bound by an offer to agree to arbitrate that he did not receive" and instructions on how to opt out are a part of an offer to arbitrate. *Weiss v. Macy's Retail Holdings, Inc.*, 741 F. App'x 24, 28 (2d Cir. 2018); *accord Lipsett v. Popular Bank*, No. 22-3193-cv, 2024 WL 111247, at *2 (2d Cir. Jan. 10, 2024). This is particularly true here, where Plaintiff would have had no means of knowing what

opt-out procedures would govern him and thus not meaningful opportunity to opt out.

### III. No Agreement Was Formed Because Stake.us' Terms Expressly Excluded New York Residents From the Offer, and Stake.us Knew Plaintiff Was One

No agreement was formed because Stake.us' "offer" excluded people residing in New York, like the Plaintiff, from being able to accept. As matter of the basic contract formation principles of offer and acceptance, this means no contract was ever formed.

To create a binding contract, "there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999) (citation omitted). "Generally, courts look to the to the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract." *Id.* The "manifested intention of the offeror determines the person or persons in whom is created a power of acceptance." Restatement (Second) of Contracts § 29(1). As the "master of his offer," the offeror is "bound only in accordance with his manifested assent." *Id.* § 29 cmt. a. There is no meeting of the minds and no contract where the parties "lacked a common intent on a material term of the supposed agreement." *Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329, 338 (S.D.N.Y. 2006).

Stake.us never extended its offer to New York residents. The September 2023 terms on which Stake.us principally relies warn at the outset that anyone living in an "Excluded Territory" must "Not proceed any further – you are not eligible to access or use the platform, create a customer account, play the games, or interact with Stake.us in any other way," and they name "New York" as an Excluded Territory. ECF No. 7-2, § 2.1(b)(ii). The April 2023 terms contain the same exclusion. ECF No. 7-1, §§ 2.1(d), 2.3 (instructing residents of Excluded Territories: "Do not register for the platform"). A New York resident's click could not accept an offer that was never made to him.

Stake.us further knew Plaintiff was a New Yorker. He logged in "near New York, U.S." eight seconds before the purported September 2023 acceptance. ECF No. 34 ¶¶ 7–8. The same

day, from the same IP address, he submitted "his unexpired New York State Driver's License" in a verification session that located him in "New York, Larchmont." *Id.* ¶¶ 10–11. Stake.us nonetheless kept the account open, and it remains open today. Id. ¶ 5.

### IV. No Arbitration Agreement Survives Because the Terms Are Void as Illegal Gambling, and the Arbitration Clause Falls With Them

Assent to Stake.us' arbitration clause arises only "[b]y agreeing to these Terms and Conditions." ECF No. 7-2 §§ 26.3, 26.6(a). Those terms are a contract to stake Stake Cash on games of chance for prizes that include cryptocurrency, id. §§ 8.2(b), 11.4, 13.1(b), (d), 13.2(b), and New York voids "[a]ll contracts for or on account of any money or property . . . wagered, bet or staked," N.Y. Gen. Oblig. Law § 5-411; *see* N.Y. Const. art. I, § 9(1); N.Y. Penal Law § 225.00(2), (6).

With no source of assent but void terms, the arbitration and delegation provisions are "null and void," Convention art. II(3). And because that defect lies in the clause's own text, which makes assent depend on the terms, not merely in the contract as a whole, the Court decides it, not an arbitrator. On this reasoning, a federal court in Minnesota refused to enforce Stake.us' arbitration clause just this year, citing Minnesota law, where Stake.us is also illegal. *See Wolters v. Sweepsteaks Ltd.*, No. 25-3280, 2026 WL 1894240, at *3–5 (D. Minn. July 1, 2026) (denying Stake.us' motion to compel). The Court should do the same here under New York law.

### V. No Arbitration Agreement Was Formed With Medium Rare (Stake.com) Because it has its Own Forum Selection Clause

Even on Stake Defendants' own account, Medium Rare N.V. and Medium Rare Limited,[9] (together, "Medium Rare"), which are the Stake.com entities, have never agreed to arbitrate anything with Plaintiff. The Stake Defendants assert that Plaintiff accepted the separate Stake.com terms when he opened accounts in 2017 and 2019 with Medium Rare and accepted updated versions as recently as May 23 and September 16, 2023. ECF No. 6 ¶¶ 7–11. Those terms contain

[9] Medium Rare N.V. is the formal signatory to the Stake.com agreement and it names it's the wholly owned subsidiary, Medium Rare Limited, in the agreement as performing payment processing for it.

no arbitration provision but rather contain a forum selection clause precluding arbitration:

> You irrevocably agree that, subject as provided below, the courts of Curaçao shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Agreement and any matter arising therefrom and irrevocably waive any right that it may have to object to an action being brought in those courts, or to claim that the action has been brought in an inconvenient forum, or that those courts do not have jurisdiction.[10]

ECF No. 6-1 § 25.1. The Stake.com terms also contain a merger clause stating the user agreement "constitutes the entire understanding and agreement between you and Stake regarding the Service and supersedes any prior agreement, understanding, or arrangement between you and Stake." ECF No. 6-1 § 28.5.

Having its own terms, Medium Rare cannot now reach across a different company's website and claim the benefit of an arbitration clause in a contract to which it is not a party. Plaintiff's allegation that the Stake Defendants are alter egos does not change this. Entities under common control can still have separate contracts with the same customer, and Medium Rare has its own.[11] The Stake.com agreement shows the Stake.us agreement "most certainly did not intend to confer third-party beneficiary rights" because those rights "were clearly defined elsewhere[.]"*Debary v. Harrah's Operating Co.*, 465 F. Supp. 2d 250, 268 (S.D.N.Y. 2006); *4 Hour Wireless v. Smith*, No. 01 Civ. 9133 (RO), 2002 WL 31654963, at *1 (S.D.N.Y. Nov. 22, 2002) ("conclusion that Calypso was not an intended third-party beneficiary of the AT&T/4 Hour contract is buttressed by Calypso's own agreement with 4 Hour").

The Stake Defendants cite no decision letting a defendant borrow an arbitration clause from another company's website when its own contract with the plaintiff has none. Medium Rare

[10] Plaintiff does not concede that this section is enforceable against him, and the Stake Defendants, having removed this action and sought arbitration, have not invoked it. Plaintiff cites the clause as evidence of the dispute resolution terms Medium Rare N.V. chose for its relationship with Plaintiff.

[11] Alter-ego allegations presuppose that the entities are formally separate and ask that the form be disregarded to impose liability. They give no Stake Defendant a right to claim another's contract. Veil-piercing requires "some showing of a wrongful or unjust act toward the party seeking piercing," *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997), and otherwise "the corporate form is to be respected in dealings with third parties," *Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd.*, 909 F.2d 698, 702 (2d Cir. 1990). *See generally* Pl.'s Mem. in Opp. to Def. Freeman's Mot. to Compel Arbitration, Part IV.A (filed concurrently).

simply cannot credibly argue it was an intended beneficiary of Stake.us arbitration clause when its own contract with the same user contains a forum selection clause without arbitration and also a merger clause. General "affiliate" language[12] within the Stake.us agreement cannot reasonably be read to override a specific, separate terms that selects courts. It also plainly is not inequitable to hold Plaintiff to litigation with a defendant that contractually chose litigation. Plaintiff could not have consented to arbitrate Stake.com disputes by clicking through a Stake.us form when Stake.com's own contract told him the opposite. Here, Stake.com drafted a litigation clause for itself, and now asks to be relieved of that choice.[13]

## VI. The Stake.us Arbitration Agreement is Incapable of Being Performed Because the Designated Exclusive Administrator is Unavailable to Arbitrate Under the Terms.

Even assuming an agreement falling under the Convention exists, the Court cannot order arbitration because the agreement is incapable of being performed as written. Under Article II(3) of the New York Convention, a court asked to compel arbitration may not refer the parties to arbitration if it finds that the "said agreement is null and void, inoperative or incapable of being performed." *See* Convention art. II(3).

An arbitration agreement is incapable of being performed where it designates a specific forum—and only that forum—as the one which shall administer arbitration. *See Gutfreund v. Weiner (In re Salomon Inc. Shareholders Derivative Litig.,* 68 F.3d 554, 558-59 (2d Cir. 1995)) (affirming refusal to compel arbitration when the parties had agreed to arbitrate disputes only before the New York Stock Exchange, and the New York Stock Exchange refused to arbitrate the particular dispute in question); *Moss v. First Premier Bank*, 835 F.3d 260, 265-67 (2d Cir. 2016) (affirming refusal to compel arbitration where the designated arbitration forum was unavailable); *Wendrovsky v. Chase Paymentech*, No. 12 Civ. 0704 (AJN), 2012 WL 13042574, at *7 (S.D.N.Y.

---

[12] The Stake Defendants also never actually offer evidence of why Stake.com is an "affiliate" of Stake.us.

[13] *Bakon v. Rushmore Serv. Ctr. LLC*, cited by the Stake Defendants, is inapposite. In that case, the non-signatory enforcing the arbitration provision had no contract of its own governing its relationship with the plaintiff. No. 25-cv-1944, 2017 WL 2414639 (E.D.N.Y. June 2, 2007)

Oct. 15, 2012) ("Unavailability of a selected arbitrable forum precludes enforcement of an arbitration provision if the unavailable forum is the 'exclusive' one chosen for arbitration under the contract.").

An arbitration agreement designates an arbitral forum as an exclusive forum when it provides that disputes "shall be resolved" by that forum, where it incorporates the rules of that forum into the arbitration clause itself, and when it makes no reference to a mechanism for appointing a substitute arbitrator. *Moss*, 835 F.3d at 265-67. The Stake.us arbitration agreement does just that. ECF No. 7-2 §§ 26.6(a) (disputes "shall be referred to and finally resolved by arbitration administered by the American Arbitration Association (AAA), the rules of which are deemed to be incorporated by reference into this clause.").

But AAA has already determined that the Stake.us arbitration clause materially deviates from its minimum due process standards for consumer arbitration, and has notified Sweepsteaks Limited, the Stake.us defendant, that it will not administer cases under the clause as written. AAA requires companies to register their consumer arbitration clauses in AAA's Consumer Clause Registry. [14] When Sweepsteaks Limited did so, AAA reviewed the clause, and in a letter dated January 16, 2026, AAA rejected the clause because it contained four mandatory provisions that did not comply with AAA's minimum due process standards. *See* Castiglione Dec., Ex. F (AAA Letter).

The four non-compliant provisions AAA identified include (i) a requirement that all proceedings be conducted virtually, with no in-person hearing; (ii) the elimination of any hearing at all for claims of $25,000 or less, which are decided on documents alone; (iii) a limit of one deposition per side; and (iv) a "Collective Action" provision that bars a consumer's claim whenever his lawyer is pursuing similar claims for other clients at the same time. Each of these

[14] Rule 12 of AAA's Consumer Arbitration and Mediation Procedures (the "AAA Consumer Rules") requires a business that provides for or intends to provide for arbitration in a consumer contract to register its consumer arbitration clause with the publicly accessible AAA Consumer Clause Registry. This process subjects the agreement to a AAA review for material compliance with due process standards contained in AAA's Consumer Due Process Protocol.

terms appears verbatim in the version of the Stake.us arbitration clause at issue here. *Compare* AAA Letter *with* ECF No. 7-2 §§ 26.6(a), 26.7(b)–(c). Each of these four provisions is a reciprocal term that binds, and runs to, both parties.

As a result of AAA's finding that these four provisions in the arbitration clause violated AAA's Consumer Due Process Protocol, AAA advised Stake.us that absent a signed waiver it "will decline administration of cases filed pursuant to" the clause as written. *See* AAA Letter. The AAA Letter further asked Stake.us to execute such a waiver by signing and returning the letter. On February 9, 2026, the Stake Defendants signed the enclosed waiver, modifying the clause in a side letter with AAA to drop all four provisions. *Id.* They never told Plaintiff, and the posted terms still contain all four non-compliant provisions. *See supra* Statement of Facts Part E.

The AAA Letter establishes, as a matter of law, AAA's unwillingness to administer the arbitration clause at issue as written. Courts have determined the unavailability of a forum from objective, preexisting facts without requiring the party opposing arbitration to first submit a futile arbitration demand and obtain a rejection. *See Relevent Sports, LLC v. U.S. Soccer Fed'n, Inc.,* No. 19-CV-8359 (VEC), 2020 WL 4194962, at *4 (S.D.N.Y. July 20, 2020) (denying motion to compel arbitration where FIFA arbitration tribunal already stated in correspondence in a different matter that it "will not entertain" the issue presented in this case); *Ranzy v. Tijerina,* 393 F. App'x 174, 175 (5th Cir. 2010) (per curiam) (affirming denial of motion to compel arbitration where National Arbitration Forum had already ceased handling consumer arbitrations); *Merritt Island Woodwerx, LLC v. Space Coast Credit Union,* 137 F.4th 1268, 1274 (11th Cir. 2025) ("it doesn't matter that True Touch didn't formally request to arbitrate before filing suit. . . . Here, True Touch had an identical arbitration provision to the one the AAA refused to administer. By possessing the identical rejected agreement, True Touch had a sufficient 'evidentiary basis' in the form 'of an actual rejection letter' to support a valid futility argument."). Rule R-10(b) of the AAA Consumer Rules[15] also explicitly authorize the parties to submit their dispute to the "appropriate court" in the

[15] The Stake Defendants appear to rely on AAA's Commercial Rules. *See* ECF No. 32 at 10 n.5. However, the arbitration clause at issue here does not incorporate those rules specifically, but only AAA rules generally. The AAA

event that AAA declines to administer an agreement for any reason under the rules, including noncompliance with AAA's Consumer Due Process Protocol.

Stake Defendants may argue that the Court should either appoint another arbitrator or compel Plaintiff to arbitrate under a modified version of the Stake.us arbitration agreement that excludes the rule that AAA forbids. The first argument is blocked by controlling authority: "[o]nce the designated arbitrator refuses to accept arbitration, there is no further promise to arbitrate in another forum." *Moss*, 835 F.3d at 265. The second argument is likewise blocked by controlling authority. Parties may "shape [arbitration] agreements to their liking by specifying," among other things, "the rules by which they will arbitrate[.]" *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019). "Whatever they settle on, the task for courts and arbitrators at bottom remains the same: 'to give effect to the intent of the parties.'" *Id.*; *accord* Convention art. V(1)(d) (recognition of arbitral award should be denied when arbitral procedure "not in accordance with the agreement of the parties"). Stake Defendants are stuck with the terms of the agreement they wrote, not different terms it might like to have written, and AAA will not administer under those terms.

## VII. The Nonsignatory Stake Defendants Cannot Enforce the Stake.us Arbitration Clause

The nonsignatory Stake Defendants cannot compel arbitration – either as third party beneficiaries of the Stake.us arbitration clause or on the basis of estoppel.[16] While the Stake.us arbitration clause defines "Disputes" to include disputes with certain categories of non-parties, the

---

rules that obviously apply to the clause in this case are the Consumer Rules, both by their terms and by the Stake Defendants' conduct in seeking to register those terms with the Consumer Clause Registry. The Consumer Rules govern any arbitration clause in a "consumer agreement", which the rules define as a standardized, non-negotiable agreement between an individual consumer and a business for consumable goods or services for personal or household use. *See* AAA Consumer Rule R-1(b).

[16] The motion also fails at a threshold step, as to every Stake Defendant. The Stake.us clause provides that neither the user "nor Stake will be entitled to participate in any Collective Action . . . or otherwise consolidate, join, participate, represent or coordinate Disputes . . . with or involving other individuals or entities," ECF No. 7-2 § 26.8(a) (capitalization altered), and "Disputes" include disputes over arbitrability, *id.* § 26.3. All eight Stake Defendants moved to compel through the same counsel. ECF No. 37 ¶ 1. A party that has not met a condition the agreement places on arbitration cannot compel it. *Weiss v. Am. Express Nat'l Bank*, No. 19-CV-4720 (JPO), 2020 WL 71085, at *2 (S.D.N.Y. Jan. 7, 2020). And because the clause forbids any arbitrator to engage in a Collective Action, ECF No. 7-2 § 26.7(a), the Court, not an arbitrator, decides whether Stake met that condition. *See McMahan v. Whaleco, Inc.*, No. 25-CV-1590 (MKB), 2026 WL 657449, at *17 (E.D.N.Y. Mar. 9, 2026).

nonsignatory Stake Defendants have not shown they fall within those categories or that the clause gives them a right to enforce it.

As an initial matter, the Stake Defendants motion suffers from a failure of proof on this point, as the Stake Defendants make no attempt to offer evidence as to the corporate relationship between the nonsignatory defendants, instead relying on Plaintiff's allegation in the Complaint (while also appearing to leave open the ability to challenge those later). Plaintiff stands by his allegations that the Stake Defendants operate as a single enterprise under the common ownership and control of Tehrani and Craven. The Stake Defendants read those allegations as a concession that they may invoke the arbitration clause. ECF No. 32 at 13, 15–16. But the allegations go to which entities may be held liable, and they presuppose that the Stake Defendants are formally separate. *See* supra n.11. Third party beneficiary status turns instead on whether each Stake Defendant holds one of the formal relationships the clause lists. Apart from calling Easygo Group Holdings Pty Ltd. the parent of Sweepsteaks Ltd., Compl. ¶¶ 60, 62, the Complaint does not allege that any Stake Defendant holds one of those formal relationships. Indeed, the Stake Defendants do not make any showing how each of the non-signatories fit within the specific categories of entities used in the Stake.us terms, such as "affiliate", "subsidiary" and "ultimate parent and parent companies" that fall within the scope of the disputes.[17]

That said, "[p]roving third-party beneficiary status requires that the contract terms clearly evidence an intent to permit enforcement by the third party in question." *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n*, 747 F.3d 44, 49 (2d Cir. 2014); *accord Sunco Int'l Inc. v. Jiangsu Sunco Boiler Co.*, 186 F.4th 931, 935 (7th Cir. 2026) ("Arbitration is a matter of contract, and the general rule is that nonparties to arbitration agreements can neither be bound to them nor benefit from them."). A "contract should be read as a whole, with every part interpreted with reference to the whole" in order "to safeguard against adopting an interpretation that would

[17] Plaintiff notes that nowhere do the Stake.us terms actually say that non-signatories can enforce the terms. Rather, the clause simply defines "Disputes" to include disputes with affiliates, but the actual promise to arbitrate is between two parties.

render any individual provision superfluous[.]" *Flynn v. McGraw Hill LLC*, 120 F.4th 1157, 1165–66 (2d Cir. 2024) (internal citations, quotations, and alterations omitted). Contract terms should be construed in light of the "customs and practices of the business[.]" *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010). Similarly, "[c]ourts have long recognized that technical trade usages can sometimes clarify contract terms."[18] *Lexington Ins. Co. v. RLI Ins. Co.*, 949 F.3d 1015, 1021 (7th Cir. 2020).

The only signatory to the Stake.us terms that is a defendant in this litigation is Sweepsteaks Ltd. *See* ECF No. 7-2 § 1. The Stake.us arbitration agreement is a clause within the Stake.us terms. The Stake.us terms refer to Sweepsteaks Ltd. as "'Stake', 'we', 'us' or 'our[.]'" *Id.* The arbitration clause provides that disputes subject to arbitration include disputes with certain categories of nonsignatories, though it does not explicitly give those other entities a right to enforce the agreement. *See* ECF 7-2, § 26.3 (listing "affiliates, subsidiaries, ultimate parent and parent companies, partners, officers, directors, employees, contractors, shareholders, agents, licensors, subcontractors or suppliers").

But it is not clear how each of the nonsignatories fit within those categories. With respect to "affiliates", much of Stake.us' marketing occurs through what it refers to as its "affiliate program," which pays Stake.us users commissions when other users sign up and gamble using the affiliate's referral code. *See* Castiglione Decl. Exh. G (screenshot of https://stake.us/affiliate/overview providing overview of affiliate program); *cf.* Compl. ¶ 105. The webpage refers to "Stake Affiliates". Because "affiliates" is undefined in the Stake.us terms and given that Stake.us appears to use the term "affiliate" to mean a commissioned marketer who refers users through its "Affiliate Program", it is not at all clear that the non-signatories fall under this category. This is especially true because the Stake.us terms themselves distinguish an "affiliate" from a "related body corporate," in defining the "Payment Administration Agent" as a service

[18] Consideration of such evidence does not violate the parol evidence rule because "evidence of usage may be admissible to give meaning to apparently unambiguous terms of a contract when other parol evidence would be inadmissible." 12 Williston on Contracts § 34:5 (4th ed.).

provided through "any related body corporate, affiliate, or third party we appoint to act as our agent." ECF No. 7-2 § 3(i).

Moreover, none of the nonsignatory Stake Defendants are subsidiaries of Sweepsteaks Ltd, and the Stake Defendants do not appear to claim otherwise. Nor do any of the nonsignatories fall under "ultimate parent and parent companies" at least according to the Stake Defendants' corporate disclosure statement. *See* ECF No. 15. The arbitration agreement provides for arbitration of claims against noncorporate owners and corporate officers, its "partners, officers, directors, . . . [and] shareholders[.]" ECF 7-2, § 26.3. But as Defendant Christopher Freeman has admitted under oath, there are no direct ties between the individual Defendants and any of the operating entities in the Stake corporate family as part of the individual Defendants' strategy to use "a web of offshore entities to keep their identities and 'fingerprints' off the operating entities[.]" Compl. ¶ 64; *see supra* Statement of Facts, Part C. There is no evidence that the nonsignatory Stake Defendants are "employees, contractors, [] agents, licensors, subcontractors or suppliers." The Stake Defendants have not made the requisite showing as to who the nonsignatory defendants fit within the scope of the terms to be third-party beneficiaries.

Nor can the doctrine of equitable estoppel save the nonsignatory defendants. "The purpose of the doctrine of equitable estoppel is to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is, from relying on the contract when it works to his advantage by establishing the claim, and repudiating it when it works to his disadvantage by requiring arbitration." *Denney v. Jenkens & Gilchrist*, 412 F. Supp. 2d 293, 298 (S.D.N.Y. 2005). "The plaintiff's *actual dependence* on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the *sine qua non* of an appropriate situation for applying equitable estoppel." *Id.* (emphasis in original); *accord Ferro v. Allied Interstate, LLC*, No. 19-cv-49, 2019 WL 3021234, at *6 (E.D.N.Y. July 10, 2019) ("equitable estoppel applies only where the arbitration agreement forms the legal basis for plaintiff's claims against the non-signatories; it is not enough that the contract is factually significant to plaintiff's claims or has a 'but-for' relationship with them."). "There is no unfairness in denying estoppel to a third-party wrongdoer aligned with a

signatory in effectuating allegedly wrongful business practices." *Doe v. Trump Corp.*, 6 F.4th 400, 414 (2d Cir. 2021). Estoppel should be denied where Plaintiff's claims "do not rely on the terms of the [contract] or seek to enforce rights or obligations arising from that contract" but instead "arise from alleged statutory and common-law violations[.]" *Barrios-Contreras v. Big Fish Ent. LLC*, No. 25-CV-3203 (JGLC)(SN), 2026 WL 621576, at *5 (S.D.N.Y. Mar. 5, 2026).

Plaintiff's claims do not depend on the Stake.us arbitration agreement. Plaintiff has brought tort claims against Stake Defendants which do not depend on the Stake.us Terms. Indeed, Plaintiff has expressly disaffirmed reliance on any contract with any of the Stake Defendants entered into while a minor. There is thus no unfairness in denying estoppel to the nonsignatory Stake Defendants, which are merely "third-party wrongdoer[s] aligned with a signatory in effectuating allegedly wrongful business practices." *Trump Corp.*, 6 F.4th at 414. The cases the Stake Defendants cite in their motion papers are not contrary. The cases cited are either varying flavors of contract disputes[19] or are employment disputes where a plaintiff asserted a nonsignatory was his employer to plead a claim and an arbitration clause already covered the same employment relationship.[20] Such cases are factually inapposite.

**VIII. The Court, Not an Arbitrator, Should Decide Each of These Issues**

The Stake Defendants are mistaken in suggesting that any of the issues raised in this opposition should be decided by an arbitrator. "Questions concerning the formation and existence of an arbitration agreement must be resolved by the courts in the first instance." *Olin Holdings Ltd. v. State*, 73 F.4th 92, 101 (2d Cir. 2023); *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019) ("[P]arties may not delegate to the arbitrator the fundamental question of whether they formed the agreement to arbitrate in the first place."). This is true even when the

---

[19] *Desarrolladora La Ribera*, No. 24-CV-67, 2024 WL 5186600, at *14 (S.D.N.Y. Dec. 20, 2024) (breach of contract case); *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 654 (S.D.N.Y. 2011) (dispute regarding "the rights and obligations of the [litigants] pursuant to the [relevant] Agreements"); *Macioce v. Hisense USA Corp.*, No. 25 CIV. 1608 (PAE), 2025 WL 3685179, at *5 (S.D.N.Y. Dec. 19, 2025) (dispute regarding whether plaintiff "paid more for his [] television than he otherwise would have" that court determined was "intertwined with the underlying contract obligations").

[20] *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010); *Martinez v. GAB.K, LLC*, 741 F. Supp. 3d 26, 36 (S.D.N.Y. 2024); *Havens v. Hartford Fin. Servs. Grp., Inc.*, No. 18 CIV. 488 (PGG), 2020 WL 1244235, at *4 (S.D.N.Y. Mar. 13, 2020).

alleged arbitration agreement contains a delegation clause because "basic principles of contract and consent require" that "where a challenge applies 'equally' to the whole contract and to an arbitration or delegation provision, a court must address that challenge." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 (2024); *accord Cap Gemini Ernst & Young, U.S., LLC v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003) ("[A]rbitration agreements [are] as enforceable as other contracts, *but not more so*[.]" (emphasis original)). Stake Defendants must also come forward with "clear and unmistakable evidence" "that the parties agreed to arbitrate arbitrability" to benefit from a delegation clause. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Each of the issues Plaintiff raises in this opposition goes to the fundamental question of whether there is an operative arbitration clause the parties agreed to:

- Whether Plaintiff opted out of the Stake.us arbitration clause goes to the continued existence of an arbitration agreement and is thus for the Court. *Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886, 893 n.8 (N.D. Ill. 2016) (noting opt out right would be "illusory" if validity of opt out was decided by arbitrator—"how does one opt out of a delegation provision that requires you to arbitrate whether you opted out?")
- Whether there was a meeting of the minds as to the essential terms of the Stake.us terms of service is a formation issue for the Court. *Olin*, 73 F.4th at 101; *Suski*, 602 U.S. at 151.
- Whether AAA is unavailable to enforce the relevant version of the Stake.us arbitration agreement is an issue for the Court. New York Convention art. II(3) (specifically directing "[t]he court" to determine if referral to arbitration would be improper because "the said agreement is . . . incapable of being performed[.]"); *Kelly-Starkebaum v. Papaya Gaming Ltd.*, 2024 WL 5135799, at *7 (S.D.N.Y. Dec. 17, 2024) ("the Court decides a challenge directed specifically to the delegation provision . . . the party must make arguments specifically about that provision, but it can do so on the same bases from which it challenges other aspects of the arbitration agreement."); *Taylor v. Carnival Corp.*, 25-cv-20851, 2025 WL 2937096, at *5 (S.D. Fla. Oct. 16, 2025) ("A challenge to the availability of an arbitration forum, such as when an arbitration agreement requires a specific tribal

arbitral forum that does not exist, is a challenge to a delegation clause as well as the underlying arbitration agreement.”).

- Whether Plaintiff agreed to arbitrate anything with the nonsignatory Stake Defendants is an issue for the Court. *Gerszberg v. Li & Fung (Trading) Ltd.*, 215 F. Supp. 3d 282, 291 (S.D.N.Y. 2016) (“it is for the Court, not an arbitrator, to make a threshold determination here whether [the moving party] is a third-party beneficiary to the [relevant agreement] entitled to enforce the [a]rbitration [c]lause.”); *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 677 (2d Cir. 1972) (“whether a person is a party to the arbitration agreement” is an issue that goes to “the making of the arbitration agreement[.]”).
- Plaintiff’s illegality challenge to the Stake.us arbitration agreement is for the Court, not an arbitrator, for the reasons explained in *Wolters v. Sweepsteaks Ltd.*, No. 25-3280, 2026 WL 1894240, at *3–5 (D. Minn. July 1, 2026).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Stake Defendants’ motion to compel arbitration and remand this case to state court.

Dated: November 6, 2026

Respectfully submitted,

*/s/ Michael J. Castiglione*
Michael J. Castiglione
Nigel P. Halliday (*pro hac vice to be filed*)
**SEEGER WEISS LLP**
55 Challenger Road, Sixth Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
Facsimile: (973) 639-8656
*mcastiglione@seegerweiss.com*
*nhalliday@seegerweiss.com*

Benjamin S. Schenk (*pro hac vice to be filed*)
**THE SCHENK LAW FIRM, LLP**
3180 University Ave, Suite 260
San Diego, California 92104
Telephone: (858) 424-4444
Facsimile: (858) 206- 9008
*ben@schenklawfirm.com*

***Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2026, I electronically filed the foregoing Memorandum of Law with the Clerk of Court for the United States District Court for the Southern District of New York using the CM/ECF system.

*/s/ Michael J. Castiglione*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to the Rule 2(B) of the Court's Individual Rules and Practices in Civil Cases, I hereby certify that the foregoing Memorandum of Law contains 8,702 words, including material contained in footnotes, but excluding the caption, table of contents, table of authorities, signature blocks, and appended certificates.

Dated: November 6, 2026 *<u>/s/ Michael J. Castiglione</u>*

**CERTIFICATION PURSUANT TO INDIVIDUAL RULE 2.E (USE OF AI TOOLS)**

The undersigned certify that, with respect to this filing, an artificial intelligence ("AI") tool was used to assist in preparing the filing. The undersigned further certify that each undersigned attorney personally reviewed the filing for accuracy. To verify the accuracy of all legal and factual assertions generated by the AI tool that were utilized in the preparation of this filing, the undersigned independently verified the accuracy of every citation to the law and/or the record by directly reviewing the source material being relied upon to ensure the accuracy of the legal or factual citation prior to including such information in the filing.

The undersigned further understand that we remain individually responsible for verifying the accuracy of any output produced by an AI tool, and that failure to comply with the Court's Rules may result in the filing being stricken and/or the imposition of sanctions.

*/s/ Michael J. Castiglione*
Michael J. Castiglione
**SEEGER WEISS LLP**

*/s/ Nigel P. Halliday*
Nigel P. Halliday (*pro hac vice to be filed*)
**SEEGER WEISS LLP**

*/s/ Benjamin S. Schenk*
Benjamin S. Schenk (*pro hac vice to be filed*)
**THE SCHENK LAW FIRM, LLP**