**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOHN DOE,

Plaintiff,

-against-

MEDIUM RARE N.V. d/b/a STAKE.COM, SWEEPSTEAKS LTD. d/b/a STAKE.US, EASYGO GROUP HOLDINGS PTY LTD., EASYGO ENTERTAINMENT PTY LTD., MEDIUM RARE LTD., SLICEMEDIA B.V., BIJAN TEHRANI, EDWARD CRAVEN, CHRISTOPHER FREEMAN, COINBASE, INC.; and COINBASE GLOBAL, INC.

Defendants.

Case No: 26-cv-05975

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE COINBASE DEFENDANTS' MOTION TO COMPEL ARBITRATION AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION TO REMAND

November 6, 2026

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ....................................................................................2

ARGUMENT ....................................................................................3

I. The Claims Against Coinbase Must Be Remanded for Lack of Subject Matter Jurisdiction and, Alternatively, Should be Remanded Under 28 U.S.C. § 1367(c).3

II. If the Court Reaches Coinbase's Motion, It Should Deny It ...............................6

A. The Court Decides Which Coinbase Agreement Governs and Whether a Contract Was Formed. ....................................................................6

B. Plaintiff Did Not Assent to the 2025 Agreement. .......................................6

C. The 2025 Agreement Does Not Reach Claims That Accrued Years Earlier ....................................................................................9

D. The 2022 and 2023 Agreements Were Disaffirmed, and the Court Decides That Question. ....................................................................9

1. The Court Decides Whether Plaintiff Disaffirmed. .......................10

*2.* The Disaffirmance Is Effective. ....................................................12

a. Coinbase Has Not Shown Ratification on the First Account. ......12

b. Coinbase Has Not Shown Ratification on the Second Account. .12

CONCLUSION ....................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Blockbuster, Inc. v. Galeno*,
472 F.3d 53 (2d Cir. 2006) ........ 4

*Brooks v. WarnerMedia Direct, LLC*,
No. 23 Civ. 11030 (KPF), 2024 WL 3330305 (S.D.N.Y. July 8, 2024) ........ 9

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) ........ 11

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988) ........ 5

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024) ........ 6, 9, 11

*Conn. Bar Ass'n v. United States*,
620 F.3d 81 (2d Cir. 2010) ........ 4

*Coughenour v. Del Taco, LLC*,
57 Cal. App. 5th 740 (2020) ........ 10, 12, 13

*Doctor's Associates., Inc. v. Alemayehu*,
934 F.3d 245 (2d Cir. 2019) ........ 6, 9

*ESAB Group, Inc. v. Zurich Ins. PLC*,
685 F.3d 376 (4th Cir. 2012) ........ 5

*Garcia v. Cent. Coast Restaurants, Inc.*,
No. 18-CV-02370-RS, 2019 WL 4601538 (N.D. Cal. Sept. 23, 2019) ........ 12, 14

*Gingras v. Think Fin., Inc.*,
922 F.3d 112 (2d Cir. 2019) ........ 10

*Green v. Green*,
69 N.Y. 553 (1877) ........ 13

*Hall Street Associates, L.L.C. v. Mattel, Inc.*,
552 U.S. 576 (2008) ........ 4

*Heabeart v. Coinbase, Inc.*,
832 F. Supp.3d 399 (S.D.N.Y. 2026) ........ 8

*Holzer v. Mondadori*,
No. 12-cv-5234, 2013 WL 1104269 (S.D.N.Y. Mar. 14, 2013) ........ 4

*Hurley v. Southern Cal. Edison Co.*,
183 F.2d 125 (9th Cir. 1950) ........ 12, 14

*In re StockX Customer Data Sec. Breach Litig.*,
19 F.4th 873 (6th Cir. 2021) ........ 11, 12

*Int'l Text-Book Co. v. Connelly*,
206 N.Y. 188 (1912) ........ 12, 13

*Irvine v. Irvine*,
76 U.S. (9 Wall.) 617 (1869) ........ 13

*K.F.C. v. Snap Inc.*,
29 F.4th 835 (7th Cir. 2022) ........ 11

*Kamath v. Coinbase, Inc.*,
No. 23-cv-03533-CRB, 2024 WL 950163 (N.D. Cal. Mar. 5, 2024) ........ 8

*Kolari v. N.Y.-Presbyterian Hosp.*,
455 F.3d 118 (2d Cir. 2006) ........ 5

*Kozma v. Hunter Scott Fin., LLC*,
No. 09-80502-Civ, 2010 WL 724498 (S.D. Fla. Feb. 25, 2010) ........ 5

*Melendez v. Ethical Culture Fieldston Sch.*,
789 F. Supp. 3d 316 (S.D.N.Y. 2025) ........ 10, 11

*Mercado v. Roblox Corp.*,
No. 25-5925, 2026 WL 2910175 (E.D. Pa. Sept. 25, 2026) ........ 11

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ........ 8

*Molecular Dynamics, Ltd. v. Spectrum Dynamics Med. Ltd.*,
143 F.4th 70 (2d. Cir. 2025) ........ 4

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) ........ 6

*Primerica Life Ins. Co. v. Brown*,
304 F.3d 469 (5th Cir. 2002) .......... 11

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010) .......... 10, 11

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012) .......... 7

*Spahr v. Secco*,
330 F.3d 1266 (10th Cir. 2003) .......... 11

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002) .......... 9

*Sternlieb v. Normandie Nat'l Sec. Corp.*,
263 N.Y. 245 (1934) .......... 10

*Sudakow v. CleanChoice Energy, Inc.*,
153 F.4th 280 (2d Cir. 2025) .......... 7

*Warner Bros. Pictures, Inc. v. Brodel*,
31 Cal. 2d 766 (1948) .......... 14

*Webster v. Fall*,
266 U.S. 507 (1925) .......... 8

*Williams v. Moon Active Ltd.*,
811 F. Supp. 3d 1079 (N.D. Cal. 2025) .......... 11

*Zachman v. Hudson Valley Fed. Credit Union*,
49 F.4th 95 (2d Cir. 2022) .......... 6, 13

*Ziboukh v. Whaleco, Inc.*,
795 F. Supp. 3d 349 (E.D.N.Y. 2025) .......... 11

Statutes

28 U.S.C. § 1367 .......... 3, 4

28 U.S.C. § 1367(a) .......... 4

28 U.S.C. § 1367(c) .......... 3, 5

28 U.S.C. § 1367(c)(4) .......... 5, 6

28 U.S.C. § 1447(c) .......... 4

9 U.S.C. § 203 .......... 3, 5

9 U.S.C. § 205 .......... 3

9 U.S.C. §§ 1–16 .......... 3

Cal. Civ. Code § 1688 .......... 14

Cal. Fam. Code § 6710 .......... 10

Plaintiff John Doe ("Plaintiff") respectfully submits this memorandum of law and the accompanying declaration of Plaintiff John Doe dated November 6, 2026 ("Doe Decl.") in opposition to Coinbase, Inc. and Coinbase Global, Inc.'s (the "Coinbase Defendants" or "Coinbase") motion to compel arbitration and stay litigation (*see* ECF Nos. 42, 43) and in support of Plaintiff's cross-motion to remand.

## PRELIMINARY STATEMENT

There is no independent federal subject matter jurisdiction for the Court to hear Coinbase's motion. This motion is before this Court exclusively because Coinbase has piggybacked jurisdictionally on the Stake Defendants'[1] New York Convention removal. Indeed, Coinbase does not dispute that its jurisdictional basis to be in this Court is entirely derivative of the Stake Defendants. As such, the Court has no jurisdiction to reach Coinbase's motion should it find that the Stake Defendants' arbitration clause does not "fall under" the Convention. As detailed in Plaintiff's memorandum in opposition to the Stake Defendants' motion and in support of the cross-motion to remand, that is the case here, and the entire case must be remanded.

Even if the Court reaches Coinbase's motion (which it can only do after choosing to exercise supplemental jurisdiction), it should be denied. Coinbase offers a series of overlapping arguments seeking to enforce up to three separate arbitration clauses from 2022, 2023 and 2025. But Coinbase's records show that every agreement it invokes rests on either a minor's click (the 2022 and 2023 clauses) or on no click at all (the 2025 clause).

Coinbase's central argument is that a 2025 agreement (which contains no delegation clause and assigns questions of arbitrability to the court) controls and supersedes all prior agreements. But there was no formal acceptance of these terms by Plaintiff. All Coinbase did was send a passive email to Plaintiff. Coinbase bootstraps this email to a provision in the prior 2023 agreement that Plaintiff signed when he was a minor that provides for acceptance via "continued use of the

---

[1] The Stake Defendants in this case are Medium Rare N.V. d/b/a Stake.com, Sweepstakes Ltd. d/b/a Stake.us, EasyGo Group Holdings Pty Ltd, EasyGo Entertainment Pty Ltd., Medium Rare Ltd., Slicemedia B.V., Bijan Tehrani, and Edward Craven.

Services." But Coinbase does not cite any use of services but only cites bare logins by Plaintiff without any actual use. Silence and inaction are not acceptance, and logins are not continued "use" of Coinbase services. Even if they were, the 2023 agreement was disaffirmed and cannot backstop Coinbase's attempt to generate acceptance by Plaintiff where none exists.

Moreover, the 2025 agreement says, in its own words, it "will not apply retroactively" such that it cannot reach the prior conduct at issue in this case. Indeed, Coinbase, in the prior agreements from 2022 and 2023, expressly extended arbitration to disputes that "arose . . . before the effective date", but decided in 2025 to delete that language, making clear that the 2025 agreement would not reach back to prior conduct. Even if the 2025 agreement applies, it does not cover past conduct by its own terms.

Lastly, the 2022 and 2023 agreements cannot rescue Coinbase's motion as fallbacks. Plaintiff accepted them as a minor, disaffirmed them by filing this action, and never ratified them after turning eighteen. And, as detailed below, the Court, not an arbitrator, decides each of these questions.

## STATEMENT OF FACTS

Coinbase, Inc. runs the Coinbase exchange; its parent, Coinbase Global, Inc., is based in New York. Compl. ¶¶ 68–70; ECF No. 44 ¶ 5. Plaintiff turned eighteen on April 26, 2023. ECF No. 44 ¶ 19. In November 2016, at eleven, he opened his first account, in his father's name (the "First Account"). *Id.* ¶¶ 10, 12. On February 13, 2022, at sixteen, he clicked "Accept terms" on an updated user agreement (the "2022 agreement"). That July, at seventeen, he asked Coinbase to close the account, and it did. ECF No. 44 ¶¶ 13–17.

At 11:56 p.m. on April 25, 2023, four minutes before his eighteenth birthday, he checked the box for the user agreement then in effect (the "2023 agreement") while opening a second account in his own name (the "Second Account"). *Id.* ¶ 18; ECF No. 43 at 5. Coinbase states that Plaintiff opened that account "on his 18th birthday." ECF No. 43 at 1. Its records place the click the night before when Plaintiff was still seventeen. The 2022 and 2023 agreements bar anyone under eighteen. ECF No. 44-3 § 1.1; ECF No. 44-8 § 1.1.

On April 8, 2025, Coinbase emailed Plaintiff that a new user agreement (the "2025 agreement") would take effect on May 15, 2025. ECF No. 44 ¶¶ 21–23. Its declarant describes no landing page, checkbox, or click for that agreement. *See id.* ¶¶ 21–25. Coinbase lists eight logins to the Second Account between October 11, 2025, and April 22, 2026, the last two after Plaintiff filed this action. *Id.* ¶ 25. Coinbase records every purchase, sale, and transfer, *id.* ¶ 24, yet it identifies none after the 2025 agreement took effect. *Id.* ¶ 25. The 2025 agreement has no delegation clause. It rather sends "Disputes about the enforceability, revocability, scope, or validity" of its dispute-resolution terms to "a court of competent jurisdiction, not arbitration." ECF No. 44-10 at 35.

Plaintiff sued on April 10, 2026. He alleges that, as a child, he used Coinbase to buy the cryptocurrency he wagered at Stake.com, an offshore casino. Compl. ¶¶ 335–36, 352, 371. The Complaint disaffirms every agreement he made as a minor, delegation clauses included and seeks damages only for injuries he suffered before he turned eighteen. *Id.* ¶¶ 112, 351, 396–99. He did not know that any Coinbase user agreement contained an arbitration provision, and had never read one, until shortly before he filed suit. *See* Doe Decl. ¶¶ 2–3.

The Stake Defendants removed this action under 9 U.S.C. § 205 on one ground: that the arbitration clause in the Stake.us terms and conditions (the "Stake.us Terms") falls under the New York Convention (the "Convention") and so gives this Court original jurisdiction under 9 U.S.C. § 203. ECF No. 1 ¶¶ 27–42. Coinbase consented to removal, *id.* at 1 n.1 and now moves to compel arbitration based on its separate domestic arbitration clauses, relying on 28 U.S.C. § 1367 for jurisdiction over the claims against it. ECF No. 43 at 9–10.

## ARGUMENT

### I. The Claims Against Coinbase Must Be Remanded for Lack of Subject Matter Jurisdiction and, Alternatively, Should be Remanded Under 28 U.S.C. § 1367(c)

This case involves no federal claims nor is there diversity among the parties. Coinbase does not contend that any Coinbase agreement falls under the Convention; it moves instead under Chapter 1 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, alone. ECF No. 43 at 10–11,

21. The FAA, however, "bestow[s] no federal jurisdiction but rather requir[es] an independent jurisdictional basis." *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581–82 (2008).

As such, Plaintiff's state-law claims against Coinbase can be heard only if they are "so related" to claims "within such original jurisdiction" that they form part of the same case. 28 U.S.C. § 1367(a). If the Stake Defendants' arbitration clause does not fall under the Convention, no claim is within the Court's original jurisdiction, and the whole action, Coinbase's motion included, returns to state court. 28 U.S.C. § 1447(c); *see Holzer v. Mondadori*, No. 12-cv-5234, 2013 WL 1104269, at *15 (S.D.N.Y. Mar. 14, 2013) (after considering the merits, holding claims "do not belong in federal court under sections 203 and 205 of the Convention" and remanding to state court); *Molecular Dynamics, Ltd. v. Spectrum Dynamics Med. Ltd.,* 143 F.4th 70, 87–89 (2d. Cir. 2025) (if an "action does not comport with the 'provisions and spirit' of the Convention," a federal district court lacks subject matter jurisdiction to continue to retain the case) (emphasis original, citation omitted).

Accordingly, the Court cannot reach Coinbase's motion due to lack of subject matter jurisdiction in the event it determines as a threshold matter that there is no valid and enforceable arbitration agreement that falls under the New York Convention. For the reasons stated in the accompanying opposition to the Stake Defendants' motion to compel arbitration, no valid and enforceable arbitration agreement exists in this case that "falls under" the Convention, and therefore the Court has no jurisdictional basis to even reach Coinbase's motion before remanding the case.

Even if there was a Convention-compliant arbitration clause at issue in the Stake Defendants' motion, Coinbase still bears the burden of showing a basis for the Court to exercise supplemental jurisdiction. *See Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006). It offers none. It points to one footnote in the Stake Defendants' notice of removal, which simply cites § 1367 and it saves its argument for a later brief. ECF No. 43 at 10 (citing ECF No. 1 ¶ 42 n.8). An argument held for reply comes too late. *See Conn. Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010).

Regardless, in the event the Court were to grant the Stake Defendants' motion, "exceptional circumstances" present "compelling reasons for declining jurisdiction" as a discretionary matter with respect to Coinbase. 28 U.S.C. § 1367(c)(4). Coinbase invokes this Court's jurisdiction only to ask the Court to send the claims against it to a separate arbitration, which serves none of the judicial economy that supplemental jurisdiction exists to promote.[2] A court may decline supplemental jurisdiction when retaining it would serve none of the interests of "judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122–23 (2d Cir. 2006). Keeping Coinbase's claims here in the event that the Stake Defendants are sent to a separate arbitration would serve none of these interests: no discovery has happened, the Court has decided nothing to date, Coinbase has no independent right to a federal forum, and it loses nothing by renewing its motion in state court.

Indeed, courts have recognized that, per § 1367(c), once the claims supporting original jurisdiction are sent to arbitration, a district court may decline supplemental jurisdiction over the remaining state-law claims, including under the Convention and where the arbitrable claims are stayed rather than dismissed. *See ESAB Group, Inc. v. Zurich Ins. PLC,* 685 F.3d 376, 394 (4th Cir. 2012) ("we read § 203 to authorize federal jurisdiction over all claims within an action, but, as to those claims not falling under the Convention, this jurisdiction is supplemental in nature. And when those claims falling within a court's original jurisdiction are no longer in the case—here, because they have been referred to arbitration—the court has authority under § 1367(c) to decline to exercise such supplemental jurisdiction and inherent authority to remand the remaining claims to state court"); *Kozma v. Hunter Scott Fin., LLC*, No. 09-80502-Civ, 2010 WL 724498, at *4 (S.D. Fla. Feb. 25, 2010) ("Even if the Court had stayed the [federal] claim, it still would have

[2] The Stake Defendants and Coinbase rely on different contracts with different companies, and each demands its own arbitration. Neither contract lets the arbitrations be combined. Coinbase's 2023 agreement says its arbitration "will not be consolidated with any other matters or joined with any other cases or parties, except as expressly provided in the subsection entitled 'Batch Arbitration.'" ECF No. 44-8, App. 5 § 1.6. The Stake.us Terms likewise provide that neither Stake nor the user may "consolidate, join, participate, represent or coordinate Disputes . . . with or involving other individuals or entities." ECF No. 7-2 § 26.8(a) (capitalization altered).

dismissed the [state law] claim pursuant to 28 U.S.C. § 1367(c)(4) because the merits of the federal claim will be adjudicated in arbitration and there is no reason to maintain jurisdiction to adjudicate a related claim based solely on state law over which this Court would not otherwise have subject matter jurisdiction.").

## II. If the Court Reaches Coinbase's Motion, It Should Deny It

### A. The Court Decides Which Coinbase Agreement Governs and Whether a Contract Was Formed.

As an initial matter, if the Court reaches Coinbase's motion, the first question is which agreement governs. Coinbase leads with a User Agreement that took effect on May 15, 2025, more than two years after Plaintiff turned eighteen. ECF No. 43 at 12–17. Whether that 2025 agreement displaced the earlier ones is for the Court: "a court, not an arbitrator, must decide whether the parties' first agreement was superseded by their second." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 152 (2024). Even more generally, whether an agreement was formed at all cannot be delegated. *Doctor's Associates., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019).

Consistent with the applicable law, the 2023 agreement provides: "all Disputes about which version of the Arbitration Agreement applies shall be decided only by a court of competent jurisdiction and not by an arbitrator." ECF No. 44-8, App. 5 § 1.6(4), *see* ECF No. 43 at 8. Further, Coinbase's own 2025 agreement has no delegation clause. It sends "Disputes about the enforceability, revocability, scope, or validity" of its dispute-resolution terms to "a court of competent jurisdiction, not arbitration." ECF No. 44-10 at 35. As such, if the 2025 agreement governs, the Court decides enforceability, revocability, scope, and validity.

### B. Plaintiff Did Not Assent to the 2025 Agreement.

Coinbase must prove that an agreement to arbitrate was made, under a standard similar to summary judgment, with inferences drawn in Plaintiff's favor. *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101-02 (2d Cir. 2022); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). It cannot do so.

Plaintiff clicked, signed, and checked nothing in 2025. Coinbase relies only on a sent email

announcing the new terms coupled with purported "continued use" under the 2023 amendment clause: "Your continued use of the Services after the posting of a Revised Agreement constitutes your acceptance of such Revised Agreement." ECF No. 44-8 at 2.

Coinbase's proof of "continued use" is eight logins. ECF No. 44 ¶ 25. Coinbase records every purchase, sale, and transfer in an "Account Transaction History," *id.* ¶ 24, yet identifies no transaction after May 15, 2025. Its brief says Plaintiff "continued to use the Coinbase platform," ECF No. 43 at 13–14 (citing ECF No. 44 at ¶¶ 24–25), but the paragraphs it cites show only logins. The last two came after Plaintiff filed this action disaffirming Coinbase's agreements. ECF No. 44 ¶ 25; Compl. ¶¶ 392–402.

A login is not assent. Under New York law, an offeree is bound by later-delivered terms only through "conduct that a reasonable person would understand to constitute assent." *Sudakow v. CleanChoice Energy, Inc.*, 153 F.4th 280, 285 (2d Cir. 2025). Even continued payments on an existing account are "too passive" to manifest assent to emailed arbitration terms. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 128 (2d Cir. 2012). A login that buys, sells, and sends nothing is more passive still. Coinbase's terms direct users to "regularly check" the wallets "accessible through the Coinbase Site" and your "transaction history." ECF No. 44-10 at 8 (§ 3.6). A user who logs in to do that follows Coinbase's instructions and does not accept new terms.

The 2025 agreement in fact has the same amendment clause that exists in the prior versions. ECF No. 44-10 at 3. It again requires use. But the 2025 agreement elsewhere treats access and use as different things: it has a provision that licenses a right "to access and use the Coinbase Services", making a clear distinguish between the two. *Id.* at 10 (§ 6.1). Coinbase's declarant describes, in a conclusory way, the eight logins as "continued to access the Second Account." ECF No. 44 ¶ 25. But, again, access is not use. Even if the clause binds Plaintiff, Coinbase has not shown that he used the services after May 15, 2025.

Indeed, in 2022, Coinbase did not treat a login as acceptance. It told users, "they would be asked to accept the updated terms and conditions when logging into their Coinbase account," and then stopped each login at a separate landing page where users "could not continue using their

Coinbase accounts until they accepted the terms" by clicking "Accept terms." ECF No. 44 ¶¶ 13–14. Coinbase's own declarant treats the click, not the login, as proof of agreement: Plaintiff "clicked the 'Accept terms' button, confirming that he agreed to the 2022 User Agreement." *Id.* ¶ 16. For 2025, the declaration describes no landing page and no button, only a "form email" that was "delivered," *id.* ¶¶ 22–23, and eight logins, *id.* ¶ 25. That is less than Coinbase itself demanded in 2022, and the only clicks Coinbase can point to came while Plaintiff was a minor – at sixteen in 2022, and four minutes before his eighteenth birthday in 2023. ECF No. 44 ¶¶ 16, 18.

No decision Coinbase cites applies or binds this Court. *Kamath* held that email plus continued use sufficed, but the plaintiff there had also been routed to a landing page after logging in and "accepted the updated UA on February 28, 2022" by clicking "Accept terms." *Kamath v. Coinbase, Inc.*, No. 23-cv-03533-CRB, 2024 WL 950163, at *2, *4-5 (N.D. Cal. Mar. 5, 2024). Coinbase quotes the sentence about "the email and … continued use" and omits the click. ECF No. 43 at 14. In *Heabeart*, assent was not contested: the court noted that "[n]o party disputes" the clause's scope, found that "[e]ach of the plaintiffs did, in fact, agree to the operative User Agreement," and observed that the plaintiffs themselves pleaded the same agreement was "valid [and] enforceable." *Heabeart v. Coinbase, Inc.*, 832 F. Supp.3d 399, 409 (S.D.N.Y. 2026). The court did not discuss continued use, a notice email, or the 2025 effective date, and the words Coinbase adds to its quotation are not the court's. ECF No. 43 at 14.[3] "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925).

To bind a user to online terms, the Second Circuit requires both "[r]easonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74–75 (2d Cir. 2017) (applying California law, which is

[3] Coinbase also cites *Heabeart* for two propositions the opinion does not address: that the 2025 agreement governs claims arising from 2022 events, ECF No. 43 at 16, and that Coinbase Global may compel arbitration, *id.* at 1 n.1. The court said only that "the operative User Agreement" governed and that the three defendants "may be treated for purposes of the instant motions as one." *Heabeart*, 832 F. Supp.3d at 406-07.

"substantially similar" to New York's, and quoting *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 35 (2d Cir. 2002)). An S.D.N.Y. decision in a case with similar facts holds that "[l]ogging in alone does not amount to" assent. *Brooks v. WarnerMedia Direct, LLC*, No. 23 Civ. 11030 (KPF), 2024 WL 3330305, at *14 (S.D.N.Y. July 8, 2024) (applying California law).

The 2025 agreement fails for a second reason. Coinbase's only basis for Plaintiff's assent is the 2023 amendment clause, which Plaintiff accepted as a minor and has disaffirmed. *See* Part II.D. Whether the 2025 agreement exists depends on whether the 2023 agreement survives. This is both a contract formation question, and a question of which agreement controls, which are both for the Court. *Suski*, 602 U.S. at 152; *Doctor's Assocs*, 934 F.3d at 251. And, again, the 2025 agreement has no delegation clause in any event.

### C. The 2025 Agreement Does Not Reach Claims That Accrued Years Earlier.

Even assuming Plaintiff agreed to the 2025 terms, they do not cover conduct that occurred years earlier. Coinbase wrote retroactivity out of the 2025 agreement and now asks the Court to read it back in. The 2022 and 2023 agreements reached "claims and disputes that arose between us before the effective date of these Terms" and "disputes that arose or involve facts occurring before the existence of this or any prior versions of the User Agreement." ECF No. 44-8 at 35; ECF No. 44-3 at 31. The 2025 agreement has neither. ECF No. 44-10 at 35. And its amendment clause, like those of the 2022 and 2023 agreements, says a Revised Agreement "will not apply retroactively." ECF No. 44-10 at 3; ECF No. 44-8 at 2; ECF No. 44-3 at 2.

Coinbase answers the dropped language only by arguing that no express temporal limit is needed. ECF No. 43 at 16. It never addresses the amendment clause's "will not apply retroactively" sentence. It quotes the clause on both sides of that sentence and skips it. *Id.* at 5–6. Plaintiff's claims arise from Coinbase's conduct while he was a minor. Compl. ¶¶ 351, 397. He turned eighteen on April 26, 2023. ECF No. 44 ¶ 19. Applying the 2025 agreement to those claims would apply it retroactively, which Coinbase's own clause says it does not do.

### D. The 2022 and 2023 Agreements Were Disaffirmed, and the Court Decides That Question.

Coinbase cannot use the 2023 agreement as the bootstrap for its 2025 agreement argument.

Nor can it use the 2023 and 2022 agreement as fallback agreements. Coinbase's records show that Plaintiff was a minor when he accepted each earlier agreement: the 2022 agreement at sixteen, and the 2023 agreement at 11:56 p.m. on April 25, 2023, "four minutes shy of his birthday." ECF No. 43 at 5; ECF No. 44 ¶¶ 16, 18–19. A minor's contract is "voidable at his election." *Sternlieb v. Normandie Nat'l Sec. Corp.*, 263 N.Y. 245, 247–48 (1934); Cal. Fam. Code § 6710. Plaintiff disaffirmed every such agreement by filing this action, Compl. ¶¶ 112, 396, and "specifically disaffirm[ed] any delegation clause separate and apart from any other contractual terms." *Id.* ¶ 398. Filing suit is disaffirmance. *Melendez v. Ethical Culture Fieldston Sch.*, 789 F. Supp. 3d 316, 332 (S.D.N.Y. 2025); *Coughenour v. Del Taco, LLC*, 57 Cal. App. 5th 740, 748 (2020).[4]

**1. The Court Decides Whether Plaintiff Disaffirmed.**

As noted above, the Court must, in determining whether the 2025 agreement controls, reach the disaffirmance question because that agreement's formation is bootstrapped to the 2023 agreement, and the 2025 agreement contains no delegation clause. That said, even analyzing the delegation question apart from that issue, the Court, not an arbitrator, decides whether Plaintiff's disaffirmance defeats the delegation clauses in the 2022 and 2023 Agreements.

First, Plaintiff specifically challenged the delegation clause. Under *Rent-A-Center*, a court decides any challenge directed specifically at a delegation provision. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010). Plaintiff disaffirmed the agreements as a whole, Compl. ¶ 396, and separately disaffirmed the delegation clause, alleging that no agreement to delegate was ever formed, *id.* ¶¶ 398–99. That is enough in this Circuit. In *Gingras*, the plaintiffs alleged that the delegation provision was "also fraudulent," and the Second Circuit held that this "specific attack" made arbitrability a question for the court. *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 (2d Cir. 2019). Plaintiff alleges incapacity rather than fraud, but the principle is the same: the challenge targets the delegation provision itself. It does not matter that the same ground also applies to the rest of the contract. "[W]here a challenge applies 'equally' to the whole contract and to an

[4] The result is the same under New York and California law, so the Court need not decide which governs. ECF No. 43 at 12–13, 19–20.

arbitration or delegation provision, a court must address that challenge." *Coinbase, Inc. v. Suski,* 602 U.S. 143, 151 (2024).[5]

Second, infancy goes to capacity to form any agreement, which is always a question for the court. *Rent-A-Center's* specific-challenge rule governs challenges to an agreement's validity, not whether an agreement "was ever concluded." 561 U.S. at 70 n.2. A delegation clause is itself "an additional, antecedent agreement," *id.* at 70, and a minor has the power to avoid any agreement he made, including that one. *Melendez v. Ethical Culture Fieldston Sch.*, 789 F. Supp. 3d 316, 328 n.4, 329 n.5 (S.D.N.Y. 2025). The Supreme Court has expressly left open whether a court or an arbitrator decides a challenge to capacity. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006) (citing *Spahr v. Secco*, 330 F.3d 1266 (10th Cir. 2003)). The Tenth Circuit in *Spahr* held that capacity challenges are for the court. *Id.* 330 F.3d at 1272–73.

Courts are divided on this question. The Sixth and Seventh Circuits treat infancy as a defense to enforcement and send it to the arbitrator. *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 883–86 (6th Cir. 2021); *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837–38 (7th Cir. 2022); *see also Williams*, 811 F. Supp. 3d at 1084–86; *Ziboukh v. Whaleco, Inc.*, 795 F. Supp. 3d 349 (E.D.N.Y. 2025). None of those decisions bind this Court, and the Second Circuit has not addressed the question.

The only decision in this District, *Melendez*, considered *StockX* and *K.F.C.* and declined to follow them, largely for the reasons in Judge Moore's *StockX* dissent. 789 F. Supp. 3d at 328 n.4; *see StockX*, 19 F.4th at 887–89 (Moore, J., dissenting). That dissent is persuasive. The *StockX* majority acknowledged that "no other federal appellate court has addressed an infancy defense in the arbitration setting," and it relied instead on a mental-incapacity decision, *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 472 (5th Cir. 2002). *See StockX*, 19 F.4th at 886 n.7. As Judge Moore explained, *Primerica* conflicts with *Spahr*, and the Sixth Circuit itself has treated capacity as a

[5] A recent decision applying *Suski* reached exactly this result for a minor who separately disaffirmed a delegation clause. *Mercado v. Roblox Corp.,* No. 25-5925, 2026 WL 2910175, at *11, *14–15 (E.D. Pa. Sept. 25, 2026). By contrast, the minor in *Williams* disaffirmed "all contracts . . . in their entirety" and did not separately target the delegation clause. *Williams v. Moon Active Ltd.,* 811 F. Supp. 3d 1079, 1084–86 (N.D. Cal. 2025).

formation question in unpublished decisions. *Id.* at 887–89 (Moore, J., dissenting).

Either way, the question of whether Plaintiff, who accepted these agreements as a minor and disaffirmed them by filing suit, is bound by the agreement to delegate is one for this Court.

**2. The Disaffirmance Is Effective.**

**a. Coinbase Has Not Shown Ratification on the First Account.**

Plaintiff opened the First Account as a child, in his father's name; accepted the 2022 agreement at sixteen; and closed the account at seventeen. ECF No. 44 ¶¶ 12, 16–17. Coinbase identifies no conduct on that account after Plaintiff turned eighteen, so nothing ratified the agreements that governed it. Coinbase's only answer is delay. ECF No. 43 at 21. But any delay cannot ratify a relationship that already ended during the period when Plaintiff was still a minor.

Moreover, a "reasonable time" is a question of fact with no fixed limit. *Coughenour*, 57 Cal. App. 5th at 747, 750. And it is to be evaluated on a case-by-case basis. *See Hurley v. Southern Cal. Edison Co*., 183 F.2d 125, 132 (9th Cir. 1950). In all cases, "the time to be evaluated for its reasonableness is the time between when the individual 'discover[s]' the nature and significance of the contract and when the individual disaffirms it, *not* the time between signing and disaffirming". *Garcia v. Cent. Coast Restaurants, Inc*., No. 18-CV-02370-RS, 2019 WL 4601538, at *3 (N.D. Cal. Sept. 23, 2019) (emphasis in original); *Hurley*, *183 F.2d* at 132 (holding that a minor who disaffirmed a contract fifteen years after it was signed, but only two days after discovering its nature, had successfully voided the contract). And here, Plaintiff never read or knowingly reaffirmed any Coinbase contract or arbitration agreement after turning eighteen, such that there was no delay at all prior to disaffirmance, much less an unreasonable delay. *See* Compl. ¶¶ 341–42, 349; Doe Decl. ¶¶ 2–3. He learned that the agreements contained an arbitration provision only shortly before he filed this action, and filing it disaffirmed them. *Id.* ¶ 2. Ratification is Coinbase's burden. *Int'l Text-Book Co. v. Connelly*, 206 N.Y. 188, 200 (1912). Coinbase has simply not met its burden to prove ratification.

**b. Coinbase Has Not Shown Ratification on the Second Account.**

Coinbase's argues ratification on the Second Account because Plaintiff "continued to use

and maintain the account" and that his disaffirmance was untimely. ECF No. 43 at 20. But, again, Coinbase cannot meet its burden to show ratification.

Mere acquiescence is not enough. Ratification requires "an act of confirmation" of "such a clear and unequivocal character, as to establish a clear intention to confirm the deed after a full knowledge that it was voidable." *Id.* at 197 (quoting *Irvine v. Irvine*, 76 U.S. (9 Wall.) 617, 627 (1869)); *see id.* (three years of acquiescence after majority "without any affirmative act was not a ratification") (quoting *Green v. Green*, 69 N.Y. 553, 557 (1877)). In California, the law requires action taken "with full knowledge of the party's rights." *Coughenour*, 57 Cal. App. 5th at 749 (quotation omitted).

Coinbase offers no evidence that Plaintiff knew he could disaffirm. He did not even know that the 2023 agreement contained an arbitration provision until shortly before he filed suit. Doe Decl. ¶¶ 2–3. Coinbase's only evidence of assent to the 2023 agreement is a checkbox clicked at 11:56 p.m. on April 25, 2023, four minutes before Plaintiff turned eighteen. ECF No. 43 at 5; ECF No. 44 ¶¶ 18–20. Even if a checkbox beside a hyperlinked sentence would bind an adult, this one was clicked by a minor, and Plaintiff disaffirmed it. Nor can that click constitute ratification. Ratification is an act after majority that confirms the contract, and the click came four minutes before Plaintiff turned eighteen. After he turned eighteen, Coinbase's declaration describes the next day's identity verification, ECF No. 44 ¶ 19; a 2025 "form email" that was "delivered," *id.* ¶¶ 22–23; and undated "transactions" and logins, *id.* ¶ 25. None is an act confirming the agreement with knowledge that it was voidable.[6]

The six logins before Plaintiff filed suit, between October 11, 2025, and January 4, 2026, did not ratify anything. A login is at most acquiescence, not "an act of confirmation," *Int'l Text-Book Co.*, 206 N.Y. at 197, and Coinbase's declarant says only that Plaintiff "continued to access" the account on those dates. ECF No. 44 ¶ 25. The declaration does not say that he bought, sold, or

[6] Coinbase's declarant has the Account Transaction History, ECF No. 44 ¶¶ 24–25, yet gives no transaction date. A movant's initial burden is to show that an agreement to arbitrate was made, *Zachman*, 49 F.4th at 101–02, and Coinbase's theory of post-majority assent rests on post-majority use, so when that use occurred is part of that showing.

sent anything on any of them, or that he knew he could avoid the agreement. The last two logins came after Plaintiff disaffirmed by filing this action in April 2026. ECF No. 44 ¶ 25. Disaffirmance "has the effect of a rescission," *Warner Bros. Pictures, Inc. v. Brodel*, 31 Cal. 2d 766, 771 (1948), and "[a] contract is extinguished by its rescission," Cal. Civ. Code § 1688. Coinbase points to the 2023 checkbox, the next day's verification, and continued use and maintenance of the account. ECF No. 43 at 20. It asserts "use" "well after he turned 18," *id.* at 2, 12, but identifies no dated purchase, sale, or transfer, and its declarant dates nothing but logins. ECF No. 44 ¶ 25. It does not argue that the April 2026 logins ratified anything, and it offers no authority that a login after a disaffirmance revives the disaffirmed agreement.

With respect to the argument that there was an unreasonable delay after disaffirmance, for the same reasons that Coinbase cannot meet its burden on ratification for the First Account, it cannot do so on the Second Account. The "reasonable time" inquiry is case-by-case, fact-specific, and reasonableness is evaluated from when the Plaintiff discovers the significance of the contract, *See Hurley*, 183 F.2d at 132; *Garcia*, 2019 WL 4601538, at *3. Even where a minor has full knowledge of his rights, the Ninth Circuit observed that "it is not amiss to hold that the period of the statute of limitations, by analogy furnishes a guide as to what is the limit of a reasonable time." *Hurley*, 183 F.2d at 132. Plaintiff had no such knowledge, *see* Compl. ¶¶ 341–42, 349; Doe Decl. ¶¶ 2–3, and in any event disaffirmed well within any applicable limitations period, Coinbase simply cannot meet its burden on ratification given the showing it has made.

## CONCLUSION

For the foregoing reasons, Coinbase's motion should be denied, and the case should be remanded to state court.

Dated: November 6, 2026

Respectfully submitted,

*/s/ Michael J. Castiglione*
Michael J. Castiglione
Nigel P. Halliday (*pro hac vice to be filed*)
**SEEGER WEISS LLP**
55 Challenger Road, Sixth Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
Facsimile: (973) 639-8656
*MCastiglione@SeegerWeiss.com*
*nhalliday@seegerweiss.com*

Benjamin S. Schenk (*pro hac vice to be filed*)
**THE SCHENK LAW FIRM, LLP**
3180 University Ave, Suite 260
San Diego, California 92104
Telephone: (858) 424-4444
Facsimile: (858) 206-9008
*fred@schenklawfirm.com*
*ben@schenklawfirm.com*

***Counsel for Plaintiff***

# CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2026 I electronically filed the foregoing Memorandum of Law in Opposition to the Coinbase Defendants' Motion to Compel Arbitration and in Support of Plaintiff's Cross-Motion to Remand with the Clerk of Court for the United States District Court for the Southern District of New York using the CM/ECF system.

*/s/ Michael J. Castiglione*

**CERTIFICATE OF COMPLIANCE**

Pursuant to the Rule 2(B) of the Court's Individual Rules and Practices in Civil Cases, I hereby certify that the foregoing Memorandum of Law contains 5,527 words, including material contained in footnotes, but excluding the caption, table of contents, table of authorities, signature blocks, and appended certificates.

Dated: November 6, 2026 *<u>/s/ Michael J. Castiglione</u>*

**CERTIFICATION PURSUANT TO INDIVIDUAL RULE 2.E (USE OF AI TOOLS)**

The undersigned certify that, with respect to this filing, an artificial intelligence ("AI") tool was used to assist in preparing the filing. The undersigned further certify that each undersigned attorney personally reviewed the filing for accuracy. To verify the accuracy of all legal and factual assertions generated by the AI tool that were utilized in the preparation of this filing, the undersigned independently verified the accuracy of every citation to the law and/or the record by directly reviewing the source material being relied upon to ensure the accuracy of the legal or factual citation prior to including such information in the filing.

The undersigned further understand that we remain individually responsible for verifying the accuracy of any output produced by an AI tool, and that failure to comply with the Court's Rules may result in the filing being stricken and/or the imposition of sanctions.

*/s/ Michael J. Castiglione*
Michael J. Castiglione
**SEEGER WEISS LLP**

*/s/ Nigel P. Halliday*
Nigel P. Halliday (*pro hac vice to be filed*)
**SEEGER WEISS LLP**

*/s/ Benjamin S. Schenk*
Benjamin S. Schenk (*pro hac vice to be filed*)
**THE SCHENK LAW FIRM, LLP**