**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOHN DOE,

Plaintiff,

-against-

MEDIUM RARE N.V. d/b/a STAKE.COM, SWEEPSTEAKS LTD. d/b/a STAKE.US, EASYGO GROUP HOLDINGS PTY LTD., EASYGO ENTERTAINMENT PTY LTD., MEDIUM RARE LTD., SLICEMEDIA B.V., BIJAN TEHRANI, EDWARD CRAVEN, CHRISTOPHER FREEMAN, COINBASE, INC.; and COINBASE GLOBAL, INC.

Defendants.

Case No: 26-cv-05975

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CHRISOPHER FREEMAN'S MOTION TO COMPEL ARBITRATION AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION TO REMAND

November 6, 2026

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 3

STANDARD OF REVIEW .......... 6

ARGUMENT .......... 6

I. Freeman is Separated from Being Sweepsteaks Ltd.'s Agent or Affiliate by Three Veils of the Law of Business Organizations .......... 7

II. Freeman Cannot Compel Arbitration Based on His Rights as Member of the Primedice Oral Partnership. .......... 11

III. Freeman Cannot Rely on Equitable Estoppel. .......... 12

IV. The Stake.us Arbitration Agreement's Delegation Clause Does Not Relieve Freeman of His Burden to Show Plaintiff Agreed to Arbitrate Claims Against Freeman. .......... 14

CONCLUSION .......... 17

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Am. Fuel Corp. v. Utah Energy Dev. Co.*,
122 F.3d 130 (2d Cir. 1997) .......... 2, 10

*Bano v. Union Carbide Corp.*,
273 F.3d 120 (2d Cir. 2001) .......... 10

*Barrios-Contreras v. Big Fish Ent. LLC*,
No. 25-CV-3203 (JGLC)(SN), 2026 WL 621576 (S.D.N.Y. Mar. 5, 2026) .......... 13

*Barrows v. Brinker Rest. Corp.*,
36 F.4th 45 (2d Cir. 2022) .......... 1

*Buchner v. Pines Hotel, Inc.*,
87 A.D.2d 691 (3d Dep't 1982) .......... 8

*Burnet v. Clark*,
287 U.S. 410 (1932) .......... 7

*Cap Gemini Ernst & Young, U.S., LLC v. Nackel*,
346 F.3d 360 (2d Cir. 2003) .......... 17

*CBF Industria De Gusa S/A v. AMCI Holdings, Inc.*,
650 F. Supp. 3d 228 (S.D.N.Y. 2023) .......... 7

*Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*,
714 F. Supp. 3d 416 (S.D.N.Y. 2024) .......... 7

*City of New York v. Evanston Ins. Co.*,
165 A.D.3d 1032 (2d Dep't 2018) .......... 7

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024) .......... 15

*Contec Corp. v. Remote Sol., Co.*,
398 F.3d 205 (2d Cir. 2005) .......... 16

*Crewe v. Rich Dad Educ., LLC*,
884 F. Supp. 2d 60 (S.D.N.Y. 2012) .......... 8

*Dembitzer v. Chera*,
285 A.D.2d 525 (2d Dep't 2001) .......... 8

*Denney v. Jenkens & Gilchrist*,
412 F. Supp. 2d 293 (S.D.N.Y. 2005) ........................................ 3, 12

*Doctor's Assocs., Inc. v. Alemayehu*,
934 F.3d 245 (2d Cir. 2019) ........................................ 14

*Doe v. Trump Corp.*,
6 F.4th 400 (2d Cir. 2021) ........................................ 3, 13

*Ferro v. Allied Interstate, LLC*,
No. 19-CV-49, 2019 WL 3021234 (E.D.N.Y. July 10, 2019) ........................................ 12

*Gerszberg v. Li & Fung (Trading) Ltd.*,
215 F. Supp. 3d 282 (S.D.N.Y. 2016) ........................................ 16

*Gilat v. Sutton*,
220 A.D.3d 569 (1st Dep't 2023) ........................................ 8

*Gingras v. Think Fin., Inc.*,
922 F.3d 112 (2d Cir. 2019) ........................................ 15

*Glob. Gaming Philippines, LLC v. Razon*,
No. 21 CIV. 2655 (LGS), 2023 WL 5935640 (S.D.N.Y. Sept. 12, 2023) ........................................ 10

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ........................................ 16

*Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*,
270 F. Supp. 3d 716 (S.D.N.Y. 2017) ........................................ 10

*In re Fairfield Sentry Ltd.*,
627 B.R. 546 (Bankr. S.D.N.Y. 2021) ........................................ 7

*Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*,
462 F.2d 673 (2d Cir. 1972) ........................................ 15

*Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd.*,
909 F.2d 698 (2d Cir. 1990) ........................................ 8

*J.F. McKinney & Assocs., Ltd. v. Gen. Elec. Inv. Corp.*,
183 F.3d 619 (7th Cir. 1999) ........................................ 8

*Kirschbaum v. Merchants Bank of N.Y.*,
272 A.D. 336 (1st Dep't 1947) ........................................ 8

*Kuehn v. Citibank, N.A.*,
No. 12 CIV. 3287 DLC, 2012 WL 6057941 (S.D.N.Y. Dec. 6, 2012)........................................ 16

*Liberty Synergistics, Inc. v. Microflo Ltd.*,
50 F. Supp. 3d 267 (E.D.N.Y. 2014) ............................................................................ 10

*Lifeline Funding, LLC v. Ripka*,
114 A.D.3d 507 (1st Dep't 2014)..................................................................................... 7

M.I.F. Sec. Co. v. R.C. Stamm & Co.,
*94 A.D.2d 211, (1st Dep't 1983)*............................................................................ 2, 8, 9

*Macioce v. Hisense USA Corp.*,
No. 25 CIV. 1608 (PAE), 2025 WL 3685179 (S.D.N.Y. Dec. 19, 2025)........................... 13

*Martin Hilti Fam. Tr. v. Knoedler Gallery, LLC*,
137 F. Supp. 3d 430 (S.D.N.Y. 2015) ............................................................................. 7

*Montes Serrano v. New York Times Co.*,
19 A.D.3d 577 (2d Dep't 2005) ........................................................................................ 7

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) ............................................................................................. 6

*Olin Holdings Ltd. v. State*,
73 F.4th 92 (2d Cir. 2023)............................................................................................... 14

*Ouedraogo v. A-1 Int'l Courier Serv., Inc.*,
No. 12 CIV. 5651 AJN, 2014 WL 1172581 (S.D.N.Y. Mar. 21, 2014)............................. 13

*Palladino v. JPMorgan Chase & Co.*,
No. 23-CV-1215, 2024 WL 3594569 (E.D.N.Y. July 31, 2024) *R&R adopted,* 761 F. Supp. 3d 521 (E.D.N.Y. 2024))........................................................................................... 1, 15

*Peb, Inc. v. Premium Merch. Funding 26, LLC*,
No. 24-CV-08791 (LJL), 2025 WL 1802996 (S.D.N.Y. July 1, 2025)........................... 8, 16

*Pers. Staffing Grp., LLC v. XL Ins. Am., Inc.*,
No. 22-CV-10259, 2024 WL 4667253 (S.D.N.Y. Nov. 4, 2024).......................................... 15

*R.C.M. Exec. Gallery Corp. v. Rols Cap. Co.*,
901 F. Supp. 630 (S.D.N.Y. 1995) ............................................................................... 2, 9

*Ragone v. Atl. Video at Manhattan Ctr.*,
595 F.3d 115 (2d Cir. 2010) ........................................................................................... 13

*Reid v. Tandym Grp., LLC*,
697 F. Supp. 3d 62 (S.D.N.Y. 2023) .......................................................................................... 16

*Ross v. Am. Exp. Co.*,
547 F.3d 137 (2d Cir. 2008) ....................................................................................................... 14

*Rutkin v Reinfeld*,
229 F.2d 248 (2d Cir. 1956) .......................................................................................................11

*Ruzicka v. Rager*,
305 N.Y. 191 (1953)..................................................................................................................... 8

*Salzano v. Lace Ent. Inc.*,
No. 13 CIV. 5600 LGS, 2014 WL 3583195 (S.D.N.Y. July 18, 2014) .................................... 13

*Shenzhen Xingchen Xuanyuan Indus. Co. v. Amazon.com Servs. LLC*,
735 F. Supp. 3d 453 (S.D.N.Y. 2024) ........................................................................................ 17

*Shepherd v. Belkin Int'l, Inc.*,
683 F. Supp. 3d 282 (E.D.N.Y. 2023) ........................................................................................ 13

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*,
999 F.3d 828 (2d Cir. 2021) ......................................................................................................... 6

*Stechler v. Sidley, Austin Brown & Wood, LLP*,
382 F. Supp. 2d 580 (S.D.N.Y. 2005) ........................................................................................ 14

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010)............................................................................................................. 14, 15

*Sunco Int'l Inc. v. Jiangsu Sunco Boiler Co.*,
186 F.4th 931 (7th Cir. 2026)...................................................................................................... 15

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*,
241 F.3d 135 (2d Cir. 2001) ......................................................................................................... 6

*United States v. Bestfoods*,
524 U.S. 51 (1998)................................................................................................................. 2, 7, 9

*United States v. Bonanno Organized Crime Fam. of La Cosa Nostra*,
879 F.2d 20 (2d Cir. 1989) .....................................................................................................3, 11

*Zachman v. Hudson Valley Fed. Credit Union*,
49 F.4th 95 (2d Cir. 2022)............................................................................................................. 6

**Statutes**

18 U.S.C. § 1084 ....... 11
18 U.S.C. § 1955 ....... 11
31 U.S.C. § 5361 ....... 11
N.Y. P'ship Law § 62 ....... 3, 11
N.Y. Rac. Pari-Mut. Wag. & Breed. Law §§ 1332 ....... 11
N.Y. Rac. Pari-Mut. Wag. & Breed. Law §§ 1362 ....... 11
N.Y. Rac. Pari-Mut. Wag. & Breed. Law §§ 1367(4) ....... 11
N.Y. Rac. Pari-Mut. Wag. & Breed. Law §§ 1404 ....... 11
NY Const. Art. I, § 9 ....... 11

**Rules**

Fed. R. Civ. P. 44.1 ....... 7

**Regulations**

N.Y. Comp. Codes R. & Regs. Tit. 9., §§ 5329.19(a) ....... 11
N.Y. Comp. Codes R. & Regs. Tit. 9., §§ 5313.2 ....... 11
N.Y. Comp. Codes R. & Regs. Tit. 9., §§ 5325 ....... 11
N.Y. Comp. Codes R. & Regs. Tit. 9., §§ 5327 ....... 11

Plaintiff John Doe ("Plaintiff") respectfully submits this memorandum of law and the accompanying declaration of Michael J. Castiglione dated November 6, 2026 ("Castiglione Decl.") in opposition to defendant Christopher Freeman's ("Freeman") motion to compel arbitration (see ECF Nos. 38, 39) and in support of Plaintiff's cross-motion to remand.

## PRELIMINARY STATEMENT

"[P]arties that have not agreed to arbitrate claims may not be forced to do so." *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022). Consistent with this principle, "[g]enerally, the contractual right to compel arbitration may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Palladino v. JPMorgan Chase & Co.*, No. 23-CV-1215, 2024 WL 3594569, at *10 (E.D.N.Y. July 31, 2024), *report and recommendation adopted*, 761 F. Supp. 3d 521 (E.D.N.Y. 2024), (citations and internal quotation marks omitted). Christopher Freeman claims that he is entitled to compel arbitration based on the Stake.us arbitration agreement. But he is not a party to that agreement. To win his motion to compel arbitration, Freeman must present evidence that he has some connection to a signatory to the Stake.us arbitration agreement that permits him to compel arbitration.

Freeman has not met this burden. The only evidence Freeman presents to meet this burden is (1) an affidavit stating he was a part of an oral partnership called Primedice and (2) the Complaint's allegations against him, which Freeman summarizes as being "based on his alleged role in creating and operating Primedice, including that his work on Primedice was later incorporated into Stake." ECF No. 39 ¶ 6. But none of that, on its face, is sufficient to establish that he is either an agent or affiliate of Sweepsteaks Ltd., the specific entity whose contract is relevant here. To tie himself to Sweepsteaks Ltd., Freeman borrows the Complaint's allegations that the Stake entities share ownership and control. ECF No. 39 ¶¶ 18–19. But those are Plaintiff's

allegations against the Stake Defendants. They say nothing about how a partner in an earlier business becomes the agent or affiliate of a Stake entity. The doctrine that would let Freeman disregard the separateness of the entities between him and Sweepsteaks Ltd. is open only to a party who shows the corporate form was abused to wrong that party. Freeman claims no wrong done to him.

Freeman is separated from Sweepsteaks Ltd. by three veils established by the law of business organizations: the veil separating the "jural rights," including the right to compel arbitration, of a partnership (Primedice) from those of its partners as individuals (Freeman), *M.I.F. Sec. Co. v. R.C. Stamm & Co.*, 94 A.D.2d 211, 216, (1st Dep't 1983), *aff'd*, 60 N.Y.2d 936 (1983), the veil separating two distinct partnerships (the Primedice partnership and the Stake partnership), *R.C.M. Exec. Gallery Corp. v. Rols Cap. Co.*, 901 F. Supp. 630, 635 (S.D.N.Y. 1995), as well as the veil separating the Stake partnership from its operating entity, Sweepsteaks Ltd. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).

Freeman cannot simply glom onto Plaintiff's veil piercing allegations to disregard these distinctions. Plaintiff's theory does not require piercing the separation between the jural rights of the Primedice partnership and the jural rights of its partners. Nor does it require piercing the veil of separation between the Primedice partnership and the Stake partnership. Plus, even in the one place of overlap between Freeman's burden and Plaintiff's burden, Plaintiff relies on a theory that requires "some showing of a wrongful or unjust act toward the party seeking piercing[.]" *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997). Freeman offers no evidence as to how he was victim of a wrongful or unjust act justifying piercing the corporate veil.

But even if Freeman could make this showing, Freeman cannot benefit from his status as a Primedice partner because "courts will not recognize or enforce rights arising out of illegal

partnerships[.]" *United States v. Bonanno Organized Crime Fam. of La Cosa Nostra*, 879 F.2d 20, 29 (2d Cir. 1989); N.Y. P'ship Law § 62 (partnership dissolved "[b]y any event which makes it unlawful for the business of the partnership to be carried on[.]"). Primedice was a partnership that existed to operate an unlicensed casino, which was and is illegal under "the laws of the partners' respective home countries where they were actively doing business[.]" Castiglione Decl., Ex. A & Ex. H (discussing the three's knowledge of the illegality of the Primedice enterprise). Freeman cannot benefit from his status as a Primedice partner and thus cannot prevail on his theory he is an agent or affiliate of Sweepsteaks Limited by dint of the Primedice partnership.

Freeman's claim to equitable estoppel is likewise baseless. "The plaintiff's *actual dependence* on the underlying contract in making out the claim against the nonsignatory defendant is [] always the *sine qua non* of an appropriate situation for applying equitable estoppel." *Denney v. Jenkens & Gilchrist*, 412 F. Supp. 2d 293, 298 (S.D.N.Y. 2005) (emphasis original). Because Plaintiff's claim against Freeman is based on Freeman's tortious conduct—not any contractual obligation to Plaintiff—estoppel is simply inapplicable. "There is no unfairness in denying estoppel to a third-party wrongdoer aligned with a signatory in effectuating allegedly wrongful business practices." *Doe v. Trump Corp.*, 6 F.4th 400, 414 (2d Cir. 2021).

## STATEMENT OF FACTS

In 2012, "Freeman conceived of an idea for a Bitcoin gambling website which would improve upon and compete with 'Satoshi Dice,' a blockchain-based gambling concept inspired by the founder of Bitcoin." Castiglione Decl., Ex. I ¶ 22. Freeman partnered with Bijan Tehrani and Edward Craven to develop this website, a collaboration the three appear to have referred to as the Primedice partnership. Castiglione Decl., Ex. A ¶ 5. "As part of the Primedice partnership, [Tehrani, Craven, and Freeman] launched an online cryptocurrency dice game and planned the

development and future launch of an online full-service cryptocurrency casino (what eventually became Stake.com)." Castiglione Decl., Ex. J ¶ 1.

Tehrani, Craven, and Freeman were aware that "Primedice's underlying business model appeared to be contrary to the laws of the partners' respective home countries [Australia and the United States of America] where they were actively doing business[.]" Castiglione Decl., Ex. H ¶ 9. For example, the three recognized "there were potential criminal and tax issues as a result of the nature of the business[.]" Castiglione Decl., Ex. A ¶ 11. For example, Primedice did not (and has never) held a license to operate anywhere in the United States and, as Freeman once put it, "we at Primedice were aware of regular access by American users in the early Primedice days[.]" Castiglione Decl., Ex. J ¶ 47**.** Similarly, gambling regulators in the United Kingdom informed Tehrani in writing that Primedice was "providing facilities for gambling which can be used in Great Britain" which meant that "[a]s no operating license is in place that authorizes that activity, it appears that a criminal offense is being committed under" applicable British law. Castiglione Decl., Ex. A ¶ 22**.** Because of these issues, "Tehrani met with a respected New York law firm" which advised the three that they should "shut down the Primedice site." *Id.* at 12**.** Undeterred by the warnings of their counsel, regulators, and their consciences, Tehrani, Craven, and Freeman chose to continue operating Primedice. *Id.* at 17.

Tehrani, Craven, and Freeman then consulted new counsel, who began to work to conceal Tehrani and Freeman's role in operating their illegal online casino by "structuring the Primedice organization to remove reference to Freeman and Tehrani as individuals associated with the business and to identify Craven, who was in Australia, as the foreign face of the organization." Castiglione Decl., Ex. H ¶ 12**.** This plan broke down, on Freeman's account of events, when a dispute arose among the three about whether to implement "greater Know Your Customer ('KYC')

controls[.]" Castiglione Decl., Ex. A ¶ 16. Freeman has claimed under oath that he advocated for such measures even though they "reduced and would further reduce the volume of revenues from Primedice"—a statement he sadly does not elaborate on—while "Tehrani and Craven were opposed." *Id***.** After this dispute, Craven got cold feet about being the public face of this operation and the three's new counsel withdrew from representing them. *Id.* at 25**.**

Tehrani and Craven then consulted a third lawyer, who advised them to "establish a web of offshore entities to keep their identities and 'fingerprints' off the operating entities due to the legal risks flowing from such offshore, unlicensed, crypto-based gambling online ventures." Castiglione Decl., Ex. H ¶ 17. One such entity was "Slicemedia B.V. a private limited liability company based in Curaçao." *Freeman v. Stake.com, et al.*, No. 1:22-cv-07002 (S.D.N.Y.), ECF No. 27 ¶ 135. Slicemedia became "the legal owner of Primedice without Freeman's knowledge, authorization, or consent." 1:22-cv-07002 (S.D.N.Y.), ECF No. 27 ¶ 311. "Freeman was unaware of the formation of Slicemedia B.V. and unaware of the transfer of any Primedice interest to the Curaçao company." 1:22-cv-07002 (S.D.N.Y.), ECF No. 27 ¶ 136. Tehrani and Craven cut Freeman out of their emerging gambling empire. Castiglione Decl., Ex. A ¶ 56 (Freeman informed "I was not considered a partner in Stake.").

Tehrani then accused Freeman of embezzling 1,280 Bitcoin—worth approximately one hundred million dollars at today's prices—from Primedice. Castiglione Decl., Ex. K. Freeman responded by suing Tehrani and Craven, claiming they had violated his rights as a Primedice partner, though not directly disputing he had absconded with the Bitcoin. Castiglione Decl., Ex. H & Ex. I. In his state court complaint, Freeman described Stake.us as "illegal online gambling" and "yet another example of the clandestine corporate structures Craven and Tehrani habitually deploy," observing that it employs "deceptive practices [that] prey upon individuals who struggle

with gambling addiction" and claiming that his falling out with the other individual Defendants was because he "stood as the last bulwark against Craven and Tehrani's illegal schemes" like Stake.us. Castiglione Decl., Ex. H ¶¶ 219 - 220, 224, 226. Sweepsteaks Ltd. is the operating entity for Stake.us and a signatory to the Stake.us arbitration agreement. Tehrani then sued Freeman on behalf of the purported Primedice partnership for theft. Castiglione Decl., Ex. L.

## STANDARD OF REVIEW

"Courts deciding motions to compel arbitration apply a standard similar to that applicable for a motion for summary judgment." *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 833 (2d Cir. 2021). The Court considers the evidence in the record and "must draw all reasonable inferences in favor of the non-moving party." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). "If the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the Court] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022). If there is a factual dispute about whether the plaintiff is bound to arbitrate, the court proceeds to trial. *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 145 (2d Cir. 2001).

## ARGUMENT

Although Freeman's motion should be denied for many of the same reasons discussed in Plaintiff's Opposition to the Stake Defendants' Motion to Compel Arbitration and Cross-Motion to Remand (Stake Opposition), incorporated here by reference,[1] Freeman's motion fails on the additional grounds laid out below.

---

[1] Freeman's motion should be denied because this Court does not have subject matter jurisdiction over this case because the Stake.us arbitration agreement does not fall under the New York Convention. In addition, on the merits, Freeman's motion should be denied because Plaintiff never entered into the Stake.us arbitration agreement, because Plaintiff has validly opted out of the Stake.us arbitration agreement, because no meeting of the minds occurred as to

## I. Freeman is Separated from Being Sweepsteaks Ltd.'s Agent or Affiliate by Three Veils of the Law of Business Organizations.

Both partnerships and corporations provide business proprietors important protections from certain forms of liability.[2] Although "general partners are personally and individually liable for all obligations of the partnership," *City of New York v. Evanston Ins. Co.*, 165 A.D.3d 1032, 1034 (2d Dep't 2018), "[a] cause of action against a partnership for breach of contract does not lie against the individual partners absent an allegation that the partnership is insolvent or otherwise unable to pay its obligations[.]" *Lifeline Funding, LLC v. Ripka*, 114 A.D.3d 507, 507 (1st Dep't 2014). Corporate law provides stronger protections: "[a] corporation and its stockholders are generally to be treated as separate entities," *Burnet v. Clark*, 287 U.S. 410, 415 (1932), and "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *Bestfoods*, 524 U.S. at 61; *Montes Serrano v. New York Times Co.*, 19 A.D.3d 577, 578 (2d Dep't 2005) ("A parent company will not be held liable for the torts of its subsidiary unless it can be shown that the parent exercises complete dominion and control over the subsidiary.").

---

the material terms of the Stake.us terms of service, and because Plaintiff's obligations to arbitrate under the Stake.us arbitration agreement are discharged as a result of the unavailability of the designated exclusive arbitral forum.

[2] Both the choice of law rules provided by federal common law and New York choice of law rules apply the law of the jurisdiction of incorporation to veil piercing disputes. *CBF Industria De Gusa S/A v. AMCI Holdings, Inc.*, 650 F. Supp. 3d 228, 248 (S.D.N.Y. 2023) (federal common law); *Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, 714 F. Supp. 3d 416, 435 (S.D.N.Y. 2024), *aff'd*, No. 24-423-CV, 2025 WL 289499 (2d Cir. Jan. 24, 2025) (New York law). Neither party has suggested that there is any relevant conflict between the law of any relevant place of incorporation and New York law. *In re Fairfield Sentry Ltd.*, 627 B.R. 546, 557 (Bankr. S.D.N.Y. 2021) (Where there is no conflict between a forum's law and foreign law, a court normally applies the law of the forum. This is true especially where the parties have not demonstrated that the elements of the claim differ under the foreign law."); Fed. R. Civ. P. 44.1 ("A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing."). The same result applies if the Stake.us arbitration agreement's choice of law clause governs. *Martin Hilti Fam. Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 456 (S.D.N.Y. 2015) ("New York and Delaware law are generally in agreement" about successor liability).

With these protections for liability comes a corresponding protection for those who contract with partnerships and corporations—"[c]orporations can't disregard their separate existence whenever that is convenient, while insisting that the forms be observed when that will shield their investors." *J.F. McKinney & Assocs., Ltd. v. Gen. Elec. Inv. Corp.*, 183 F.3d 619, 621 (7th Cir. 1999) (Easterbrook, J.). "Though business associates may be treated as partners vis-a-vis one another even when they operate through a corporation, the corporate form is to be respected in dealings with third parties." *Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd.*, 909 F.2d 698, 702 (2d Cir. 1990); *Buchner v. Pines Hotel, Inc.*, 87 A.D.2d 691, 692 (3d Dep't 1982), *aff'd*, 58 N.Y.2d 1019 (1983) ("The individual principals in this business enterprise, for their own business and legal advantage, elected to operate that enterprise through separate corporate entities. The structure they created should not lightly be ignored at their behest, in order to shield one of the entities they created from third-party common law tort liability."). Under New York law, the same principle holds true for partnerships. "The jural rights of a partnership, as an entity, are separate and distinct from those of its partners and employees, as individuals."[3] *M.I.F. Securities Co.*, 94 A.D.2d at 216; *Gilat v. Sutton*, 220 A.D.3d 569, 570 (1st Dep't 2023) (part owner of general partner of partnership could not invoke arbitration clause in partnership agreement); *Kirschbaum v. Merchants Bank of N.Y.*, 272 A.D. 336, 336–37 (1st Dep't 1947) (partner cannot sue in individual capacity to recover debts of the partnership from third parties).

---

[3] Neither of the two cases Freeman cites in his brief regarding partnership law are to the contrary. His primary authority notes that "a person who holds membership in a partnership acts, serves and is obligated in two distinct and differing capacities," reflecting the distinction Freeman seeks to deny. *Ruzicka v. Rager*, 305 N.Y. 191 (1953). The other case was about legal ethics rules. *Dembitzer v. Chera*, 285 A.D.2d 525, 526 (2d Dep't 2001). Freeman also cites two authorities which hold that disclosed agents are construed to be covered by arbitration agreements signed with their principals. *Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 75 (S.D.N.Y. 2012); *Peb, Inc. v. Premium Merch. Funding 26, LLC*, No. 24-CV-08791 (LJL), 2025 WL 1802996, at *11 (S.D.N.Y. July 1, 2025). But these authorities deal with the disclosed agents of a signatory—not persons claiming to be an undisclosed agent based on a complicated chain of connections to other entities.

Freeman's claims to be connected with Sweepsteaks Ltd. ask this Court to disregard three formal veils of the law of business organizations that separate him from that entity. First, he asks the Court to disregard the veil between the liabilities of an individual partner and the liabilities of the partnerships by permitting him to take on whatever rights the Primedice partnership entity is entitled to. ECF No. 39 ¶ 19 ("Because a partnership is not separate from its partners, Mr. Freeman is covered by Primedice's affiliate status for Primedice-based claims arising during the alleged partnership period."). But New York courts have refused to "allow such facile interchange of identities." *M.I.F. Securities Co.*, 94 A.D.2d at 216. Next, he asks the Court to disregard the separateness of the Stake and Primedice partnerships. ECF No. 39 ¶ 7 (claiming "Primedice and the Stake entities were part of the same alleged enterprise."); 17-18 ("Freeman is not being sued for conduct in a purely individual capacity; Plaintiff seeks to impose liability based on alleged work for, and conduct tied to, the Stake enterprise."). But Primedice and Stake were separate partnerships. Castiglione Decl., Ex. A ¶ 56. (Freeman informed "I was not considered a partner in Stake."); 1:22-cv-07002 (S.D.N.Y.), ECF No. 27 ¶ 220. ("Freeman has been improperly, and dishonestly, excluded from the chance to participate in Primedice's successor partnership Stake.com."). Merely labeling the Primedice website a predecessor to Stake.com does not alter this—leaving aside that a partnership's assets like a website are distinct from the partnership itself, the rule of formal separateness of a successor and predecessor applies even when the predecessor is a partnership. *R.C.M. Exec. Gallery Corp. v. Rols Cap. Co.*, 901 F. Supp. 630, 635 & 635 n.5 (S.D.N.Y. 1995). Then, Freeman asks the Court to treat the alleged Stake parent entity—the Stake partnership—as interchangeable with Sweepsteaks Ltd. ECF No. 39 ¶ 17. This too asks the court to disregard a veil of the law of business organizations. *Bestfoods*, 524 U.S. at 61.

Freeman does not explain why he is entitled to veil piercing. He appears to operate under the assumption that he does not need to make any affirmative showing in support of his veil piercing theory because Plaintiff's complaint alleges the Stake Defendants are alter egos of one another. But Plaintiff's allegations do not and cannot help Freeman bridge the gap between him and the Primedice partnership, nor the gap between the Primedice partnership and the Stake partnership. The Primedice partnership is not a named defendant in this lawsuit and the formal separateness of these entities is irrelevant to whether Freeman, Tehrani, and Craven can be held liable as individuals for their own tortious acts—whether committed in the course of their work for a business or not. *Bano v. Union Carbide Corp.*, 273 F.3d 120, 133 (2d Cir. 2001). There is simply no overlap between Plaintiff's theory of veil piercing and Freeman's theory of veil piercing for these two layers of separation Freeman must pass through in order to prevail on his theory.

Nor is Freeman entitled to pierce the corporate veil even for the relationship between the alleged Stake parent entity and Sweepsteaks Ltd. "[T]he standard for alter ego liability is equitable[.]" *Glob. Gaming Philippines, LLC v. Razon*, No. 21 CIV. 2655 (LGS), 2023 WL 5935640, at *9 (S.D.N.Y. Sept. 12, 2023). "The party seeking to pierce the corporate veil must establish that the owners of the corporation, through their dominance of the corporation, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene." *Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267, 297 (E.D.N.Y. 2014); *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) (requiring "some showing of a wrongful or unjust act toward the party seeking piercing"). Failure to meet this element is fatal to an alter ego or veil piercing claim. *Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*, 270 F. Supp. 3d 716, 734 (S.D.N.Y. 2017). But there is absolutely no record evidence presently indicating that any wrongful or unjust act has

been directed at Freeman that would justify veil piercing. Freeman has not met his burden to demonstrate he is an agent or affiliate of Sweepsteaks Ltd.

## II. Freeman Cannot Compel Arbitration Based on His Rights as Member of the Primedice Oral Partnership.

Even if Freeman had demonstrated that his status as a Primedice partner means he qualifies as an affiliate or agent of Sweepsteaks Ltd., his motion would still fail because it is an attempt to assert rights arising under an illegal partnership to operate an unlicensed online casino.

"[C]ourts will not recognize or enforce rights arising out of illegal partnerships[.]" *United States v. Bonanno Organized Crime Fam. of La Cosa Nostra*, 879 F.2d 20, 29 (2d Cir. 1989); *accord Rutkin v Reinfeld*, 229 F.2d 248, 256 (2d Cir. 1956) ("A member of [] an illegal partnership is not entitled to enforcement of any right depending on the partnership agreement."); *accord* N.Y. P'ship Law § 62 (partnership dissolved "[b]y any event which makes it unlawful for the business of the partnership to be carried on[.]"). Both domestic law and "the laws of another country" are relevant to this analysis. *Reinfeld*, 229 F.2d at 256.

The Primedice partnership was created to operate an unlicensed online casino, which is illegal under both New York and federal law. NY Const. Art. I, § 9; N.Y. Rac. Pari-Mut. Wag. & Breed. Law §§ 1332, 1362, 1367(4), 1404; N.Y. Comp. Codes R. & Regs. Tit. 9., §§ 5329.19(a), 5313.2, 5325, 5327; 18 U.S.C. § 1084; 18 U.S.C. § 1955; 31 U.S.C. § 5361. Freeman, Tehrani, and Craven understood this when they created the Primedice partnership—as Freeman put it, "Primedice's underlying business model appeared to be contrary to the laws of the partners' respective home countries [Australia and the United States of America] where they were actively doing business[.]" Castiglione Decl., Ex. H ¶ 9. "[T]here were potential criminal and tax issues as

a result of the nature of the business," Castiglione Decl., Ex. A ¶ 11, not least of which because "we at Primedice were aware of regular access by American users in the early Primedice days[.]" Castiglione Decl., Ex. J ¶ 47**.** "Tehrani met with a respected New York law firm" which advised the three that they should "shut down the Primedice site." Castiglione Decl., Ex. A ¶ 12**.** In addition, Freeman, Tehrani, and Craven were informed by gambling regulators in the United Kingdom that they were "providing facilities for gambling which can be used in Great Britain" which meant that "[a]s no operating license is in place that authorizes that activity, it appears that a criminal offense is being committed under" applicable British law. *Id.* at 22. Primedice was an illegal partnership.

Because Primedice was an illegal partnership, Freeman cannot claim rights in it, including rights arising from his "status as a Primedice partner[.]" ECF No. 39 ¶ 19. Because Freeman's motion to compel arbitration claims those rights are what makes him an agent of Stake and what "brings him within [an] affiliate relationship" within the meaning of the Stake.us arbitration agreement, his motion to compel should be denied. *Id.*

### III. Freeman Cannot Rely on Equitable Estoppel.

"The purpose of the doctrine of equitable estoppel is to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is, from relying on the contract when it works to his advantage by establishing the claim, and repudiating it when it works to his disadvantage by requiring arbitration." *Denney v. Jenkens & Gilchrist*, 412 F. Supp. 2d 293, 298 (S.D.N.Y. 2005). "The plaintiff's *actual dependence* on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the *sine qua non* of an appropriate situation for applying equitable estoppel." *Id.* (emphasis in original); *accord Ferro v. Allied Interstate, LLC*, No. 19-CV-49, 2019 WL 3021234, at *6 (E.D.N.Y. July 10, 2019) ("equitable estoppel applies only where the arbitration agreement forms the legal basis for plaintiff's claims against the non-

signatories; it is not enough that the contract is factually significant to plaintiff's claims or has a 'but-for' relationship with them."). "There is no unfairness in denying estoppel to a third-party wrongdoer aligned with a signatory in effectuating allegedly wrongful business practices." *Doe v. Trump Corp.*, 6 F.4th 400, 414 (2d Cir. 2021). Estoppel should be denied where Plaintiff's claims "do not rely on the terms of the [contract] or seek to enforce rights or obligations arising from that contract" but instead "arise from alleged statutory and common-law violations[.]" *Barrios-Contreras v. Big Fish Ent. LLC*, No. 25-CV-3203 (JGLC)(SN), 2026 WL 621576, at *5 (S.D.N.Y. Mar. 5, 2026).

Plaintiff's claims do not depend on the Stake.us arbitration agreement. Plaintiff has brought tort claims against Stake which do not depend on the Stake.us Terms. Indeed, Plaintiff has expressly disaffirmed reliance on any contract with any of the Stake Defendants. There is thus no unfairness in denying estoppel to the nonsignatory Stake Defendants, which are merely "third-party wrongdoer[s] aligned with a signatory in effectuating allegedly wrongful business practices." *Trump Corp.*, 6 F.4th at 414. The cases Freeman cites in his motion papers are not to the contrary. The cases it cites either are varying flavors of contract disputes[4] or are employment disputes where the plaintiff's theory of liability against the nonsignatories depended on showing a contractual relationship between the nonsignatories and the plaintiff.[5] Such cases have little to do with this case, where Plaintiff has been consistent in repudiating any contractual ties to the Stake Defendants.

---

[4] *Shepherd v. Belkin Int'l, Inc.*, 683 F. Supp. 3d 282, 288–89 (E.D.N.Y. 2023) (permitting estoppel where plaintiff's claims "are not merely intertwined [with contract obligations] – they are identical"); *Macioce v. Hisense USA Corp.*, No. 25 CIV. 1608 (PAE), 2025 WL 3685179, at *5 (S.D.N.Y. Dec. 19, 2025) (dispute regarding whether plaintiff "paid more for his [] television than he otherwise would have" that court determined was "intertwined with the underlying contract obligations").

[5] *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010); *Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, No. 12 CIV. 5651 AJN, 2014 WL 1172581, at *5 (S.D.N.Y. Mar. 21, 2014); *Salzano v. Lace Ent. Inc.*, No. 13 CIV. 5600 LGS, 2014 WL 3583195, at *5 (S.D.N.Y. July 18, 2014).

Freeman also cannot demonstrate that there is a sufficiently close relationship between himself and Sweepsteaks Ltd. to justify application of estoppel. In each case in which the Second Circuit has permitted nonsignatories to estop a signatory, "the entity opposing arbitration, was reasonably seen on the basis of the relationships among the parties as extending not only to the other signatory, but also to a non-signatory related to the latter, an entity that was, or would predictably become, with the knowledge and consent of the party opposing arbitration, affiliated or associated with the other signatory in such a manner as to make it unfair to allow the party opposing arbitration to avoid its commitment to arbitrate on the ground that the non-signatory was not the very entity with which the party opposing arbitration had a contract." *Ross v. Am. Exp. Co.*, 547 F.3d 137, 145–46 (2d Cir. 2008) (internal citations, quotations, and alterations omitted). Because "[t]here is no sign that [Plaintiff] could have imagined that, in entering into an arbitration agreement with [Sweepsteaks Limited], [he was] also entering into an arbitration agreement" with Freeman, the motion to compel arbitration should be denied. *Stechler v. Sidley, Austin Brown & Wood, LLP*, 382 F. Supp. 2d 580, 592 (S.D.N.Y. 2005).

## IV. The Stake.us Arbitration Agreement's Delegation Clause Does Not Relieve Freeman of His Burden to Show Plaintiff Agreed to Arbitrate Claims Against Freeman.

"[A]rbitration is a matter of consent, not coercion[.]" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (internal citations and quotations omitted). This principle means a party seeking to force their opponent to arbitrate must show the existence of a contract obligating their opponent to arbitrate the dispute. *Olin Holdings Ltd. v. State*, 73 F.4th 92, 101 (2d Cir. 2023) ("Questions concerning the formation and existence of an arbitration agreement must be resolved by the courts in the first instance."); *accord Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019) ("[P]arties may not delegate to the arbitrator the fundamental question

of whether they formed the agreement to arbitrate in the first place."). A party cannot bypass this requirement by inserting language into their form contracts saying an arbitrator decides all issues about whether a valid contract exists—doing so merely raises the question of whether the party opposing arbitration agreed to arbitrate arbitrability. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 149 (2024); *Pers. Staffing Grp., LLC v. XL Ins. Am., Inc.*, No. 22-CV-10259, 2024 WL 4667253, at *6 (S.D.N.Y. Nov. 4, 2024) ("*Coinbase* is [] an application of a straightforward principle: In any arbitrability dispute, there will be some question for the court to decide. Even in cases with delegation clauses, courts will have to say whether or not the delegation clause is enforceable."). Such disputes must be decided by the Court because "before referring a dispute to an arbitrator" "the court determines whether a valid arbitration agreement exists." *Coinbase*, 602 U.S. at 149. *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 (2d Cir. 2019) (a "specific attack on the delegation provision is sufficient to make the issue of arbitrability one for a federal court.").

All of this applies with double force when a nonsignatory seeks to enforce an arbitration clause in someone else's contract. "[P]arties may specify *with whom* they choose to arbitrate their disputes" and courts are obligated to "give effect to these contractual limitations[.]" *Stolt-Nielsen S.A.*, 559 U.S. at 683 (emphasis original); *accord Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 677 (2d Cir. 1972) ("whether a person is a party to the arbitration agreement" is an issue that goes to "the making of the arbitration agreement[.]"). "Generally, the contractual right to compel arbitration may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Palladino*, 2024 WL 3594569, at *10, *Palladino*, 761 F. Supp. 3d 521 (internal citations and quotations omitted); *accord Sunco Int'l Inc. v. Jiangsu Sunco Boiler Co.*, 186 F.4th 931, 935 (7th Cir. 2026) ("Arbitration is a matter of contract, and the general rule is that nonparties to arbitration agreements can neither be

bound to them nor benefit from them."). When a nonsignatory claims they fall within an exception to the general rule as a third-party beneficiary of the contract, "it is for the Court, not an arbitrator, to make a threshold determination here whether [the moving party] is a third-party beneficiary to the [relevant agreement] entitled to enforce the [a]rbitration [c]lause." *Gerszberg v. Li & Fung (Trading) Ltd.*, 215 F. Supp. 3d 282, 291 (S.D.N.Y. 2016).

Freeman cites no authority that supports his claim that "any dispute over whether Plaintiff's claims are arbitrable—including disputes over the existence, validity, enforceability, scope, or application of the Stake Arbitration Provision belongs to the arbitrator in the first instance." ECF No. 39. Two of the cases he cites explicitly reject the rule he proposes.[6] *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."); *Kuehn v. Citibank, N.A.*, No. 12 CIV. 3287 DLC, 2012 WL 6057941, at *3 (S.D.N.Y. Dec. 6, 2012) (court evaluates whether "delegation agreement itself is unenforceable."). Two of the cases he cites implicitly reject the rule he proposes because in each, the court itself evaluated whether the nonparty moving to compel arbitration had a sufficient relationship to the parties to the agreement such that it could compel arbitration before either compelling or denying arbitration. *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 209 (2d Cir. 2005) (court evaluated whether "sufficient relationship existed between [nonsignatory] and [signatory] to permit [nonsignatory] to compel arbitration"); *Reid v. Tandym Grp., LLC*, 697 F. Supp. 3d 62, 79 (S.D.N.Y. 2023) (determining nonsignatory "cannot enforce the arbitration agreement as a party or a third-party beneficiary" despite delegation clause). In the only remaining case Freeman cites, the enforceability of the arbitration agreement was undisputed.

[6] Other cases Freeman cites in his brief more broadly do the same. *Peb, Inc.*, 2025 WL 1802996, at *10 ("The question whether Plaintiff may prosecute its claims against the Individual Defendants in this Court or whether Individual Defendants are instead entitled to compel arbitration is for the Court.").

*Shenzhen Xingchen Xuanyuan Indus. Co. v. Amazon.com Servs. LLC*, 735 F. Supp. 3d 453, 463 (S.D.N.Y. 2024).

"[A]rbitration agreements as enforceable as other contracts, *but not more so*[.]" *Cap Gemini Ernst & Young, U.S., LLC v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003) (emphasis original). This Court, not an arbitrator, should decide Plaintiff's challenges to the validity of the Stake.us arbitration agreement, the issue of whether Freeman is a third-party beneficiary of the Stake.us arbitration agreement, and the issue of whether Freeman can rely on equitable estoppel.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Christopher Freeman's motion to compel arbitration and remand this case to state court.

Dated: November 6, 2026

Respectfully submitted,

/s/ Michael Castiglione
Michael Castiglione
Nigel P. Halliday (*pro hac vice to be filed*)
**SEEGER WEISS LLP**
55 Challenger Road, Sixth Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
Facsimile: (973) 639-8656
*MCastiglione@SeegerWeiss.com*
*nhalliday@seegerweiss.com*

Benjamin S. Schenk (*pro hac vice to be filed*)
**THE SCHENK LAW FIRM, LLP**
3180 University Ave, Suite 260
San Diego, California 92104
Telephone: (858) 424-4444
Facsimile: (858) 206-9008
*ben@schenklawfirm.com*

***Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2026 I electronically filed the foregoing Memorandum of Law in Opposition to Defendant Christopher Freeman's Motion to Compel Arbitration and in Support of Plaintiff's Cross-Motion to Remand with the Clerk of Court for the United States District Court for the Southern District of New York using the CM/ECF system.

*/s/ Michael Castiglione*

**CERTIFICATE OF COMPLIANCE**

Pursuant to the Rule 2(B) of the Court's Individual Rules and Practices in Civil Cases, I hereby certify that the foregoing Memorandum of Law contains 5,793 words, including material contained in footnotes, but excluding the caption, table of contents, table of authorities, signature blocks, and appended certificates.

Dated: November 6, 2026 *<u>/s/ Michael Castiglione</u>*